# EXHIBIT A

# Complaint

ELECTRONICALLY FILED
6/25/2018 3:15 PM
2018-CH-07976
CALENDAR: 03
PAGE 1 of 11
CIRCUIT COURT OF
COOK COUNTY, ILLINOIS
CHANCERY DIVISION
CLERK DOROTHY BROWN

**IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS**
**COUNTY DEPARTMENT - CHANCERY DIVISION**

| | | |
|---|---|---|
| AMERISURE MUTUAL INSURANCE COMPANY, | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| vs. | ) No. | |
| | ) | |
| IRON MOUNTAIN INFORMATION MANAGEMENT, LLC, IRON MOUNTAIN, INC., ACE AMERICAN INSURANCE COMPANY, and MARGARITA VENEGAS, as Guardian of the Estate of ANTONIO VENEGAS, a Disabled Person, | ) | |
| | ) | |
| Defendants. | ) | |

**RECEIVED**
**STATE OF ILLINOIS**
**JUL 0 6 2018**
**DEPT. OF INSURANCE**
**CHICAGO, ILLINOIS**

### AMERISURE MUTUAL INSURANCE COMPANY'S COMPLAINT FOR DECLARATORY JUDGMENT

NOW COMES Plaintiff, Amerisure Mutual Insurance Company ("Amerisure"), by and through its attorneys of record, Emerson & Elder, P.C., and for its Complaint for Declaratory Judgment against Defendants, Iron Mountain, Inc., ("IM, Inc."), Iron Mountain Information Management, LLC ("IMIM"), ACE American Insurance Company ("ACE"), and Margarita Venegas, as Guardian of the Estate of Antonio Venegas, a Disabled Person ("Venegas") states as follows:

### I.   NATURE OF ACTION AND RELIEF SOUGHT

1.   This action seeks a declaration that Amerisure does not owe a duty to defend or indemnify IM, Inc., as IM, Inc. does not qualify as an insured under the commercial general liability insurance policy issued by Amerisure to Elite Storage Solutions, LLC (herein "Amerisure policy"). Further, Amerisure seeks a declaration that it owes no primary duty to defend or indemnify IMIM in a lawsuit brought against it by Margarita Venegas styled

*Margarita Venegas v. Iron Mountain, Inc., et al.*, Case No. 2015 L 001659 in the Circuit Court of Cook County, Illinois, County Department, Law Division ("the *Venegas* Lawsuit"), under the Amerisure policy. *See* the Second Amended Complaint filed in the *Venegas* Lawsuit attached hereto as **Exhibit "A"**. Any coverage provided to IMIM is excess to IMIM's own liability coverage, *i.e.,* ACE.

2.      There is an actual, present and *bona fide* controversy between Amerisure, IM, Inc., ACE and IMIM in light of IM, Inc.'s and IMIM's claim for coverage under the Amerisure policy. Amerisure disputes both IM, Inc.'s and IMIM's claims.

3.      ACE is included as a Defendant as Amerisure alleges that ACE owes the sole primary duty to defend and indemnify IMIM in the *Venegas* Lawsuit under an insurance policy that it issued to IMIM.

ELECTRONICALLY FILED
6/25/2018 3:15 PM
2018-CH-07976
PAGE 2 of 11

4.      Venegas is named herein only in that she may be deemed a necessary party with an interest in the subject matter of this action. Amerisure seeks no relief from Venegas, other than to the extent, if any, that she is interested in the subject matter of this action, that she be bound by the judgment entered herein. If Venegas will sign a stipulation to that effect, then Amerisure will voluntarily dismiss her as a Defendant from this action.

5.      Amerisure requests that this Court declare the rights and obligations of the parties under its insurance contract pursuant to 735 ILCS 5/2-701, finding and declaring that Amerisure does not owe a primary duty to defend and indemnify IM, Inc. and IMIM in the *Venegas* Lawsuit.

**II.      JURISDICTION AND VENUE**

6.      This Court has jurisdiction over this action pursuant to 735 ILCS 5/2-701, because it is a complaint brought by plaintiff against defendants regarding the facts at issue in this action, and because the amount in controversy, exclusive of interest and costs, exceeds the sum of

$50,000.

7.     Venue is proper in this Court as the alleged incident in this case allegedly occurred in Cook County, Illinois, and the parties to this complaint have engaged in business in Cook County, Illinois.

8.     Pursuant to 735 ILCS 5/2-701, this Court has the power to make binding declarations of the rights and obligations of the parties herein, and to adjudicate the pending dispute.

9.     Venue and jurisdiction are proper with this Court pursuant to 735 ILCS 5/2-101(1) and (2), and 735 ILCS 5/2-209.

## III.     BACKGROUND

### A.     The Construction Contract

10.     On information and belief, Elite Storage Solutions, LLC ("Elite") and IMIM entered into a Professional Services Agreement ("Agreement") effective January 1, 2013 which sets forth the scope of services that Elite would provide to IMIM. The Agreement was effective when the underlying incident took place. A copy of the Agreement is attached as **Exhibit "B"**.

11.     The Agreement includes a section 10 titled "Insurance". Within section 10 is subsection 10.1 which requires Elite to provide insurance in relation to the Agreement.

12.     Subsection 10.1 also requires that Elite provide a certificate of insurance which identifies IMIM as an additional insured on liability policies.

13.     There is no obligation in Section 10, subsection 10.1, or anywhere in the Agreement, requiring Elite to provide primary additional insured coverage to IMIM.

### B.     The Underlying Action

14.     On February 17, 2015, Venegas, as Guardian of the Estate of Antonio Venegas

ELECTRONICALLY FILED
6/25/2018 3:15 PM
2018-CH-07976
PAGE 3 of 11

("Plaintiff"), filed her original complaint in this case ("Underlying Action") against IM, Inc. and Elite Storage Solutions, Inc. The Second Amended Complaint was filed on November 8, 2017 against, amongst others, IM, Inc., Elite Storage Solutions, Inc. and IMIM.

15.     Venegas seeks damages in *the* Venegas Lawsuit related to an alleged incident on November 13, 2013, when Antonio Venegas was allegedly working on premises owned by IM, Inc. at or near 2755 Alft Lane, Elgin, Illinois. Mr. Venegas was allegedly an employee of Precision Builders & Contractors, Inc. when he fell from his work area, suffering bodily injuries as a result.

16.     The Second Amended Complaint alleges that prior to November 13, 2013, IMIM entered into an agreement with Elite Storage Solutions, Inc. for the design and construction of a multi-story rack system at the premises in Elgin, Illinois.

17.     The Second Amended Complaint also alleges that prior to November 13, 2013, IMIM engaged Precision Builders & Contractors, Inc. to erect the storage rack system.

18.     Venegas alleges that IMIM was negligent by failing to have an adequate fall protection system and to supervise the system, negligent in ensuring that adequate fall protection equipment was provided and used, and negligent in the manner in which it supervised the manner of the work at the project at the Elgin, Illinois premises.

19.     Venegas alleges that IMIM's negligence, amongst the other defendants, was a direct and proximate cause of the injuries and damages sustained by Antonio Venegas.

**C.      Iron Mountain's Contractor/Vendor Safety & Security Program**

20.     Upon information and belief, IMIM contends that the Contractor/Vendor Safety & Security Program is a part of the Agreement between it and Elite. A copy of this document is attached as **Exhibit "C".**

ELECTRONICALLY FILED
6/25/2018 3:15 PM
2018-CH-07976
PAGE 4 of 11

21.     The Contractor/Vendor Safety & Security Program includes an "Additional Requirements" section, on page 10, which requires that "Iron Mountain" must be named as an additional insured on all Commercial General Liability policies obtained by a contractor/vendor.

22.     "Iron Mountain" is defined as IMIM in the Agreement.

23.     The Contractor/Vendor Safety & Security Program does not require that any contractors/vendors obtain additional insurance naming IMIM on a primary basis.

**D.      The Amerisure Policy**

24.     Amerisure issued policy number CPP20487910602 with Elite as the named insured. The Amerisure Policy was effective from October 1, 2013 to October 1, 2014. A copy of the Amerisure Policy is attached as **Exhibit "D"**.

25.     The Amerisure Policy contains a Commercial General Liability Coverage Part, which includes an insuring agreement that states in part: "We will pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies. We will have the right and duty to defend the insured against any 'suit' seeking those damages. However, we will have no duty to defend the insured against any 'suit' seeking damages for 'bodily injury' or 'property damage' to which this insurance does not apply." *Id.*[1]

26.     The Amerisure Policy includes an Advantage Blanket Additional Insured Endorsement. This endorsement states in relevant part:

> **SECTION II – WHO IS AN INSURED** is amended to include as an insured any person or organization, called an additional insured in this endorsement:
>
> 1.  Whom you are required to add as an additional insured on this policy under a written contract or agreement relating to your business; or

ELECTRONICALLY FILED
6/25/2018 3:15 PM
2018-CH-07976
PAGE 5 of 11

---

[1] The Commercial General Liability Coverage Form of the Amerisure Policy states that: "[t]hroughout this policy the words 'you' and 'your' refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy." **Exhibit "D"**.

2. Who is named as an additional insured under this policy on a certificate of insurance.

<p style="text-align:center">*    *    *</p>

The insurance provided to the additional insured is limited as follows:

1. That person or organization is only an additional insured with respect to liability arising out of:

   (a) Premises you own, rent, lease, or occupy; or

   (b) Your ongoing operations performed for that additional insured, unless the written contract agreement, or certificate of insurance requires 'your work' coverage (or wording to the same effect) in which case the coverage provided shall extend to 'your work' for that additional insured.

Premises, as respects this provision, shall include common or public areas about such premises if so required in the written contract or agreement.

Ongoing operations, as respects this provision, does not apply to 'bodily injury' or 'property damage' occurring after:

ELECTRONICALLY FILED
6/25/2018 3:15 PM
2018-CH-07976
PAGE 6 of 11

   (1) All work including materials, parts or equipment furnished in connection with such work on the project (other then service, maintenance or repairs) to be performed by or on behalf of the additional insured(s) at the site of the covered operations has been completed; or

   (2) That portion of 'your work' out of which the injury or damage arises has been put to its intended use by any person or organization other than another contractor or subcontractor engaged in performing operations for a principal as a part of the same project.

2. The limits of insurance applicable to the additional insured are the least of those specified in the written contract or agreement, or in the certificate of insurance or in the Declarations for this policy. *** The limits of insurance applicable to the additional insured are inclusive of and not in addition to the limits of insurance shown in the Declarations.

3. The additional insured status provided by this endorsement does not extend beyond the expiration or termination of a lease or rental agreement nor beyond the term of this policy.

<p style="text-align:center">*    *    *</p>

<p style="text-align:center">6</p>

**SECTION IV – COMMERCIAL GENERAL LIABILITY CONDITIONS** is amended by the following provisions:

Condition 4. **Other Insurance** is deleted and replaced with the following:

**4. Other Insurance.**

> This insurance is excess over any other insurance whether primary, excess, contingent or on any other basis, unless the written contract, agreement, or certificate of insurance requires that this insurance be primary, in which case this insurance will be primary without contribution from such other insurance available to the additional insured.

**Exhibit "D".**

### E. The ACE American Insurance Policy

ELECTRONICALLY FILED
6/25/2018 3:15 PM
2018-CH-07976
PAGE 7 of 11

27.      ACE issued a Commercial General Liability policy bearing policy number HDO G27327254 to its named insured Iron Mountain Incorporated with a policy period of November 1, 2013 to November 1, 2014 ("ACE Policy"). The ACE Policy includes a Commercial General Liability Coverage Form. The Declarations, Commercial General Liability Coverage Form and Common Policy Conditions of the ACE Policy are attached hereto as **Exhibit "E"**.

28.      The Commercial General Liability Coverage Form of the ACE Policy includes an insuring agreement that states in part: "We will pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies. We will have the right and duty to defend the insured against any 'suit' seeking those damages. However, we will have no duty to defend the insured against any 'suit' seeking damages for 'bodily injury' or 'property damage' to which this insurance does not apply." **Exhibit "E"**.

29.      The Other Insurance condition of the ACE Policy states as follows:

If other valid and collectible insurance is available to the insured for a loss we cover under Coverages **A** or **B** of this Coverage Part, our obligations are limited as follows:

7

ELECTRONICALLY FILED
6/25/2018 3:15 PM
2018-CH-07976
PAGE 8 of 11

**a.   Primary Insurance**

This insurance is primary except when Paragraph b. below applies.  If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary.  Then, we will share with all that other insurance by the method described in Paragraph c. below.

**b.   Excess Insurance**

i.   This insurance is excess over:

(a)   Any of the other insurance, whether primary, excess, contingent or on any other basis:

(i)   That is Fire, Extended Coverage, Builder's Risk, Installation Risk or similar coverage for 'your work';

(ii)   That is Fire insurance for premises rented to you or temporarily occupied by you with permission of the owner;

(iii)   That is insurance purchased by you to cover your liability as a tenant for 'property damage' to premises rented to you or temporarily occupied by you with permission of the owner; or

(iv)   If the loss arises out of the maintenance or use of aircraft, 'autos' or watercraft to the extent not subject to Exclusion g. of Section I – Coverage A – Bodily Injury And Property Damage Liability.

(b)   Any other primary insurance available to you [IMIM] covering liability for damages arising out of the premises or operations, or the products and completed operations, for which you have been added as an additional insured.

**Exhibit "E".**

## COUNT I
## DECLARATORY JUDGMENT – NO DUTY TO DEFEND OR INDEMNIFY IM, INC.

30.   Amerisure incorporates the allegations set forth within Paragraphs 1 through 29 as if fully set forth herein.

31.   The Agreement was entered into between Elite and IMIM.  **Exhibit "B".**

8

32. IM, Inc. is not a party to the Agreement. **Exhibit "B"**.

33. The Agreement requires that Elite provide additional insured coverage to IMIM. **Exhibit "B"**.

34. Additional insured coverage is not required in favor of IM, Inc. in the Agreement. **Exhibit "B"**.

35. Amerisure, therefore, does not owe a duty to defend or indemnify IM, Inc. as to the allegations against IM, Inc. in the *Venegas* Lawsuit.

**WHEREFORE**, Amerisure Mutual Insurance Company respectfully requests entry of a declaratory judgment finding and declaring that: (1) Amerisure does not owe IM, Inc. a duty to defend or indemnify under the Amerisure Policy; and (2) for any other relief this Court deems proper.

ELECTRONICALLY FILED
6/25/2018 3:15 PM
2018-CH-07976
PAGE 9 of 11

<div align="center">

**COUNT II**
**DECLARATORY JUDGMENT – NO DUTY TO DEFEND OR INDEMNIFY IMIM – THE AMERISURE POLICY AFFORDS, IF ANY, EXCESS COVERAGE TO IMIM AS A PURPORTED ADDITIONAL INSURED**

</div>

36. Amerisure incorporates the allegations set forth within Paragraphs 1 through 29 as if fully set forth herein.

37. In accordance with the ACE Policy, IMIM is the named insured on the policy. **Exhibit "E"**.

38. IMIM's status as the named insured on the ACE Policy is indisputable, and, upon information and belief, ACE is defending IMIM in the Underlying Action.

39. The ACE Policy contains an "other insurance" provision that states that it affords coverage to the named insured on a primary basis, unless other insurance provides coverage to IMIM on a primary basis. **Exhibit "E"**.

40. The Agreement and Contractor/Vendor Safety & Security Program do not require

<div align="center">9</div>

that Elite obtain coverage including IMIM as an additional insured on a primary basis.

41.      Pursuant to the Other Insurance Condition of the Advantage Blanket Additional Insured Endorsement of the Amerisure Policy, the ACE Policy is other insurance, and applies on a primary basis for purposes of defending and indemnifying IMIM in connection with the Underlying Action.  *See* **Exhibits "C", "D"** and **"E"**.

42.      The Amerisure Policy, as it relates to additional insureds, applies as excess insurance "over any other insurance . . . unless the written contract, agreement, or certificate of insurance requires that this insurance be primary. . . . "  **Exhibit "D"**.  Neither the Agreement between IMIM and Elite nor any certificate of insurance required IMIM's insurance to be primary.

43.      The ACE Policy is other applicable insurance, and applies on a primary basis for purposes of defending and indemnifying IMIM in connection with the Underlying Action.  *See* **Exhibits "A", "B", "C", "D"** and **"E"**.

44.      Based on the terms of the Agreement, the ACE Policy and the Amerisure Policy, the ACE Policy provides primary coverage to IMIM.  ACE, thus, owes IMIM a primary duty to defend, and potentially owes IMIM a primary obligation to indemnify, in connection with the Underlying Action.

45.      In accordance with the requirements of the Agreement, even if IMIM potentially qualifies as an additional insured on the Amerisure Policy, such coverage only applies on an excess basis.  *See* **Exhibits "B", "C"** and **"D"**.

46.      When the Amerisure Policy is excess, Amerisure "will have no duty under Coverages A or B to defend the insured against any 'suit' if any other insurer has a duty to defend the insured against that 'suit'."  **Exhibit "D"**.

47.      ACE, therefore, owes IMIM a primary duty to defend and indemnify in connection

ELECTRONICALLY FILED
6/25/2018 3:15 PM
2018-CH-07976
PAGE 10 of 11

with the Underlying Action, and Amerisure owes IMIM, at most, excess coverage in excess of the coverage provided to IMIM by ACE.

**WHEREFORE,** Amerisure Mutual Insurance Company respectfully requests entry of a declaratory judgment finding and declaring that: (1) ACE owes IMIM a primary duty to defend in connection with the Underlying Action; (2) ACE owes IMIM a primary duty to indemnify in connection with the Underlying Action; (3) Amerisure owes no duty to defend IMIM; (4) Amerisure owes no duty to indemnify IMIM; (5) the Amerisure Policy applies, if at all, on an excess basis following exhaustion of the ACE Policy; and (6) for any other relief this Court deems proper.

ELECTRONICALLY FILED
6/25/2018 3:15 PM
2018-CH-07976
PAGE 11 of 11

Respectfully submitted,

Defendant and Counter-Plaintiff, Amerisure Insurance Company, as subrogee of Keeley Construction, Inc.

By: _/s/ Brett L. Warning_
        Emerson & Elder, P.C.

Donald E. Elder – dee@emersonelder.com
Anthony N. Balice – tony@emersonelder.com
Brett L. Warning – brett@emersonelder.com
Emerson & Elder, P.C.
53 West Jackson Blvd.
Suite 526
Chicago, IL 60604
Tel: (312) 519-8975
Firm ID: 58666

ELECTRONICALLY FILED
6/25/2018 3:15 PM
2018-CH-07976
CALENDAR: 03
PAGE 1 of 17
CIRCUIT COURT OF
COOK COUNTY, ILLINOIS
CHANCERY DIVISION
CLERK DOROTHY BROWN

# EXHIBIT A

ELECTRONICALLY FILED
11/8/2017 1:40 PM
2015-L-001659
CALENDAR: D
PAGE 1 of 16
CIRCUIT COURT OF
COOK COUNTY, ILLINOIS
LAW DIVISION
CLERK DOROTHY BROWN

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT, LAW DIVISION

| | |
|---|---|
| MARGARITA VENEGAS, as Guardian of the Estate of ANTONIO VENEGAS, a Disabled Person, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) ) ) |
| IRON MOUNTAIN, INC. and ELITE STORAGE SOLUTIONS, LLC Defendants, | ) ) ) ) ) | 2015 L 001659 |
| ELITE STORAGE SOLUTIONS, LLC, | ) |
| Third Party Plaintiff, v. PRECISION BUILDERS & CONTRACTORS LLC, MIM INSTALLATIONS, INC. and THE VON GROUP, INC. | ) ) ) ) ) ) |

## SECOND AMENDED COMPLAINT AT LAW

Now comes Plaintiff, Margarita Venegas, as Guardian of the Estate of Antonio Venegas, a Disabled Person, by her attorneys Galliani, Doell & Cozzi, Ltd., and for her Amended Complaint at Law, and states as follows:

### COUNT I

1)      Plaintiff Margarita Venegas is the mother of Antonio Venegas, a disabled adult, and was appointed Guardian of his Person and Estate by the Circuit Court of Cook County on January 20, 2015 under docket number 14 P 007460.

ELECTRONICALLY FILED
6/25/2018 3:15 PM
2018-CH-07976
PAGE 2 of 17

2)      Elite Storage Solutions, Inc. is a foreign corporation, doing business throughout the State of Illinois, including Cook County.

3)      Iron Mountain, Inc. is a foreign corporation doing business throughout the State of Illinois, including Cook County.

4)      MIM Installations, Inc. is a foreign corporation doing business throughout the State of Illinois, including Cook County.

5)      The Von Group, Inc. is a foreign corporation doing business throughout the State of Illinois, including Cook County.

6)      On or before November 13, 2013, Antonio Venegas was an employee of Precision Builders and Contractors, Inc.

7)      Prior to November 13, 2013, Defendant Iron Mountain, inc. entered into an agreement with Elite Storage Solutions, Inc. for the design and construction of a multi-story storage rack system in the premises owned, managed, operated and controlled by Iron Mountain, inc. at 2755 Alft Lane, Elgin, Illinois.

8)      Prior to November 13, 2013, Iron Mountain and Elite engaged Precision Builders and Contractors, Inc. to erect the storage rack system in accord with Elite and Iron Mountain's specifications and under the terms of Iron Mountain's Contractor/Vendor Safety & Security Program, an executed copy of which is in the possession of Iron Mountain. (A blank copy of

such document is attached hereto as Exhibit A. Upon information and belief, the original document was executed by Andy Stanczak for Precision on October 15, 2013, Exhibit B)

9)  Prior to November 13, 2013, Precision Builders and Contractors, Inc. entered into a contract with MIM Installations, Inc. to perform installation work at 2755 Alft Lane, Elgin, Illinois as a subcontractor for Precision Builders and Contractors, Inc.

10) Prior to November 13, 2013, Iron Mountain engaged the Von Group to manage said installation project at 2755 Alft Lane, Elgin, Illinois.

11) It then and there became and was the duty of Iron Mountain Inc. to exercise such degree of care in the supervision, installation, construction and erection of the storage rack system so as to avoid injury to those lawfully upon the premises.

12) Notwithstanding such duty, on and before November 13, 2013, Defendant Iron Mountain, Inc. was guilty of one or more of the following careless and negligent acts and/or omissions:

> a) Failed to develop, provide and enforce an adequate fall protection program;
>
> b) Failed to provide competent supervision of a fall protection program;

ELECTRONICALLY FILED
6/28/2018 3:40 PM
2018-CH004956
PAGE 3 of 18

    c) Failed to provide or ensure that adequate fall protection equipment was provided and used during the work;

    d) Failed to properly and competently supervise the work being performed.

    e) Were otherwise careless and negligent.

13)    As a direct and proximate result of one or more of the foregoing careless and negligent acts and/or omissions, Antonio Venegas was caused to fall from the work area and suffer severe, painful, permanent and life-altering injuries, and has expended and become liable for, and will in the future become liable for great sums for medical care and rehabilitation, and has lost and will in the future lose great sums in income, all to his great loss and damage.

Wherefore, Margarita Venegas, as Guardian of the Estate and Person of Antonio Venegas, prays this Honorable Court enter judgment in her favor and against Defendant Iron Mountain, Inc., in a sum in excess of $50,000, along with the costs of this action.

## COUNT II

1)    Plaintiff Margarita Venegas is the mother of Antonio Venegas, a

disabled adult, and was appointed Guardian of his Person and Estate by the Circuit Court of Cook County on January 20, 2015 under docket number 14 P 007460.

2) Elite Storage Solutions, Inc. is a foreign corporation, doing business throughout the State of Illinois, including Cook County.

3) Iron Mountain, Inc. is a foreign corporation doing business throughout the State of Illinois, including Cook County.

4) On or before November 13, 2013, Antonio Venegas was an employee of Precision Builders and Contractors, Inc.

5) Prior to November 13, 2013, Elite Storage Solutions entered into a contract to design, manufacture, sell and construct a certain multi-story storage rack system in the premises owned, maintained, operated and controlled by Iron Mountain, inc. at 2755 Alft Lane, in Elgin, Illinois.

6) Prior to November 13, 2013, Defendant Elite Storage Solutions engaged Precision Builders and Contractor to erect the storage rack system in accord with Elite's specifications and instructions and under the direction and control of Elite's project manager.

7) It then and there became and was the duty of Elite Storage Solutions,

Inc. to exercise such degree of care in the manufacture, construction, and erection of the storage rack system so as to avoid injury to those lawfully upon the premises.

8) Notwithstanding such duty, on and before November 13, 2013, Defendant Elite Storage Solutions, Inc. was guilty of one or more of the following careless and negligent acts and/or omissions:

   a) Failed to develop, provide and enforce an adequate fall protection program;

   b) Failed to provide competent supervision of a fall protection program;

   c) Failed to provide or ensure that adequate fall protection equipment was provided and used during the work;

   d) Failed to properly and competently supervise the work being performed.

   e) Were otherwise careless and negligent.

9) As a direct and proximate result of one or more of the foregoing careless and negligent acts and/or omissions, Antonio Venegas was caused to fall from the work area and suffer severe, painful, permanent and life-altering injuries, and has expended and become liable for, and will in the future become liable for great sums for

ELECTRONICALLY FILED
6/28/2018 3:46 PM
2018-CH007696
PAGE 6 of 16

medical care and rehabilitation, and has lost and will in the future lose great sums in income, all to his great loss and damage.

Wherefore, Margarita Venegas, as Guardian of the Estate and Person of Antonio Venegas, prays this Honorable Court enter judgment in her favor and against Defendant Elite Storage Solutions, in a sum in excess of $50,000, along with the costs of this action.

## COUNT III

1) Plaintiff Margarita Venegas is the mother of Antonio Venegas, a disabled adult, and was appointed Guardian of his Person and Estate by the Circuit Court of Cook County on January 20, 2015 under docket number 14 P 007460.

2) Elite Storage Solutions, Inc. is a foreign corporation, doing business throughout the State of Illinois, including Cook County.

3) Iron Mountain, Inc. is a foreign corporation doing business throughout the State of Illinois, including Cook County.

4) Precision Builders and Contractors, Inc. is a foreign corporation doing business throughout the State of Illinois, including Cook County.

5) MIM Installations, Inc. is a foreign corporation doing business throughout the State of Illinois, including Cook County.

6) On or before November 13, 2013, Antonio Venegas was an employee of

ELECTRONICALLY FILED
6/28/2018 3:40 PM
2018-CH00795
PAGE 8 of 16

Precision Builders and Contractors, Inc.

7) Prior to November 13, 2013, Elite Storage Solutions entered into a contract to design, manufacture, sell and construct a certain multi-story storage rack system in the premises owned, maintained, operated and controlled by Iron Mountain, Inc. at 2755 Alft Lane, in Elgin, Illinois.

8) Prior to November 13, 2013, Defendant Elite Storage Solutions engaged Precision Builders and Contractor to erect the storage rack system in accord with Elite's specifications and instructions and under the direction and control of Elite's project manager.

9) Prior to November 13, 2013, Precision Builders and Contractors, Inc. entered into a contract with MIM Installations, Inc. to provide labor for the installation project at 2755 Alft Lane, in Elgin, Illinois as a subcontractor for Precision Builders and Contractors, Inc.

10) It then and there became and was the duty of MIM Installations, Inc. to exercise such degree of care in the manufacture, construction, and erection of the storage rack system so as to avoid injury to those lawfully upon the premises.

11) Notwithstanding such duty, on and before November 13, 2013, Defendant MIM Installations, Inc. was guilty of one or more of the following careless and negligent acts and/or omissions:

ELECTRONICALLY FILED
6/28/2018 3:46 PM
2018-CH00766
PAGE 8 of 16

a. Created, caused and/or allowed to exist a dangerous condition, without proper covering, barrier or other protection from falls;

b. Allowed access to the worksite without providing the proper safeguards;

c. Allowed access to worksite without providing warning of dangerous condition it created;

d. Failed to properly supervise, inspect, manage, and/or control the worksite;

e. Failed to enforce reasonable standards of safety at the worksite;

f. Failed to properly supervise the work being done by its employees;

g. Failed to exercise its obligation as a contractor and/or exercised its obligation in a dangerous and hazardous manner; and

h. Were otherwise careless and negligent.

12) As a direct and proximate result of one or more of the foregoing careless and negligent acts and/or omissions, Antonio Venegas was caused to fall from the work area and suffer severe, painful, permanent and life-altering injuries, and has expended and become liable for, and will in the future become liable for great sums for

ELECTRONICALLY FILED
6/28/2018 3:49 PM
2018-CH00696
IMAGE BOOKING
CIRCUIT CLERK

medical care and rehabilitation, and has lost and will in the future lose

great sums in income, all to his great loss and damage.

Wherefore, Margarita Venegas, as Guardian of the Estate and Person of

Antonio Venegas, prays this Honorable Court enter judgment in her favor and

against Defendant MIM Installations, Inc., in a sum in excess of $50,000, along

with the costs of this action.

## COUNT IV

1) Plaintiff Margarita Venegas is the mother of Antonio Venegas, a
   disabled adult, and was appointed Guardian of his Person and Estate by
   the Circuit Court of Cook County on January 20, 2015 under docket
   number 14 P 007460.

2) Elite Storage Solutions, Inc. is a foreign corporation, doing business
   throughout the State of Illinois, including Cook County.

3) Iron Mountain, Inc. is a foreign corporation doing business throughout
   the State of Illinois, including Cook County.

4) Precision Builders and Contractors, Inc. is a foreign corporation doing
   business throughout the State of Illinois, including Cook County.

5) The Von Group is a foreign corporation doing business throughout the
   State of Illinois, including Cook County.

6) On or before November 13, 2013, Antonio Venegas was an employee of

ELECTRONICALLY FILED
6/28/2018 3:46 PM
2018-CH00695
PAGE 10 of 18

Precision Builders and Contractors, Inc.

7)   Prior to November 13, 2013, Elite Storage Solutions entered into a contract to design, manufacture, sell and construct a certain multi-story storage rack system in the premises owned, maintained, operated and controlled by Iron Mountain, Inc. at 2755 Alft Lane, in Elgin, Illinois.

8)   Prior to November 13, 2013, Defendant Elite Storage Solutions engaged Precision Builders and Contractor to erect the storage rack system in accord with Elite's specifications and instructions and under the direction and control of Elite's project manager.

9)   Prior to November 13, 2013, Iron Mountain engaged The Von Group, Inc. to manage the installation project at 2755 Alft Lane, in Elgin, Illinois.

10)  It then and there became and was the duty of The Von Group, Inc. to exercise such degree of care in the manufacture, construction, and erection of the storage rack system so as to avoid injury to those lawfully upon the premises.

11)  Notwithstanding such duty, on and before November 13, 2013, Defendant The Von Group, Inc. was guilty of one or more of the following careless and negligent acts and/or omissions:

a) Failed to develop, provide and enforce an adequate fall protection program;

b) Failed to provide competent supervision of a fall protection program;

c) Failed to provide or ensure that adequate fall protection equipment was provided and used during the work;

d) Failed to properly and competently supervise the work being performed.

e) Were otherwise careless and negligent.

12) As a direct and proximate result of one or more of the foregoing careless and negligent acts and/or omissions, Antonio Venegas was caused to fall from the work area and suffer severe, painful, permanent and life-altering injuries, and has expended and become liable for, and will in the future become liable for great sums for medical care and rehabilitation, and has lost and will in the future lose great sums in income, all to his great loss and damage.

Wherefore, Margarita Venegas, as Guardian of the Estate and Person of Antonio Venegas, prays this Honorable Court enter judgment in her favor and against Defendant The Von Group, Inc., in a sum in excess of $50,000, along with the costs of this action.

## COUNT V

1)    Plaintiff Margarita Venegas is the mother of Antonio Venegas, a
      disabled adult, and was appointed Guardian of his Person and Estate by
      the Circuit Court of Cook County on January 20, 2015 under docket
      number 14 P 007460.

2)    Elite Storage Solutions, Inc. is a foreign corporation, doing business
      throughout the State of Illinois, including Cook County.

3)    Iron Mountain Information Management, LLC is a foreign corporation
      doing business throughout the State of Illinois, including Cook County.

4)    MIM Installations, Inc. is a foreign corporation doing business throughout
      the State of Illinois, including Cook County.

5)    The Von Group is a foreign corporation doing business throughout the
      State of Illinois, including Cook County.

6)    On or before November 13, 2013, Antonio Venegas was an employee of
      Precision Builders and Contractors, Inc.

7)    Prior to November 13, 2013, Iron Mountain Information Management,
      LLC entered into an agreement with Elite Storage Solutions, Inc. for the
      design and construction of a multi-story rack system in the premises
      owned, managed, operated and controlled by Iron Mountain, Inc. at 2755
      Alft Lane, Elgin, Illinois.

8)     Prior to November 13, 2013, Defendant Iron Mountain Information

Management, LLC engaged Precision Builders and Contractor to erect

the storage rack system in accord with Elite's and Iron Mountain's

specifications and under the terms of Iron Mountain's Contractor/Vendor

Safety & Security Program, an executed copy of which is in the

possession of Iron Mountain. (A blank copy of such document is attached

hereto as Exhibit A.  Upon information and belief, the original document

was executed by Andy Stanczak for Precision on October 15, 2013,

Exhibit B).

9)     Prior to November 13, 2013, Precision Builders and Contractors, Inc.

entered into a contract with MIM Installations, Inc. to perform installation

work at 2755 Alft Lane, Elgin, Illinois as subcontractor for Precision

Builders and Contractors, Inc.

10)    Prior to November 13, 2013, Iron Mountain Information Management

LLC engaged The Von Group, Inc. to manage said installation project at

2755 Alft Lane, in Elgin, Illinois.

11)    It then and there became and was the duty of Iron Mountain Information

Management LLC to exercise such degree of care in the supervision,

installation, construction and erection of the storage rack system so as to

avoid injury to those lawfully upon the premises.

ELECTRONICALLY FILED
6/28/2018 3:48 PM
2018-CH-001956
PAGE 19 of 18

12)     Notwithstanding such duty, on and before November 13, 2013,

        Defendant Iron Mountain Information Management, LLC. was guilty of

        one or more of the following careless and negligent acts and/or

        omissions:

         a) Failed to develop, provide and enforce an adequate fall
            protection program;

         b) Failed to provide competent supervision of a fall protection
            program;

         c) Failed to provide or ensure that adequate fall protection
            equipment was provided and used during the work;

         d) Failed to properly and competently supervise the work being
            performed.

         e) Were otherwise careless and negligent.

13)     As a direct and proximate result of one or more of the foregoing

        careless and negligent acts and/or omissions, Antonio Venegas was

        caused to fall from the work area and suffer severe, painful,

        permanent and life-altering injuries, and has expended and become

        liable for, and will in the future become liable for great sums for

        medical care and rehabilitation, and has lost and will in the future lose

        great sums in income, all to his great loss and damage.

Wherefore, Margarita Venegas, as Guardian of the Estate and Person of Antonio Venegas, prays this Honorable Court enter judgment in her favor and against Defendant Iron Mountain Information Management, LLC., in a sum in excess of $50,000, along with the costs of this action.

Galliani, Doell & Cozzi, Ltd.

By: _____
Robert J. Cozzi

90770
Galliani, Doell & Cozzi, Ltd.
20 N. Clark Street  Suite 825
Chicago, IL 60602
(312) 726-2182

ELECTRONICALLY FILED
6/28/2018 3:46 PM
2018-CH00956
PAGE 16 of 18

ELECTRONICALLY FILED
6/25/2018 3:15 PM
2018-CH-07976
CALENDAR: 03
PAGE 1 of 24
CIRCUIT COURT OF
COOK COUNTY, ILLINOIS
CHANCERY DIVISION
CLERK DOROTHY BROWN

# EXHIBIT B



### PROFESSIONAL SERVICES AGREEMENT

THIS AGREEMENT (together with the Statement of Work, Travel Policy, Data Privacy Addendum, Summary of Iron Mountain's Background Investigation Requirements for Third-Party Relationships and . the "Agreement") is between Elite Storage Solutions ("Vendor"), with its principal place of business located at 1118 W. Spring Street, Monroe, GA, 30655and Iron Mountain Information Management, LLC ("Iron Mountain"), with its principal place of business located at 745 Atlantic Avenue Boston, MA 02111. Vendor and Iron Mountain may be referred to individually as a "Party" or collectively as the "Parties" throughout this Agreement. This Agreement shall be effective as of __/__/__/_2013_ (the "Effective Date").

**RECITALS**

WHEREAS, Vendor is responsible for manufacture, delivery, installation, and applicable remediation work relative to racking in Iron Mountain facilities; and

WHEREAS, Iron Mountain will utilize Vendor as an approved supplier of racking manufacture, delivery, installation, and applicable remediation work.

NOW, THEREFORE, Vendor and Iron Mountain agree as follows:

1.  **Scope of Services**

    1.1   Vendor will provide to Iron Mountain the products and/or services (the "Work") described in a Statement of Work ("SOW") set forth in Exhibit A. Throughout this Agreement, the use of the word Vendor shall also include "Vendor's Consultant(s)" as defined below in Section 1.2.2. The Work shall be provided in accordance with the details and completion times as set forth in the SOW. If there are any terms in the SOW that conflict with the terms hereunder, the terms in the SOW shall prevail.

    1.2   Each SOW shall include, at a minimum, the following information:

        1.2.1   The term of the SOW, including a start and end date.
        1.2.2   A description of the Work, including the identity of the personnel ("Vendor's Consultant(s)") (which shall include, but not be limited to, Vendor's employees, temporary workers, contractors, subcontractors, representatives and assigns, agents, subsidiaries or affiliates) who will perform the Work, if applicable.
        1.2.3   A description of Vendor's Pre-Existing Materials, as such term is defined in Section 4.2 of this Agreement.
        1.2.4   A description of Vendor's Materials, as such term is defined in Section 4.2 of this Agreement.
        1.2.5   Fees associated with the Work.
        1.2.6   Project delivery schedule, including milestones dates, delivery dates of the Work, date of completion of the Work.
        1.2.7   Invoicing and payment terms, if different from the terms set forth in Section 2 below.
        1.2.8   Service level agreement and acceptance terms.
        1.2.9   The Iron Mountain designee who can provide approval for all invoices and travel reimbursements, as well as any other project-related approvals.

2   **Price and Payment Terms**

    2.1   Iron Mountain and Vendor agree to cooperate with each other's reasonable requests with respect to the scheduling and performance of the Work. Iron Mountain agrees to pay Vendor

DRAFT Iron Mountain PSA (Rev.10.05.2012) © 2012 Iron Mountain Incorporated



**EXHIBIT B**

IM 000126

ELECTRONICALLY FILED
6/26/2018 3:58 PM
2018-CH00855
HMGE45df1296

- 2 -

as set forth in the SOW. Vendor shall be responsible for its own expenses unless otherwise specified in advance in the SOW, and any previously agreed upon travel expenses shall be in accordance with the Travel Policy for Iron Mountain Vendors set forth in Exhibit B.

2.2     Unless otherwise stated in the SOW, payment will be made upon completion of each milestone agreed to in the SOW. The payment terms are forty-five (45) days from Iron Mountain's receipt of Vendor's invoice. Vendor shall send all invoices to the Iron Mountain designee for evaluation to ensure the Work meets the mutually agreed to milestone requirements. If such Work meets the mutually agreed to milestone requirements, the invoice will then be submitted to Iron Mountain's accounts payable department for payment.

3     Term and Termination

3.1     Unless terminated as provided herein, this Agreement shall have a term of two (2) years from the effective date. Iron Mountain may terminate this Agreement without cause, by giving Vendor thirty (30) days advance written notice. In the event of termination without cause by Iron Mountain, Iron Mountain agrees to pay Vendor for all of the Work performed up to the date of termination, based upon the actual hours worked by Vendor (but not to exceed the fixed price amount if a fixed price has been agreed upon under the SOW for such Work), provided Vendor delivers to Iron Mountain all the Work performed by Vendor in a satisfactory manner under the SOW up to the effective date of termination, including, but not limited to, notes, reports, and analyses and other stated deliverables, whether completed or in progress, which shall be compiled in an organized and understandable format.

3.2     Either Party may terminate this Agreement for material breach of the other Party's obligations and/or warranties, provided, however, the terminating Party shall give the other party at least thirty (30) days prior written notice of the breach and opportunity to cure within the thirty (30) days. If the non-breaching Party has a reasonable belief that such material breach cannot be cured within thirty (30) days, such Party may terminate this Agreement immediately, unless otherwise mutually agreed upon by the Parties. Termination for material breach shall not preclude the terminating Party from exercising any other remedies it may have under this Agreement or at law.

3.3     **Effect of Termination.** Upon termination of this Agreement for any reason, Vendor shall return, or, at the written direction of Iron Mountain, destroy, delete, de-identify or otherwise modify all Personal Data (defined at Section 6.1) received by Vendor from Iron Mountain, or created or received by Vendor on behalf of Iron Mountain or its Customers, and Vendor shall cause its own third-party service Vendors to do the same in respect of the Personal Data. Unless instructed in writing by Iron Mountain, Vendor shall retain no copies of Personal Data. In the event that Vendor is directed by Iron Mountain to destroy, delete, de-identify or otherwise modify Personal Data in lieu of returning it to Iron Mountain, then Vendor shall provide a certificate to Iron Mountain confirming its compliance with Iron Mountain's instructions, in form and substance reasonably acceptable to Iron Mountain.

4     Ownership of Intellectual Property

4.1     Subject to the terms of this Agreement, Vendor agrees that the Work produced by Vendor hereunder is work made for hire, and that all rights, title and interest to and in the Work, including rights in copyright, inventions, patents, moral rights, literary and artistic rights pursuant to United States and international law (as amended and re-enacted from time to time): (a) upon its creation, vest in Iron Mountain; and (b) remain the sole property of Iron Mountain. Vendor agrees to, and does hereby, transfer to Iron Mountain all right, title and interest, including any copyrights, inventions, patents, moral rights and trade secrets in the Work regardless of whether or not the Work is deemed by a court of competent jurisdiction to be works made for hire. Vendor shall also execute all assignment or other legal documents that vest ownership of the Work in Iron Mountain. Vendor also agrees, at Iron Mountain's expense, to assist Iron Mountain and its nominees in every proper way to secure, maintain,

Iron Mountain PSA (Rev.10.05.2012)      © 2012 Iron Mountain Incorporated



ELECTRONICALLY FILED
6/26/2018 3:59 PM
2018-CH08556
PAGE 80 of 298

IM 000127

- 3 -

and defend Iron Mountain's ownership in the Work, including but not limited to patents, trademarks and/or copyrights and any extensions or renewals thereof on such Work.

4.2    Notwithstanding the foregoing, Vendor shall retain ownership rights to: (a) all of its previously existing intellectual property as disclosed in the SOW, which may include any derivatives, modifications and enhancements to such previously existing intellectual property ("Vendor's Pre-Existing Materials"), (b) Confidential Information of Vendor, and (c) any materials used, developed or created by Vendor or its third-party licensors during the performance of this Agreement that are outside the scope of Sections 4.1 and 4.2(a) above, as such materials are disclosed in the SOW ("Vendor's Materials"). If any of Vendor's Pre-Existing Materials and Vendor's Materials is included in the Work delivered to Iron Mountain, Vendor grants Iron Mountain a world-wide, royalty-free, perpetual license to use, display, modify, distribute, and create derivative works of such Vendor's Pre-Existing Materials and Vendor's Materials subject to the scope of the SOW and for use of the Work.

5    **Confidential Information**

5.1    "Confidential Information" shall mean any proprietary, confidential and/or trade secret information concerning or relating to the property, business and affairs of the party disclosing such information (the "Disclosing Party") that is disclosed to the other party (the "Receiving Party") under this Agreement.

5.2    All information relating to the Disclosing Party that is known, or should reasonably be known to be confidential or proprietary by the Receiving Party, or which is clearly marked as such shall be held in confidence by the Receiving Party. The Disclosing Party shall not disclose or use any such Confidential Information except to the extent that disclosure or use is reasonably necessary to the performance of the Work under the SOW. All such disclosures of Confidential Information shall only be made to those who have a need to know for purposes of performing the Work under the SOW, and who are bound by a written agreement with the Receiving Party to guard such disclosed Confidential Information in accordance with confidentiality provisions and remedies for breach that are at least as restrictive as those hereunder.

5.3    These obligations of confidentiality shall, with respect to each disclosure of Confidential Information, extend for a period of two (2) years from the date of termination of this Agreement, but Confidential Information shall not include information that a Receiving Party can demonstrate by reasonably sufficient evidence: (a) was known to the Receiving Party before receipt thereof under this Agreement, (b) is disclosed to the Receiving Party by a third party who has a right to make such disclosure without any obligation of confidentiality to the Disclosing Party, (c) is or becomes generally known to the public or in the trade without violation of either this Agreement by the Receiving Party or any confidentiality obligation owed to the Disclosing Party by any third party, (d) is furnished by the Disclosing Party to a third party without restriction on subsequent disclosure, or (e) is independently developed by the Receiving Party or its employees or subcontractors.

6    **Data Protection and Background Investigations**

6.1    Vendor recognizes that due to the nature of Iron Mountain's storage business, a high level of security is required to be maintained for the protection of Personal Data. ("Personal Data" is defined as any data related to or associated with an identified or identifiable natural person, including, but not limited to, any Iron Mountain employee information, or Iron Mountain customer information. A natural person is identifiable if, with reasonable effort, the individual could be identified from the data or a grouping of data.) If it is foreseeable that Vendor and/or Vendor's Consultant(s) may have access to any Personal Data at any time, regardless of where the Personal Data resides, in connection with the SOW or Work to be performed under this Agreement, Vendor agrees to execute the Data Privacy Addendum attached hereto as Exhibit C, and Exhibit C shall control with respect to all Personal Data.



ELECTRONICALLY FILED
6/26/2018 3:59 PM
2018-CH-08059
PAGE 48 of 126

IM 000128

- 4 -

Vendor acknowledges and agrees that a separate Data Privacy Addendum may be required for any Work performed by Vendor outside of North America. In such event, Vendor agrees to execute the appropriate additional Data Privacy Addendum and agrees that such Addendum shall be incorporated by reference to this Agreement.

6.2    Vendor also recognizes that that a key component to Iron Mountain's security policy is the performance of criminal background investigations and drug testing of all of its employees, vendors, and contractors. Vendor warrants that it will comply with Iron Mountain's Background Investigation Requirements for Third-Party Relationships policy, a summary of which is attached hereto as Exhibit D, and as may be amended from time to time. Vendor shall certify to Iron Mountain that Vendor, and its Vendor Consultant(s) meet the "Desired Result" as specifically defined in such policy.

6.3    If Vendor's Consultant(s) have been provided physical or logical access to Iron Mountain facilities or networks, or to Personal Data, Vendor represents and warrants that it shall immediately notify Iron Mountain of any changes in the status of Vendor's Consultant(s), including but not limited to: (i) termination of employment; or (ii) assignment to or reassignment from a then current SOW; or (iii) change in level or type of access; or (iv) any other material change that affects this Section 6.3.

7    **Warranties and Warranty Disclaimer**

7.1.    Vendor represents and warrants the following:

7.1.1.    That the Work will be provided by the Vendor's Consultant(s) set forth in the SOW and such Work shall be conducted in a professional manner, and in conformity with prevailing industry standards;

7.1.2.    That the Vendor's Consultant(s) it assigns to perform the Work shall have the appropriate skill, training and background to perform such Work in a competent manner;

7.1.3.    That all items of the Work are original items that vest in Iron Mountain or, if all or a portion of the Work contains Vendor's Pre-Existing Materials and/or Vendor's Materials, that the portions of the Work that are original items vest in Iron Mountain and that the Vendor is the legal owner of such Pre-Existing Materials and/or Vendor's Materials;

7.1.4.    That no portion of the Work, or Iron Mountain's use or distribution of such Work, will violate any copyright, patent, trade mark, trade secret or any other proprietary right of any third party;

7.1.5.    That its performance of the services hereunder, and its entering into this Agreement with Iron Mountain shall not conflict with any contractual or other relationships to which Vendor is bound. Vendor has the right and authority to perform Work for Iron Mountain under this Agreement; and

7.1.6.    That the Work will be performed in compliance with all applicable federal, state, and local laws and regulations as well as laws and regulations of foreign jurisdictions, as applicable. This includes, but is not limited to, MA 201 CMR 17.00. Without limiting the generality of the foregoing, Vendor warrants and represents that any mailings, telephone calling and lead generation activities undertaken on Iron Mountain's behalf, and any sales leads provided to Iron Mountain shall comply with "Do Not Call" lists, "Opt-in" lists, "Opt-Out" lists, and state and federal consumer protection laws, laws and regulations of the Federal Trade Commission (FTC) and laws and regulations of the Federal Communications Commission (FCC) as applicable.



ELECTRONICALLY FILED 6/26/2018 3:56 PM 2018-CH08056

IM 000129

- 5 -

7.1.7.   That if the Work includes software, Vendor will comply with the additional warranty terms set forth in the Software Addendum, attached as Exhibit E to this Agreement.

8     **Material Defects or Deficiencies in Vendor's Work**

8.1     In addition to any other remedies Iron Mountain may have, Vendor shall correct any material defects or deficiencies in the Work of which Iron Mountain notifies Vendor. Such notice shall be in writing within ninety (90) days after the completion and acceptance in writing by Iron Mountain of that portion of the Work. In the absence of any such notice, the Work shall be deemed satisfactory to, and accepted by Iron Mountain.

9     **No Consequential Damages/Indemnifications**

9.1     No Consequential Damages. Except for a Party's breach of its warranties or indemnification obligations hereunder, in no event shall either Party be liable for any loss of profit or revenue by the other Party, or for any other consequential, incidental, indirect or economic damages incurred or suffered by such other Party arising as a result of or related to the Work or this Agreement, whether in contract, tort, or otherwise, even if such Party has been advised of the possibility of such loss or damages.

9.2     Indemnification. Vendor shall indemnify, defend and hold Iron Mountain harmless from any and all claims brought against Iron Mountain by third parties and all resultant costs, expenses and reasonable attorneys' fees incurred by Iron Mountain to the extent such claims arise out of or are in connection with Vendor's Work under this Agreement.

9.3     Bodily Injury/Property Damage Indemnification. Each party (the "Indemnifying Party") agrees to indemnify the other party (the "Indemnified Party") with respect to any claim or demand for bodily injury (including death) or loss of or damage to tangible property, to the extent based upon the negligent acts or omissions of the Indemnifying Party, provided that the Indemnified Party provides the Indemnifying Party prompt written notice of any such claim or demand. The Indemnified Party shall grant the Indemnifying Party the option to control the defense and/or settlement of the claim or demand and, in the event the Indemnifying Party exercises such option to control the defense/settlement, then (i) the Indemnifying Party shall not settle any claim requiring any admission of fault on the part of the Indemnified Party without its prior written consent, (ii) the Indemnified Party shall have the right to participate, at its own expense, in the claim or suit and (iii) the Indemnified Party shall cooperate with the Indemnifying Party as may be reasonably requested. The Indemnifying Party's sole obligation hereunder shall be to pay any judgment rendered, or settlement made, as a result of any such claim or demand.

10     Insurance

10.1     Vendor shall procure and maintain the types of insurance listed below and in the minimum limits shown. Such insurance shall be provided by an insurer authorized to do business in the jurisdiction where services will be performed and that maintains an A.M. Best's rating of "A-, XI" or better. Vendor will provide a certificate of such insurance, which will identify Iron Mountain as an additional insured on the liability policies.



Iron Mountain PSA (Rev.10.05.2012)     © 2012 Iron Mountain Incorporated

ELECTRONICALLY FILED
6/26/2018 3:18 PM
2018-CH00786%
IIPAGEE36of1390

- 6 -

ELECTRONICALLY FILED
6/26/2018 3:59 PM
2018-CH008556
PAGE 70 of 290

| Coverage | Limits |
|---|---|
| Workers Compensation | Statutory |
| Employers' Liability | $1.0 million per accident or bodily injury by accident, $1.0 million aggregate for disease, and $1.0 million per employee for bodily injury by disease. |
| General Liability, including contractual | $5.0 million combined single limit |
| Automobile Liability | $1.0 million per accident, combined single limit |
| Errors and Omissions | $5.0 million per occurrence combined single limit |
| Crime Insurance | $2.0 million per occurrence |

11 **Relation of Parties**

11.1   The performance by Vendor of its duties and obligations under this Agreement shall not create or imply an agency relationship between Vendor and Iron Mountain, nor shall this Agreement be deemed to constitute a joint venture or partnership between the parties. If Vendor employs the use of its own personnel ("Vendor's Consultant(s)" as defined herein at Section 1.2.2) under this Agreement, Vendor shall assume full liability for payroll withholding, worker's compensation and other statutory contributions. Iron Mountain shall have no direct or indirect liability for Vendor's Consultant('s/s') wages, salaries or other compensation or benefits. Iron Mountain shall have no obligation to pay Vendor's Consultant(s), as Vendor's Consultant(s) is/are not employees of Iron Mountain. Iron Mountain's sole obligation shall be to pay the Vendor at the agreed-upon rates in the SOW and it shall then be Vendor's sole obligation to appropriately compensate Vendor's Consultant(s).

12 **Vendor's Use of Subcontractors**

12.1   To the extent that Vendor uses subcontractors ("Vendor's Service Provider") to meet its obligations under this Agreement, such use shall not relieve Vendor of any of its obligations under this Agreement. Vendor shall be responsible to Iron Mountain for Vendor's Service Provider's acts or omissions under this Agreement. Vendor shall ensure that it requires Vendor's Service Provider to comply with terms and conditions substantially similar to the terms and conditions of this Agreement and shall specifically require Vendor's Service Provider to comply with all applicable state and federal laws, as well as the privacy and security policies required of Vendor in this Agreement, including those requirements in Exhibit C hereto (the "Data Privacy Addendum"). No provision whatsoever of this Agreement shall be deemed to create a contractual relationship between Iron Mountain and Vendor's Service Provider, nor between Iron Mountain and employees of Vendor's Service Provider. Vendor shall not use any other Vendor's Service Provider to perform work under this Agreement without the express prior written approval of Iron Mountain.



IM 000131

- 7 -

ELECTRONICALLY FILED
6/26/2018 3:58 PM
2018-CH00839
PAGE 32 of 236

**13      Payment Card Industry Data Security Standard**

13.1      To the extent that Vendor has access to cardholder data, Vendor represents and warrants that it shall adhere to the relevant sections of the Payment Card Industry Data Security Standard ("PCI DSS") for all Work performed under this Agreement. Vendor represents and warrants that it shall contractually bind all Vendor Service Providers that it uses in its performance of Work under this Agreement to adhere to the relevant sections of the PCI DSS requirements. Should the PCI DSS requirements change, Iron Mountain shall notify Vendor, Vendor shall have thirty (30) days in which to evaluate and notify Iron Mountain whether it can comply with such changes to PCI DSS. Should Vendor determine that it cannot comply with such changes to PCI DSS, Iron Mountain shall have the option to terminate this Agreement. Failure by Vendor or Vendor's Service Providers to adhere to the relevant sections of PCI DSS shall constitute a material breach of this Agreement and shall be cause for immediate termination.

**14      Miscellaneous Provisions**

14.1      Vendor may not assign this Agreement, in whole or in part.

14.2      This Agreement shall be governed by and construed in accordance with the laws of the Commonwealth of Massachusetts. The Parties consent to the exclusive jurisdiction of the courts of the Commonwealth of Massachusetts for any action or proceeding brought by either Party in connection with or arising out of this Agreement.

14.3      If any litigation or arbitration is necessary to enforce the terms of this Agreement, the prevailing Party shall be entitled to reasonable attorneys' fees and costs.

14.4      If any term of this Agreement is found to be unenforceable or contrary to law, it shall be modified to the least extent necessary to make it enforceable, and the remaining portions of this Agreement will remain in full force and effect.

14.5      Neither Party shall be held responsible for any delay or failure in performance of any part of this Agreement if such delay is caused by events or circumstances beyond the delayed Party's reasonable control.

14.6      The waiver by any Party of any breach of covenant shall not be construed to be a waiver of any succeeding breach or any other covenant. All waivers must be in writing, and signed by the Party waiving its rights. This Agreement may be modified only by a written instrument executed by authorized representatives of the Parties hereto.

14.7      This Agreement constitutes the entire agreement between the parties with respect to the subject matter hereof, and supersedes all prior agreements, proposals, negotiations, representations or communications relating to the subject matter. Both parties acknowledge that they have not been induced to enter into this Agreement by any representations or promises not specifically stated herein.

14.8      Time shall be of the essence for Vendor's performance under this Agreement.

14.9      Publicity. The Vendor agrees not to use Iron Mountain's or Affiliate('s/s') name, trademark or logo in any way on its web site or in any of its advertising or other written material provided to third parties, shall not create a link, either directly or indirectly between Vendor's web site and Iron Mountain's web sites, and shall not insert a reference or attribution to the Vendor or Vendor Consultant(s) in the Work, without the prior written consent of Iron Mountain. Vendor agrees to seek approval from a Vice President of Corporate Marketing and Communications of Iron Mountain to issue any news release or public communication in which Iron Mountain or its activities with the Vendor are mentioned.



- 8 -

14.10   Notices. Unless otherwise provided herein, any notice to be given by one Party to the other shall be in writing and shall be transmitted by certified mail, postage prepaid, or sent by nationally recognized overnight courier. Notice shall be effective when received by the addressee. The current addresses for such notices are as follows:

If to Vendor, then to:

ELITE STORAGE SOLUTIONS, LLC
1118 WEST SPRING STREET
MONROE GA 30655
ATTN: CHIEF FINANCIAL OFFICER

If to Iron Mountain, then to:

Iron Mountain Information Management, LLC

745 Atlantic Avenue, Boston MA 02111

Attn: Procurement

with a copy to:

Iron Mountain Information Management, LLC

745 Atlantic Avenue, Boston, MA 02111

Attn. General Counsel

Either Party may change the address to which notices are to be sent by sending a written notice to the other in accordance with the terms set forth in this Section.

14.11   Dispute Resolution. The following procedure shall be followed in all disputes other than breaches of material obligations under this Agreement which Iron Mountain and Vendor cannot resolve informally. The aggrieved Party shall notify the other Party in writing of the nature of the dispute with as much detail as possible about the nature of the dispute, all in accordance with the terms set forth above in Section 14.2. The persons identified for purposes of notices set forth in Section 14.10, or their designees, shall meet (in person or by telephone) within fourteen (14) days after the date of the written notification to attempt to resolve the dispute. If those persons are unable to agree on a resolution, then senior management personnel of each of Iron Mountain and Vendor having authority to resolve the dispute without the further consent of any other person ("Management") shall meet or otherwise act promptly to facilitate an agreement. If Management cannot resolve the dispute within thirty (30) days after their initial meeting or other action (or in case either Party fails to participate in the dispute resolution), either Party may take such other and further action as it deems necessary. Iron Mountain and Vendor agree that neither of them shall take any legal action unless and until this dispute resolution procedure has been employed or waived

<div style="writing-mode: vertical">ELECTRONICALLY FILED
6/26/2018 3:59 PM
2018-CH00659
8PAGE53of230</div>

Iron Mountain PSA (Rev.10.05.2012)       © 2012 Iron Mountain Incorporated



IM 000133

- 9 -

14.12   Equitable Relief.  Vendor acknowledges that monetary damages may be an inadequate remedy for breach by Vendor of this Agreement and, accordingly, Iron Mountain may enforce this Agreement, without following the alternative dispute resolution procedures set forth herein, by seeking appropriate equitable relief.

14.13   Code of Ethics.  Vendor shall comply with Iron Mountain's Code of Ethics and Business Conduct which is available at: www.ironmountain.com/code.

14.14   Anti-Bribery and Anti-Corruption.  Vendor shall comply with all applicable laws and regulations on bribery, corruption, and prohibited business practices. Subject to all applicable laws, Vendor has not and shall not offer, promise, make or agree to make any payments or gifts directly or indirectly to anyone for the purpose of influencing, or inducing anyone to influence decisions in favor of, Iron Mountain or any of its subsidiaries or affiliates.

[continued on next page]

ELECTRONICALLY FILED
6/26/2018 3:56 PM
2018-CH08896
PAGE 59 of 99



IM 000134

- 10 -

IN WITNESS WHEREOF, the parties have executed this Agreement on the date first set forth above.

**ACCEPTED AND AGREED TO:**
**Iron Mountain Information Management, LLC**

By: _John ~Jomoucsk/  11/4/13_
Buyer Signature                    Date
_John  Tomovcsik_
Printed Name
_FVP+ COO, North  America_
Title

Buyer Address:
745 Atlantic Ave.
Boston, MA 02111

**ACCEPTED AND AGREED TO:**
**Vendor**

By: _Sck  -CEO 6/24/13_
Vendor Signature               Date
_Steve Works_
Printed Name
_ELITE STORAGE SOLUTIONS, LLC_
Title & Organization
_1118 West Spring Street_
Vendor Address:
_Monroe, GA 30655_

> Approved as to Form and Legal Content:
> Iron Mountain Legal Department
>
> _Shilpa Daiya_
>
> Shilpa Daiya, Corporate Counsel & Contracts Specialist
> Date: April 24, 2013

ELECTRONICALLY FILED
6/26/2018 3:38 PM
2018-CH00/6596
PAGE 55 of 99

IM 000135

- 11 -

**EXHIBIT A: STATEMENT OF WORK** (Please refer to Section 1.2 of this Agreement for a listing of what this Statement of Work must contain.)

1. Vendor shall be responsible for manufacture, delivery, installation, and applicable remediation work for racking products to Iron Mountain facilities.
2. Pricing:

Rack System Pricing Renewal

1. Pricing for Racks:
   a) Steel Costs: Includes all processing and secondary additives, pickled, oiled, slit and staged at Nucor ready for shipment. Pricing tied to steel market and Nucor price increase or decrease announcements. Price adjusted quarterly.
      Price: $.42 par pound – (based on December 27, 2012 AMM raw steel index at .32)
   b) Plant Labor: Includes direct labor of welders, machine operators and plant personnel.
      Price: $.09 per pound.
   c) Overhead: Includes building rent and machinery. Also includes cost of paint, welding materials, scrap, and utilities. Does not include project management overhead.
      Price: $.10 per pound
   d) Profit: Includes profit for plant only – no project management costs.
      Price: $.09 per pound
      Total Price: $.70 per pound

2. Pricing for all buyouts: Includes all stairways, main aisle decking, bar-grating, netting, hardware, gates, VRC (and VRC's, pit installation, electrical installation and mechanical installation). Buyout margin includes specifying equipment type, creating bill of material counts, ordering materials, coordinating freight and delivery of materials, installing materials, paying for materials and invoicing Iron Mountain for materials. Payment for buyouts must be received within 45 days of invoice date.
   Price: Unless specified in the price list below, all buyouts supplied at cost plus a margin of 10%.

ELECTRONICALLY FILED
6/26/2018 3:56 PM
2018-CH00/8576
PAGE 58 of 98

IM 000136

## IRON MOUNTAIN - MASTER PARTS LIST (01-07-2013)

| Qty | Models | Description | [illegible] | [illegible] | [illegible] | [illegible] |
|---|---|---|---|---|---|---|
| [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] |

ELECTRONICALLY FILED
6/26/2018 3:58 PM
2018-CH-07675
PAGE 53 of 93

 © 2012 Iron Mountain Incorporated

- 13 -

3. Pricing for Labor for rack system installation: Includes crew of 5 men working 5 days per week, 8 hours per day. Crews will be professional experienced installers with $5M liability insurance coverage. Installers will be equipped with all necessary tools, cutters, welders, fork-lifts, scissor lifts uniforms first aid kits and OSHA training, lasers, phones, cameras and ability to email photos for quick response to field issues.

Price: $.30 per box plus a margin 15% equals $.35.3 per box. Any stoppage of work caused by IM will be billed at $35 hour per man. Overtime is billed at $52.50 per hour for all hours worked past 40 hours per week. Projects over 40' in height or final phases (in tight working conditions) may be charged at a higher rate. Multiple bids for labor will be obtained in those cases.

4. Pricing for Freight: Includes obtaining multiple bids from trucking companies and railway to determine lowest cost available. Freight companies will be chosen based on price, reliability and delivery requirements.
Price: Freight is billed as a pass-thru cost item with a handling fee of $25 per freight invoice.

5. Project Management – Includes on-demand site surveys, dimensioning (columns, obstructions, overhead trusses, heaters and sprinklers, roof slope, offices, exits, dock doors) contact owner and architect for slab and soil information, obtain relevant information for seismic analysis, CAD layouts, plans, elevations, box capacities, designs, interactions with other trade (sprinklers, lighting, alarms, architects, contractors, prepare bills of material, pricing, distribute budgets to AFM and accounting, facilitate ordering of equipment, coordinate deliveries of racking and buyouts coordinate installation, draw full installation drawing sets, arrange certified engineering,, submit drawings and calculations for plan check, arrange for payment for permit fees, interact with IM's fire and life safety consultant, obtain sign-off of installation, organize invoices for review by IM accounting. Finalize as-built drawings and capacities, and submit to IM. Track time associated with each project, including travel log and expenses. Travel approximately 3 times to each project including startup meeting, mid-project review and final walk-thru. Price per hour: $62. Approximately 110 hours per project depending on location and complexity. Travel expenses billed at cost.

6. Rebate Program: The following rebate structure shall be applicable to all Iron Mountain purchases including purchase and installation of any racking project related material, any remediation work, and any international purchases made with Elite Storage solutions:

> 80% of $15M = $12M = 2% rebate or $240,000
> 50% of $15M = $7.5M = 1.5% rebate, or $112,500

7. Territories Covered in this agreement: Includes US and Canada

8. Length of Agreement: January 1, 2013 until January 1, 2015.

9. Quoting and Invoicing Detail: All quotes and invoices must include line level detail for all materials and services. Each line of a quote and invoice must include a detailed description of the material or service, unit of measure, quantity, unit cost, and total cost. All Quotes and invoices are subject to periodic audits at a time to be determined at Iron Mountain's discretion.

ELECTRONICALLY FILED
6/26/2018 3:59 PM
2018-CH008596
PAGE 58 of 99

- 14 -

Rack Remediation Program

Due to recent events in the industry including rack failures and code changes, Vendor will be enhancing the Remediation Program by offering rack surveys and repair design reviews by a licensed certified structural engineer. This will not only ensure a code compliant system, it will also give Iron Mountain and Vendor an added level of liability coverage.

Here is how the new Rack Remediation Program will work:

1. Damage surveys will be conducted by trained inspector(s) who conduct a visual inspection and document damages and safety issues. The inspector will review the entire system design configuration, brand of racks and shelf loading. The inspector will designate damages as green (safe), orange (watch for further damage), red (unload as soon as possible) and red* (stop everything and unload - the inspector will not leave until the rack is unloaded).
Note: In addition to conducting the damage survey, the inspector will train the local Iron Mountain manager so that he knows what to look for in the future and how to respond when damages occur. The manager can then conduct routine rack inspections and maintenance checks, thus providing a safer work environment.

2. The documented information will be given to an independent professional, certified, and licensed structural engineer ("Professional Engineer") who will properly evaluate the entire rack system to make sure that it passes current IBC2010 codes.

3. The Professional Engineer will then design all repair kits for the rack system. The racks should be certified to meet all applicable codes.

4. The kits will be manufactured and installed by trained professional installers per strict protocol developed by the Professional Engineer.

5. A full report will be given to Iron Mountain, outlining the repairs completed, locations and when completed along with engineering calculations for the repairs. This added review by the Professional Engineer is invaluable if a future accident or collapse occurred. It shows that Iron Mountain has taken the steps to ensure that their facilities are safe. A Professional Engineer's review is the only way to do this.

Pricing for Certified Structural Engineering for repairs is as follows:

| Damage survey: | $1,900 per day (typically 1-2 days). |
|---|---|
| Travel Expense: | $1,000 per day |
| Engineering review of rack "system": | $1,250 |
| Design of kits: | $1,200 for first kit, $200 for each additional kit. |
| Non-union labor to install each kit: | $160 |

Note 1: In most cases the "engineering" fees will only be charged on the first project in the building because most of the data needs to be collected at that time. Subsequent repair projects at the same building will already have the necessary information about the rack system design, elevations, and loading, therefore the cost may only be the manufacturing and installation of the kits.

Note 2: Existing rack systems (generally from an acquisition) may not have records of any engineering certifications. Certified stamped drawings are available at an extra fee (determined by the size of the project and types of racking in the building) and quoted individually.

Repair Kits and Safety Guards:

| Base Repair Kits (24"-36" tall): | $119 each (about 80% of most repairs) |
|---|---|
| Intermediate Kits: | $95 each |
| Double end guard: | $292 |
| Single end guard: | $155 |
| Floor rail guard: | $9 per foot |

Iron Mountain PSA (Rev.10.05.2012)     © 2012 Iron Mountain Incorporated

ELECTRONICALLY FILED
6/26/2018 3:16 PM
2018-CH-00556
PAGE 19 of 93

IM 000139

- 15 -

| Bolt on column guard: | $42 |
| Toe-board: | $15 |
| Safety Handrail: | $12 |

Freight: FOB Monroe, GA

International Pricing:
If shipping from Vendor's US plant, we will honor the same pricing structure as developed for North America as shown above.
If shipping from a local manufacturing source, we will supply at cost plus 12% margin.
Labor will be billed at cost plus 15% margin.
Freight, duties, customs brokerage fees will be billed at cost plus a 10% handling fee.
Project management and travel fees will be estimated at the time of proposal. Vendor will comply with Exhibit B for all travel-related fees and expenses.

ELECTRONICALLY FILED
6/26/2018 3:56 PM
2018-CH-006556
PAGE 60 of 94

IM 000140

- 16 -

ELECTRONICALLY FILED
6/26/2018 3:56 PM
2018-CH008056
PAGE 61 of 99

| **Exhibit B:** | **Travel Policy-Iron Mountain Vendors** |
|---|---|
| **Overview** | This policy applies to each individual and/or Vendor who travels on Iron Mountain business and/or incurs related expenses on behalf of Iron Mountain. |
| **Airline Travel Policies** | All travelers are expected to fly Coach class (this applies to both Domestic and International travel, unless the International travel involves three (3) or more times per calendar year and the flight segment is six (6) or more hours in which latter case an upgrade of one class may be made) at the lowest usable fare at the time of booking (lowest usable airfare is defined as the least expensive published airfare applicable to the passenger's routing date & time request). Any deviation from this policy is only reimbursable with the prior approval of the Iron Mountain person designated as the contact person in the applicable Statement of Work ("Iron Mountain Designee"). Travelers shall review fare options within a 3-hour window of arrival and/or departure time. If the lower fare presented by the agent offers a $100 savings or greater and still falls within a 3-hour window, it shall be accepted unless otherwise expressly approved by the Iron Mountain Designee. All trips over 1,200 miles should utilize connecting flights if the savings potential is greater than $200. Any deviation from this policy requires the prior approval of the Iron Mountain Designee in charge of the services being rendered by you or your company to Iron Mountain. All airfares must be booked seven (7) days in advance. Booking flights under seven (7) days in advance requires prior approval by the Iron Mountain Designee, except when: 1) booking a destination that doesn't offer a seven (7)-Day advance fare (ex. Boston-LaGuardia) and/or 2) Flying on a "discount" airline such as Southwest Air. To the maximum extent possible, airfares should be booked 14 or more days in advance to take advantage of any 14-day advance booking discounts. |

A Saturday night stay-over may also dramatically decrease the cost of your airfare. If the traveler is willing and their schedule permits a Saturday night stay, Iron Mountain will pick up the cost of your hotel room & meals for the extra Friday and Saturday night stay, up to the amount of the airline savings achieved through booking of the Saturday night stay. Evidence of such savings from the applicable Travel Agent documenting such savings must accompany any request to be reimbursed for additional Friday and Saturday night stays. Alternative airports should be evaluated by travelers in order to reduce costs, whenever feasible. All airline tickets, wholly or partially unused, should be returned to the travel agent for refund processing no later than one (1) week after cancellation or completion of travel. Travelers shall promptly notify the travel agent of all unused electronic tickets. Lost or stolen tickets should be reported immediately. Claims can be made with all major airlines for reimbursement. Most airlines charge a $75 fee to process a lost ticket application. Iron Mountain shall not be liable for any lost ticket processing fees.

Frequent flyer club membership fees, if any, are considered a personal expense and will not be reimbursed by Iron Mountain. Frequent flyer awards are a benefit to the traveler and recognized as the personal property of the individual. Using personal points to upgrade is allowable but not at the additional expense of Iron Mountain. Iron Mountain will not reimburse travelers for the cost of an upgrade. Employees may choose to personally pay for the cost of a class of service upgrade, i.e., Coach to First Class. Employees may also use their own frequent flyer points to upgrade.

*Continued on next page*

IM 000141

- 17 -

ELECTRONICALLY FILED
6/26/2018 3:58 PM
2018-CH-00659
PAGE 68 of 93

**Travel Policy-Iron Mountain Vendors**          Continued

**Lodging Policies**

Travelers will book lodging at properties lesser than or equivalent to the class of hotel represented in the United States by a Courtyard facility and its comparable equivalent in international jurisdictions.

Hotels are similar to the airlines in practicing yield management of daily room rates. Based on the property's vacancy rate, a lower rate may be available at check in. Upon arrival, every traveler should ask if a lower rate is available. It is the traveler's responsibility to assure that the correct contracted rate is indicated at check-in and charged at check out.

Travelers should check the comments noted on their itineraries as to the cancellation requirements for the hotel being used on their trip. Please notify the hotel directly in the event of a cancellation as to avoid any no show charges. If the hotel is not notified, the traveler will be responsible for the payment of these charges.

**Auto Renting Policies**

Car rentals should only be used when other means of transportation, such as taxis or shuttle bus services, are impractical, unavailable or more costly. Individuals traveling to the same destination shall, to the maximum extent possible, consolidate car rentals. Any individual traveling to/from the same location as another traveler whose flights are within 90 minutes of the other traveler shall share the same car rental unless the passenger capacity of the car will be exceeded. All travelers who will be driving need to sign for insurance purposes. Unless the number of passengers dictates otherwise (i.e., 4 or more passengers), car rentals shall be no larger than mid-size.

Travelers of the vendor shall follow the requirements set forth by the vendor with respect to obtaining car rental insurance, but, to the extent that the vendor has corporate insurance to cover claims arising as a result of car rentals, Iron Mountain requests that insurance coverage not be duplicated.

Car rentals shall be returned within the grace period afforded under the car rental agreement in order to avoid additional charges.

Very important: Rental vehicles shall be returned with a full tank of gasoline to avoid premium charges from the rental company, if such premiums are charged as part of your rental agreement. You are responsible for determining whether this is the case. If your pick-up & drop-off location are not the same, in the U.S.A., National & Avis may charge a mileage fee (example: Pick-up in Boston, drop-off in New York).

**Meals**

Travelers will be reimbursed for their own meals while on Company business. Reimbursement will be limited to actual expenditures and reasonable tips. A maximum of $40 per day will be reimbursable to the employee for the cost of their meals.

Restaurants should be used as a lower cost option for meals in most cases. If a traveler arrives late to the hotel or if traveling to a restaurant near the hotel property would pose a safety hazard to the traveler, room service may be utilized. Employees traveling to Europe will be reimbursed for their own meals while on Company business up to a maximum of $65 USD per day.

Continued on next page

Iron Mountain PSA (Rev.10.05.2012)          © 2012 Iron Mountain Incorporated

IM 000142

- 18 -

Travel Policy-Iron Mountain Vendors Continued

**Other Reimbursable Expenses**

**Laundry Services** -- Travelers shall pack an adequate amount of clothing. Reasonable and actual expenses for laundry services on trips involving four (4) or more consecutive nights' stay in a hotel will be reimbursed when a traveler is away from his/her home office. Attach original receipts to your expense report. **Gratuities** - Tips to waiters, taxi drivers, skycaps and porters should be included in the cost of meals, transportation, taxis, airports and hotels respectively. As a guideline, gratuities should not exceed 15%. **Mileage Reimbursement** - Individuals who are approved to use their personal vehicles for business will receive a mileage expense reimbursement allowance at the prevailing authorized rate per mile. A Mileage Reimbursement Request form must be submitted w/Expense Report. The only exception to this is individuals who receive a car allowance. Mileage will not be reimbursed in this instance.

**Non-Reimbursable Expenses**

**Personal Items and Services Purchased While Traveling**, including: personal air travel and other personal trip insurance, manicure, massage, theater tickets, in-room hotel movies, workout or exercise club fees, toiletries, newspapers/magazines/books, bar bills, golf/tennis/skiing fees, limousines, shoe shine, additional car rental insurance, personal credit card annual fees, repairs, maintenance, towing or insurance on personal cars, traffic fines and court costs, loss of cash advance money, purchase of luggage, entertainment of spouse while on Company business or similar such personal expenses are the personal responsibility of that traveler.

**Expense Reimbursement**

Original receipts must be submitted for substantiation of all reimbursable expenses.

ELECTRONICALLY FILED
6/26/2018 3:59 PM
2018-CH0008556
PAGE 69 of 99

Iron Mountain PSA (Rev.10.05.2012)        © 2012 Iron Mountain Incorporated

- 19 -

**Exhibit C – Data Privacy Addendum**

The following additional terms and conditions of this Data Privacy Addendum ("Addendum") are expressly incorporated into the Base Agreement (as hereinafter defined) or into the terms and conditions of any procurement agreement entered into between Iron Mountain and the Vendor whose name appears at the signature line,

1.  **DEFINITIONS.** The following terms shall have the respective meanings assigned below when used as capitalized terms in this Addendum.

    (a)  *Base Agreement* means the Professional Services Agreement between Vendor and Iron Mountain pursuant to which Vendor renders Vendor Services to Iron Mountain.

    (b)  *Customer* means Iron Mountain's customers and the affiliates of any such customers.

    (c)  *Data Subject* means a natural person who can be identified by or is the subject of Personal Data, including, without limitation, Iron Mountain's employees, contractors, or other associates of Iron Mountain, or of a Customer.

    (d)  *Personal Data* shall have the meaning set forth in Section 6.1 of the Base Agreement.

    (e)  *Process(ing)* means any operation or set of operations performed upon Personal Data, whether or not by automatic means, such as, but not limited to, collection, recording, organization, storage, adaptation, alteration, access, retrieval, use, disclosure, dissemination or otherwise making available, blocking, erasure or destruction.

    (f)  *Vendor's Consultant(s)* shall have the meaning set forth in Section 1.2.2 of the Base Agreement.

    (g)  *Vendor Services* shall be those services being rendered by Vendor under the Base Agreement.

2.  **VENDOR RESPONSIBILITIES.** Vendor and Vendor's Consultant(s) shall comply with the following responsibilities regarding Personal Data, regardless of where or in what form the Personal Data resides:

    (a)  not retain, access, use, or otherwise Process any Personal Data for any purpose other than the provision of the Vendor Services, and only to the extent necessary to provide Vendor Services;

    (b)  not disclose or transfer any Personal Data to any third party except (i) pursuant to law or (ii) with the express prior written consent of Iron Mountain, and in the case of any such permitted transfer, Vendor shall remain responsible for any breach of the obligations set forth herein and shall ensure that the third party enters into a written agreement acceptable to Iron Mountain obligating that third party to comply, at a minimum, with the standards and requirements set forth in this Addendum;

    (c)  upon reasonable request and without material disruption of Vendor's business, permit Iron Mountain or its authorized representatives, upon providing not less than twenty-four hours' advance notice, to examine any Personal Data in

Iron Mountain PSA (Rev.10.05.2012)          © 2012 Iron Mountain Incorporated

ELECTRONICALLY FILED
6/26/2018 3:56 PM
2018-CH00655
PAGE 80 of 99

IM 000144

- 20 -

Vendor's or Vendor's Consultant's/(s') possession or custody. If a Data Subject wishes to examine any Personal Data in Vendor's or Vendor's Consultant's/(s') possession, Vendor shall retrieve the Personal Data and promptly return it to Iron Mountain so that Iron Mountain may, in turn, meet its obligations with respect to the examination of any such Personal Data;

(d)  upon termination of the Base Agreement, return all Personal Data to Iron Mountain, or at the written direction of Iron Mountain, destroy, delete, de-identify or otherwise modify the Personal Data as set forth in Section 3.3 of the Base Agreement;

(e)  ensure compliance by Vendor's Consultants/(s) with this Addendum;

(f)  promptly following commencement of the execution of the agreement or Statement of Work associated herewith, and at least annually thereafter during the term of this Addendum, conduct appropriate privacy and data protection training for those of its employees who are given access to Personal Data; Iron Mountain shall have the right, from time to time, to request evidence of such training representing compliance with the terms of this provision;

(g)  Implement and maintain privacy policies and processes (including a comprehensive written information security program that meets the requirements of MA 201 CMR 17.00) which require adequate technical, physical, and organizational controls, consistent with all applicable federal and state privacy and data security requirements and professional industry standards, as appropriate to meet its obligations under this Addendum and all applicable federal and state privacy and data security requirements;

(h)  periodically review its privacy and security programs and procedures to ensure that they are adequate and appropriate to comply with this Addendum and all other applicable federal and state privacy and data security requirements;

(i)  comply with all applicable federal and state privacy and data security requirements, and to permit Iron Mountain to review the same;

(j)  to document and immediately (within 3 business days) report in writing to Iron Mountain any: (a) loss of Personal Data, (b) unauthorized actual or potential access, acquisition, alteration, corruption, destruction, modification, use or disclosure of Personal Data, or (c) or any other act or omission that compromises the security, confidentiality or integrity of Personal Data and, at Vendor's cost and expense, assist and cooperate with Iron Mountain concerning any disclosures to affected parties and other remedial measures as requested by Iron Mountain or required under any applicable privacy or data protection laws;

(k)  to mitigate, to the extent practicable, any harmful effect that is known to Vendor of a use or disclosure of Personal Data by Vendor in violation of the requirements of this Addendum.

3.  **GENERAL REQUIREMENTS.** Vendor understands and agrees that this Addendum does not convey to Vendor any ownership or other interest in and to the Personal Data. Without limiting any other similar requirements that may be applicable, Vendor shall comply with all reasonable policies and requirements (including, without limitation, execution of agreements) reasonably requested by Iron Mountain from time to time to protect Personal Data, including policies and requirements imposed in response to Iron Mountain's Customer requirements and/or applicable laws and regulations, as the same

Iron Mountain PSA (Rev.10.05.2012)        © 2012 Iron Mountain Incorporated

ELECTRONICALLY FILED
6/26/2018 3:56 PM
2018-CH00765%
PAGE 65 of 93

- 21 -

may be amended from time to time. However, if Vendor is not able to comply with any
such requirements without material expense or material risk, and Iron Mountain
nevertheless insists upon compliance, then Iron Mountain may terminate the Base
Agreement and/or SOW pursuant to which Vendor receives the Personal Data along with
this Addendum.

4.   AUDIT OF RECORDS. Vendor agrees to make its internal practices, books and records
     relating to the use and disclosure of Personal Data received from, or created or received
     by Vendor or Vendor's Consultants on behalf of Iron Mountain or one of its Customers,
     available to Iron Mountain or its designee. Iron Mountain may inspect and audit Vendor's
     data processing activities and those of its Consultants and demand Vendor's Consultants
     to verify compliance with this Addendum.

5.   INDEMNIFICATION. In addition to and not in lieu of any indemnification obligations set
     forth in the Base Agreement, Vendor agrees to indemnify, defend and hold harmless Iron
     Mountain, its subsidiaries, affiliates, shareholders, directors, officers, employees and
     agents, from any third party claim, investigation, demand, liability, or loss, and associated
     expenses and costs , including reasonable attorneys' fees, and investigation, computer
     forensic, and notification costs, due to or arising out of, or in any way connected with
     Vendor's Processing of the Personal Data, Vendor's breach of this Addendum, or
     Vendor's failure to adhere to any law applicable to the Processing and security of the
     Personal Data.

ELECTRONICALLY FILED
6/26/2018 3:56 PM
2018-CH008556
PAGE 88 of 98

**ACCEPTED AND AGREED TO:**
Iron Mountain Information Management, LLC
By:
 ~~John Tommeusife~~   11/4/13
Buyer Signature                    Date
  John Tommovcsik
**Printed Name**
  EVP & COO , North America.
**Title**

Buyer Address:
745 Atlantic Ave.
Boston, MA 02111

**ACCEPTED AND AGREED TO:**
Vendor
By:                              7-15-13
Vendor Signature            Date
  Stephen W. Jouks
Printed Name
  CEO / Elite Storage Solutions, LLC
Title & Organization
  1118 W. Spring Street
Vendor Address:
  Munroe, GA 30655

IM 000146

- 22 -

Exhibit D – Summary of Iron Mountain's Background Investigation Requirements for Third-Party Relationships

Vendor must ensure that it has performed background investigation searches that meet the following criteria:

1.  If the Vendor and the Vendor's Consultant(s) do/does not have any physical or logical access to Iron Mountain facilities or networks and do not have access to any Iron Mountain or Iron Mountain Customer Data, a Background Investigation is not required.

2.  If the Vendor and the Vendor's Consultant(s) has/have physical or logical access to Iron Mountain facilities or networks, or has access to Iron Mountain Customer Data, then the following minimum searches must be completed and achieve the following results:

| Background Investigation Type | Desired Result |
| --- | --- |
| Social Security Number Trace | Valid Social Security Number |
| Verified authorization to work in the U.S. | Authorized to work in the U.S. |
| Ten (10) year criminal convictions search: | |
| Federal | No criminal record |
| Statewide (if available) | No criminal record |
| County | No criminal record |
| Five (5) panel drug screen | Negative results |
| Determination whether an individual employee is a "U.S. Person" (for ITAR purposes) | |
| Review of the following government lists: | |
| OFAC SDN List | Not on list |
| Office of Inspector General | Not on list |
| General Services Administration | Not on list |

3.  If Vendor and the Vendor's Consultant(s) has/ have unescorted physical access to Iron Mountain facilities or Customer facilities, the following search must also be included in the employee's background investigation:

| Background Investigation Type | Desired Result |
| --- | --- |
| Sex Offender searches (as permitted by law) | Not a sex offender |

Furthermore, Vendor should certify to Iron Mountain that background investigations are completed at a minimum of every three (3) years for any of Vendor's Consultant(s) associated with the SOW.

ELECTRONICALLY FILED
6/26/2018 3:58 PM
2018-CH08595
PAGE 53 of 94

**AMENDMENT ONE**
**TO**
**PROFESSIONAL SERVICES AMENDMENT**

THIS FIRST AMENDMENT TO THE PROFESSIONAL SERVICES AGREEMENT (the "AMENDMENT 1") is made as of August 29, 2013 (the "Effective Date") between Iron Mountain Information Management, LLC ("Iron Mountain") and Elite Storage Solutions, LLC ("Vendor"), collectively referred to as the "Parties" throughout this Amendment.

WHEREAS, Iron Mountain and Vendor are parties to that Professional Services Agreement executed on June 24, 2013 (the "Agreement"), and WHEREAS, the parties wish to amend the Agreement as set forth below.

NOW, THEREFORE, for good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the parties hereby agree as follows to insert the following Section 9.4:

Section 9.4: Indemnity Defense of Iron Mountain: Upon final payment by Iron Mountain to Vendor of the full amount of the Purchase Price (including payment to Vendor for any change orders or additional work as agreed to by both Parties in writing, performed over and above the original contracted work), the Vendor shall indemnify and hold harmless Iron Mountain against any and all liens that may be filed against Iron Mountain's premises by Vendor, any subcontractor of Vendor, supplier or other vendor which has provided materials or labor for the work pursuant to the Agreement. Vendor expressly agrees that upon written demand from Iron Mountain, Vendor shall immediately discharge any lien filed against Iron Mountain premises in the manner specified by local statues and shall, at Vendor's sole cost and expense, accept the defense of any legal or equitable action against Iron Mountain to perfect, enforce, or satisfy any such lien.

Unless otherwise modified by this Amendment, all terms and conditions contained in the Agreement shall continue in full force and effect. All capitalized terms used herein shall have the meaning assigned to them in the Agreement, unless otherwise defined herein.

IN WITNESS WHEREOF, the parties have executed this Amendment as of the Effective Date.

**IRON MOUNTAIN INFORMATION MANAGEMENT,**     **ELITE STORAGE SOLUTIONS, LLC**
**LLC**

By: _John Jomeucs.R._          By: _____

Name: _John Tomiovcsik_          Name: _Steasil Ll Jones_

Title: _EVP+COO, North America_  Title: _CEO_

Approved as to Form and Legal Content:
Iron Mountain Legal Department

Shilpa Daiya, Corporate Counsel & Contracts Specialist
Date: September 17, 2013

ELECTRONICALLY FILED
6/26/2018 3:50 PM
2018-CH00/8556
PAGE 88 of 99

ELECTRONICALLY FILED
6/25/2018 3:15 PM
2018-CH-07976
CALENDAR: 03
PAGE 1 of 15
CIRCUIT COURT OF
COOK COUNTY, ILLINOIS
CHANCERY DIVISION
CLERK DOROTHY BROWN

# EXHIBIT C

# ▲ IRON MOUNTAIN· Contractor/Vendor Safety & Security Program

**Updated April 2007**

## Table of Contents

Introduction and Responsibilities ............................................................................... 1

    Instruction................................................................................................. 1

    Management Responsibilities.................................................................... 1

    Contractor/ Vendor Responsibilities ........................................................ 2

Program Components....................................................................................................... 3

    Access, Egress and Ingress...................................................................... 3

    Access to Office Space ............................................................................ 3

    Admittance ............................................................................................... 3

    Barricades and Fall Protection ................................................................. 4

    Commun-ication ....................................................................................... 4

    Dress Code ............................................................................................... 5

    Equipment ................................................................................................ 5

    Emergency – Fire and Medical ................................................................ 5

    Hours ........................................................................................................ 6

    Housekeeping ........................................................................................... 6

    Material Handling .................................................................................... 6

    Motor Vehicles and Powered Industrial Equipment ............................... 7

    Personal Protection (PPE) ....................................................................... 7

    Power Tools.............................................................................................. 7

    Safety Training and Instruction ............................................................... 8

    Signage..................................................................................................... 8

    Welding and Burning .............................................................................. 8

Administrative Requirements .......................................................................................... 9

    Confidential Nature of Records Management Business............................ 9

    Certificates of Insurance.......................................................................... 9

    Additional Requirements........................................................................ 10

    Contractor/ Vendor Agreement and Acknowledgement ....................... 10

    Prior to Commencing Work ................................................................... 11

    Iron Mountain Project Management Review ......................................... 12

Appendix A - Procedure To Follow in The Event of a Serious Accident ..................... 13

ELECTRONICALLY FILED
6/26/2018 3:59 PM
2018-CH08596
PAGE 70 of 188

Copyright Iron Mountain Incorporated

IM 000151

# ▲ IRON MOUNTAIN· Contractor/Vendor Safety & Security Program

**Updated April 2007**

ELECTRONICALLY FILED
6/26/2018 3:59 PM
2018-CH00X056
PAGE 51 of 118

| | |
|---|---|
| **Introduction and Respons-ibilities** | Iron Mountain strives to provide safe and secure working environments for their employees, associates, and any other personnel who enter an Iron Mountain facility. All Contractors/Vendors and their sub-contractors are required to comply with Iron Mountain Safety & Security Requirements. |
| **Instruction** | Iron Mountain management must present a copy of the Contractor/Vendor Safety & Security Program to each Contractor/Vendor who provides "safety-sensitive" services to Iron Mountain operations/facilities; the Contractor/Vendor must review the requirements and Iron Mountain management must obtain a signed acknowledgement and the required Certificates of Insurance from the Contractor/Vendor prior to the commencement of work. It is the responsibility of the Contractor/Vendor to assure that its sub-contractors have reviewed and agree to the Safety & Security Program as well. |
| **Management Respons-ibilities** | • The General Manager/Plant Manager is responsible for ensuring that all Contractors/Vendors doing business in his or her district comply with the requirements of this program.<br>• The Area Facility Manager, or his designee, is responsible for having the Contractors/Vendors with whom he or she contracts, complete the form and sign the acknowledgement.<br>• Within this District, __ _____ (Name/Title) will provide information to the Contractor/Vendor about the potential hazards and safe working practices in the areas to which the Contractor/Vendor and his/her employees have access.<br>• __ _____ (Name/Title) will ensure that the Contractor/Vendor has provided appropriate safety & health training to his/her employees prior to assigning them to a job.<br>• ____ _____ (Name/Title) will conduct periodic inspections of the facility, particularly any construction/work areas. If a Contractor/Vendor is operating outside of acceptable operating and safety standards, the Contractor/Vendor liaison will be notified and required to correct deficiencies. |

*Continued on next page*

Copyright Iron Mountain Incorporated

IM 000152

▲ IRON MOUNTAIN® **Contractor/Vendor Safety & Security Program**

**Updated April 2007**

ELECTRONICALLY FILED
6/25/2018 3:59 PM
2018-CH00795
PAGE 72 of 193

| | |
|---|---|
| **Contractor/ Vendor Respons- ibilities** | • Each Contractor/Vendor will designate an individual who will act as the liaison with Iron Mountain management for safety and operational issues during the project. |

• Each Contractor/Vendor will be responsible for training his/her employees on all applicable safety & health requirements.

• Each Contractor/Vendor must ensure that __ _____ (Name/Title) is informed of the hazards of the Contractor/Vendor's work and what the Contractor/Vendor is doing to address them.

• Nothing herein shall be construed to relieve the Contractor/Vendor of his or her responsibility to comply with all federal, state and local environmental, health and safety laws, regulations and requirements. Such responsibility rests solely upon the Contractor/Vendor.

• The Contractor/Vendor shall promptly discharge from a project any person who violates Iron Mountain safety and security procedures, disregards hazard signs, refuses to obey orders of the local Iron Mountain Project Manager or his/her designated representative, or who is considered incompetent or disorderly.

**THE CONTRACTOR/VENDOR SHALL REVIEW THIS DOCUMENT WITH ALL OF HIS OR HER EMPLOYEES AND SUBMIT A SIGNED COPY, IN ADDITION TO PROPER CERTIFICATES OF INSURANCE, TO LOCAL IRON MOUNTAIN MANAGEMENT _PRIOR_ TO COMMENCING WORK AT ANY IRON MOUNTAIN FACILITY. THE SUB-CONTRACTOR/VENDOR WILL ALSO BE RESPONSIBLE TO INSURE THAT THEIR SUB-CONTRACTORS REVIEW AND AGREE TO THIS PROGRAM AS WELL.**

*Continued on next page*

Copyright Iron Mountain Incorporated

IM 000153

▲ IRON MOUNTAIN® **Contractor/Vendor Safety & Security Program**

**Updated April 2007**

ELECTRONICALLY FILED
6/26/2018 3:59 PM
2018-CH007855
PAGE 56 of 68

| | |
|---|---|
| **Program Components** | Iron Mountain requires that all Contractors/Vendors and their sub-contactors meet the requirements set forth in this program in order to perform work for the company. |
| **Access, Egress and Ingress** | The following access requirements must be met in all Iron Mountain facilities:<br>• Access routes to and from work locations must be maintained clear of obstructions and must be adequately lighted. Contractors/Vendors are responsible for any temporary lighting required to complete the job.<br>• Emergency equipment or electric disconnect switches must not be blocked; nor may temporary construction cables, hoses or leads be attached to such equipment.<br>• Material must be stacked or spotted so that it can be reached readily by personnel and by material handling equipment.<br>Emergency exits must not be blocked by staged material at any time, and access aisles to each exit must be maintained at all times. |
| **Access to Office Space** | With the exception of the restrooms, all office areas are off limits to Contractors/Vendors. All Contractors/Vendors using Iron Mountain restroom facilities must leave them as clean as when they entered. If necessary, an outside cleaning agency must be hired to clean the restrooms at the expense of the Contractor/Vendor if it is determined that they have not maintained the cleanliness of the restrooms. Other exceptions may be made at the local level with Iron Mountain management. |
| **Admittance** | These requirements for admittance to any Iron Mountain facility must be followed:<br>• All personnel are required to show a valid photo ID upon entering the premises. All personnel must sign in upon entering the facility and sign out each time the facility property is left, including material pick-ups.<br>• No Contractor/Vendor employee shall allow entry of an outside person into an Iron Mountain facility on his or her own without approval from Iron Mountain local management.<br>• Badges must be worn in a clearly visible manner at all times while inside the facility and relinquished upon signing out at the end of their shift. Exterior personnel doors must not be propped open for any reason. |

*Continued on Next Page*

Copyright Iron Mountain Incorporated

IM 000154

▲ IRON MOUNTAIN® **Contractor/Vendor Safety & Security Program**

**Updated April 2007**

ELECTRONICALLY FILED
6/26/2018 3:59 PM
2018-CH00695
HRMGE 74af7E5

| | |
|---|---|
| **Barricades and Fall Protection** | Requirements for Fall Protection and Barricades must be adhered to as outlined below: |

- Barricades are required to be erected four feet from the edge of all excavations, holes or openings in floors or roofs, elevated platforms, around certain types of overhead work, and where necessary to warn people against falling. Barricades must be at least 42 inches high, square and level. Four-inch high (minimum) toeboards are required on protective barricades. In the event any other contractor or Iron Mountain personnel must work in a construction/maintenance project area prior to its completion, they must be orally warned of dangerous areas. In addition, caution tape or temporary guards must be installed when anyone is working on or under a catwalk system.
- All Contractor/Vendor employees on a walking/working surface (horizontal and vertical surface) with an unprotected side or edge which is 6 feet (1.8 m) or more above a lower level shall be protected from falling by the use of guardrail systems, safety net systems, or personal fall arrest systems. In the absence of standard guardrail, catch platforms, temporary floors or safety nets, Contractor/Vendor employees must be protected by personal fall protection devices in the following situations:

  1. On accessways (excluding ladders) or work platforms from which they may fall 6 ft (1.8 m) or more

  2. On accessways or work platforms over water, machinery, or dangerous operations

  3. On runways from which they may fall 1.2 m (4 ft) or more.

The Contractor/Vendor is responsible for providing fall protection equipment that meets or exceeds ANSI standards and proper fall protection training to his/her employees in accordance with OSHA regulations.

| | |
|---|---|
| **Commun-ication** | Questions concerning policy, procedure or the project/activity must be coordinated through the local Iron Mountain Manager or Iron Mountain Project Manager. The IM Project Manager shall serve as the focal point for all such interfaces and information sharing. |

*Continued on next page*

Copyright Iron Mountain Incorporated

IM 000155

▲ IRON MOUNTAIN **Contractor/Vendor Safety & Security Program**
**Updated April 2007**

- All Contractors/Vendors are required to meet the following conduct standards while working on Iron Mountain property.
- SMOKING IS NOT ALLOWED IN ANY Iron Mountain FACILITY. Smoking is permitted only in designated exterior areas at least 10 feet from the building.
- Horseplay, fighting, gambling, drinking alcoholic beverages, illegal possession of drugs, possession of weapons or failure to follow Iron Mountain Security and Safety Regulations may result in barring those involved from Iron Mountain facilities.

| | |
|---|---|
| **Dress Code** | It is necessary that all Contractors/Vendors wear proper attire at all times: shirts, shoes, and long pants (temperature sensitive). |

| | |
|---|---|
| **Equipment** | The Contractor/Vendor shall provide the equipment necessary for the safe performance of its work. The Contractor/Vendor is responsible for the appropriateness, quality and/or safe use of the tools and equipment.

All mechanical equipment used on or in connection with any construction project for Iron Mountain should be used in the manner the manufacturer intended. Modifications and/or enhancements are not allowed unless the manufacturer has authorized such in writing. Additionally any and all approved enhancements by the manufacturer will still need to pass the test of being OSHA-approved for job site use. |

| | |
|---|---|
| **Emergency – Fire and Medical** | - In the event of an emergency, an outside phone line and emergency service telephone numbers (911) will be available. The Contractor/Vendor is responsible for posting emergency service telephone numbers in several locations, including but not limited to the site office and in proximity to the gang box. All Contractor/Vendors must know how to report an emergency. They must be aware of evacuation instructions and evacuation signs designating the escape route for each work area.
- Iron Mountain personnel have First Aid Kits available to Contractor/Vendors for first aid care. It is the Contractor/Vendor foreman's responsibility to learn of their location prior to beginning work. Any follow-up treatment or hospital services beyond first aid care must be coordinated by the Contractor/Vendor with an outside care agency. |

*Continued on next page*

Copyright Iron Mountain Incorporated

IM 000156

ELECTRONICALLY FILED
6/26/2018 3:58 PM
2018-CH08095
PAGE 75 of 153

▲ IRON MOUNTAIN° **Contractor/Vendor Safety & Security Program**
**Updated April 2007**

ELECTRONICALLY FILED
6/26/2018 3:50 PM
2018-CH-00856
PAGE 76 of 88
IMAGE 76 of 88

| | |
|---|---|
| **Hours** | All work is to be performed between 8:00 AM and 5:00 PM, or other hours as pre-arranged with the local Iron Mountain Manager or Iron Mountain Project Manager. Any change in work times must be cleared in advance with Iron Mountain management and the Contractor/Vendor Project Manager, including nights and/or weekends. |
| **Housekeeping** | The housekeeping standards follow:<br>• Work areas must be cleaned continually as the project progresses, with cords and hoses routed across walkways in a manner that will avoid creating tripping hazards.<br>• All materials, tools and equipment must be stored in stable positions (tied, stacked or chocked) to prevent rolling or falling. A safe access way to all work areas must be maintained.<br>• The Contractor/Vendor must remove all trash and debris from the work area daily.<br>• No construction dumpsters are allowed in a building or placed up against a building.<br>• No flammable liquids are to be disposed within the Contractor's/Vendor's dumpster or Iron Mountain's dumpster. |
| **Material Handling** | Contractors/Vendors must comply with the following Material Handling requirements:<br>• The weights of material and supplies to be handled must be known before proceeding. This is critical if material is to be placed in mezzanine levels of racking. Questions are to be referred to the Iron Mountain Project Manager.<br>• A qualified person must inspect mechanical handling equipment before using.<br>Material handlers shall never raise or swing a load over people. Every effort must be made to insure that personnel, materials and equipment are safe from unexpected movement such as falling, slipping, rolling, tipping, blowing over, or any other uncontrolled motion. |

*Continued on next page*

Copyright Iron Mountain Incorporated

IM 000157

▲ IRON MOUNTAIN **Contractor/Vendor Safety & Security Program**
**Updated April 2007**

ELECTRONICALLY FILED
6/26/2018 3:50 PM
2018-CH08059
IMAGE 7/cdfEB

| | |
|---|---|
| **Motor Vehicles and Powered Industrial Equipment** | The following requirements regarding Motor Vehicles and Power Equipment must be adhered to by all Contractors/Vendors:<br>• Material hoists and Powered Industrial Trucks are to be operated only by a formally "certified" operator who has been trained by the Contractor/Vendor.<br>• Material hoists are not to be used for lifting personnel. The weight of material and capacity of elevator or hoist must be known before using. Material must be positioned so it cannot shift or extend beyond cage limits.<br>• The driver/operator is responsible for the stability of materials being hauled or handled by their equipment.<br>• All speed limit and other regulatory signs must be obeyed, and pedestrians given the right-of-way. The operator must look to the rear and sound the horn three times before backing. The operator must shut off the motor before refueling.<br>• The operator must shut off the motor and set the brakes before leaving the operator's cab. All construction vehicles, including forklifts, must be equipped with backup alarms.<br>• Forklifts must be in good working order and equipped with overhead guards.<br>• All personnel and freight vehicles, including pick-up trucks, must be returned to the outside of the building immediately upon completion of unloading tools and/or material. Vehicles not required for material handling and/or the installation of the rack system are to be kept outside of the facility.<br>• Iron Mountain personnel are not to be utilized for unloading Contractor/Vendor shipments. |
| **Personal Protection (PPE)** | All required personal protective equipment will be provided by the Contractor/Vendor when necessary. When mandatory, enforcement of its use is the responsibility of the Contractor/Vendor. |
| **Power Tools** | The following requirements must be complied with by Contractors/Vendors:<br>• Power tools shall not be operated by any individual who has not first received instructions from the Contractor's/Vendor's supervisor.<br>• Proper guards or shields must be installed on all power tools.<br>• Tools must be inspected daily before each use.<br>• Interlocking devices must be in working order and never bypassed. |

*Continued on next page*

Copyright Iron Mountain Incorporated

IM 000158

# ▲ IRON MOUNTAIN® Contractor/Vendor Safety & Security Program
**Updated April 2007**

ELECTRONICALLY FILED
6/26/2018 3:50 PM
2018-CH0008556
PAGE 78 of 93

| | |
|---|---|
| **Safety Training and Instruction** | The Contractor/Vendor is responsible for ensuring that all his/her employees and the employees of any sub-contractor working on the site(s) receive safety training prior to assigning a task.<br>• The Contractor/Vendor shall have written and documented training on equipment safety features and safe practices.<br>• Before assigning a task, the Contractor/Vendor must show and explain to their employees, and those of any sub-contractor, the safety precautions and actions which must be taken while performing the task.<br>• No power equipment shall be operated without the OSHA mandated training and licensing. |
| **Signage** | Legible warning signs should be placed on barricade stands and be removed promptly upon completion of work. Tape with preprinted warning signs (e.g., "banner-guard tape") may be used. |
| **Welding and Burning** | Outlined below are some requirements that must be met for Hot Work to be performed on Iron Mountain property. Refer to the Iron Mountain Hot Work Program for specific requirements.<br>• For all projects, the use of torches, grinders, saws, welders, and any "spark producing" power tool in the facility without the specific approval of Iron Mountain management is prohibited.<br>• All requirements contained in NFPA 51B will be adhered to by the Contractor/Vendor, including issuance of Hot Work permits, fire watch, etc.<br>• No spark-producing work can be performed within 35 feet horizontally of stored materials. Approval must be obtained daily for each new area and occurrence of work. All field fit materials requiring such tools are to be modified on the ground floor level in a spot away from all combustible materials and agreed to by Iron Mountain management before work may commence.<br>• All exposed combustible materials below welding and burning areas must be removed to a safe location. In addition, an approved spark catcher shall be used for overhead welding.<br>• A charged fire extinguisher must be within 30 feet of any welding, burning or open flame working area. All personnel must know how to properly operate a fire extinguisher. |

*Continued on next page*

Copyright Iron Mountain Incorporated

IM 000159

▲ IRON MOUNTAIN· **Contractor/Vendor Safety & Security Program**

**Updated April 2007**

## Administrative Requirements

| | |
|---|---|
| **Confidential Nature of Records Management Business** | While performing services for Iron Mountain and/or subsidiary, Contractor/Vendor and its sub-contractors may have access to confidential information belonging to Iron Mountain and/or stored records belonging to Iron Mountain's customers. All such information and/or documents should be considered to be confidential in nature, and may not be accessed by Contractor/Vendor and its sub-contractors personnel or removed from the premises or copied without the permission of the Iron Mountain Project Manager. The Contractor/Vendor shall make every effort to protect all information and stored documents in the same manner as it protects its own confidential information. |
| **Certificates of Insurance** | All Contractors/Vendors shall provide a current certificate of insurance prior to starting work at a facility. Refer to the following table: |

ELECTRONICALLY FILED
6/26/2018 3:50 PM
2018-CH0008556
PAGE 79 of 93

| Type of Insurance | Minimum Limits | Special Conditions |
|---|---|---|
| Workers' Compensation | Statutory | Required for all |
| Employer's Liability | $1,000,000 | Required for all |
| Commercial General Liability including: Broad Form Contractual Liability Fire Legal Liability Completed Operations | $1,000,000 | Required for all |
| Automobile Liability | $1,000,000 (Note: outside couriers require $2,000,000 | Required if Contractor/Vendor uses vehicles to provide service on or off IM property |
| Miscellaneous Professional Liability | $1,000,000 | Required for services normally provided by service professionals such as: Consultants, Engineers, Architects, etc., who generally require professional certifications, training or licensure to perform their occupation |

*Continued on next page*

Copyright Iron Mountain Incorporated

IM 000160

▲ IRON MOUNTAIN® **Contractor/Vendor Safety & Security Program**

**Updated April 2007**

| | |
|---|---|
| **Additional Requirements** | • Insurance carriers must be qualified to do business in the state where the services are provided to Iron Mountain, and rated B+ or better by A.M. Best's Rating Service. |
| | • Certificates of Insurance must be provided to the Iron Mountain Project Manager or designee prior to the commencement of services. A copy must also be forwarded to Manager, Insurance & Risk Analysis, 745 Atlantic Avenue, Boston, MA 02111. |
| | • Contractors/Vendors must provide at least 30 days written notice of policy cancellation to Iron Mountain. |
| | • Iron Mountain must be named as an "additional insured" on all Commercial General Liability and Automobile Liability Policies. |

**Contractor/ Vendor Agreement and Acknowledgement**

**I certify that I have read, understand and will comply with this Iron Mountain Contractor/Vendor Safety & Security Program, including Appendix A – Procedure to Follow in the Event of a Serious Accident. I will advise my employees and all subcontractors of these requirements prior to commencing work within any Iron Mountain facility. I will cause each subcontractor to read this Program and agree to it. I further agree that I am responsible for enforcing adherence of my employees/subcontractors to this Program as a condition of their continuing work for Iron Mountain.**

_____

Contractor/Vendor Name (Print & Sign)

_____

Organization

_____

Date

*Continued on the Next Page*

Copyright Iron Mountain Incorporated

IM 000161

ELECTRONICALLY FILED
6/26/2018 3:59 PM
2018-CH00856
PAGE 80 of 93

▲ IRON MOUNTAIN· **Contractor/Vendor Safety & Security Program**

**Updated April 2007**

ELECTRONICALLY FILED
6/26/2018 3:56 PM
2018-CH00695
PAGE 83 of 95

**Prior to Commencing Work**

- Prior to the start of any construction, racking project or any other project, the Safety & Security Program Agreement & Acknowledgment *must* be signed by the General Contractor ("GC") and each sub-contractor. The GC is responsible for insuring that its sub contractors adhere to the Safety & Security Agreement.

- The Project Manager, AFM or designee *must* have a valid Certificate of Insurance on file naming IM as an additionally insured before the start of any work.

- Weekly Safety Meetings *must* be conducted by the General Contractor. Copies of the safety meeting notes need to be presented to and reviewed by the Iron Mountain Project Manager, AFM or designee on a monthly basis. A copy of all Safety Meetings notes must be part of the close-out documents.

- Daily safety inspections *must* be performed by the General Contractor (or subcontractor) to insure that the jobsite is safe and secure prior to, during, and at the conclusion of each shift's work. Any violation must be logged and addressed immediately. A log book must be maintained and submitted as part of the final close out package.

- The General Contractor /subcontractor is responsible for communicating all findings in regards to safety violations to the Project Manager, AFM or designee.

- It is the responsibility of the General Contractor to fulfill the recordkeeping and reporting requirements for OSHA, until such time as the Certificate of Occupancy is secured.

- At each jobsite, in the trailer and/or the gang box, there must be a list of emergency phone numbers for the local fire department, ambulance, hospital.

Copyright Iron Mountain Incorporated

IM 000162

▲ IRON MOUNTAIN **Contractor/Vendor Safety & Security Program**

**Updated April 2007**

| Iron Mountain Project Management Review | *I have confirmed that all proper Certificates of Insurance have been provided by* _____ *and are on file at Iron Mountain located at* |
|---|---|

_____.

_____

Iron Mountain Project Manager (Print & Sign)

_____    _____

Title                                                          Date

This acknowledgment must be maintained as part of the overall project documentation.

_____

*Continued on next page*

ELECTRONICALLY FILED
6/26/2018 3:50 PM
2018-CH008556
PAGE 82 of 93

Copyright Iron Mountain Incorporated

IM 000163

▲ IRON MOUNTAIN® **Contractor/Vendor Safety & Security Program**
**Updated April 2007**

### Appendix A - Procedure To Follow in The Event of a Serious Accident

**In the event of an accident resulting in serious injury or fatality;**

- An accident is defined as a work related illness or injury that may potentially or does result in an insurance claim.
- On a *new* construction site, the General Contractor "owns" the site until a Certificate of Occupancy is secured. It is the General Contractor's responsibility to respond to any report of injury or property damage (i.e. to contact an ambulance if required) while the site is under its control. The General Contractor must cooperate with local IM management when an accident or incident occurs, regardless of who "owns" the site.
- The local IM management must notify the following people in the event of an accident on any Iron Mountain property: the assigned IM Project Manager, Manager, Safety & Health, Manager, Claims and the local Area Facility Manager. Local management must not contact OSHA or other regulatory agencies – the Manager, Safety & Health will coordinate all communication with regulatory agencies.
- The local IM management must complete an <u>Accident & Incident Report</u> within four (4) hours of the accident. Photos should be taken of the accident area, witnesses should be identified and statements taken immediately. Copies must be sent to the Project Manager, Manager, Safety & Health, Manager, Claims and the Area Facility Manager.
- In the event that the news media shows up, do not communicate with them. Contact Melissa Mahoney, Public Relations Director, (Office: 617-535-8310, cell 617-921-9589, email address: melissa.mahoney@ironmountain.com.).
- The Project Manager, AFM or the designee will be responsible for assembling copies of the following documentation; Contract (and/or specifications – which sometimes might contain additional information regarding insurance), a copy of the signed Safety and Security Agreement, a copy of the certificate of insurance, a copy of the local IM's Accident & Incident Investigation Report and a copy of the General Contractor's accident report. This will then be supplied to the Manager, Claims.
- It will be the responsibility of the Project Manager or the Area Facility Manager to determine if a Global Incident Notification Report should be issued. (The definition of an incident that requires a Global Incident Notification Report is one in which an accident has the potential to cause damage to customer assets or information, has the potential to create negative publicity for a customer, has the potential to cause loss or damage to any IM asset or disclosure of IM non-public information, or if the incident caused severe injury or death.)
- The Project Manager will act as point person to follow up on any details regarding the accident and update the necessary parties.
- The Manager, Claims will direct the claims handling for this incident to ensure all issues regarding insurance and claims are managed appropriately
- The Manager, Safety & Health will review the accident to determine root cause and coordinate with OSHA or any other required regulatory organization. She will also review, update or create new procedures in order to reduce the likelihood of a similar accident happening in the future.
- The General Counsel will coordinate any and all legal action that might be required by Iron Mountain.

Copyright Iron Mountain Incorporated

Page 13 of 13

ELECTRONICALLY FILED
6/26/2018 3:56 PM
2018-CH00656
PAGE 85 of 95

ELECTRONICALLY FILED
6/25/2018 3:15 PM
2018-CH-07976
CALENDAR: 03
PAGE 1 of 83
CIRCUIT COURT OF
COOK COUNTY, ILLINOIS
CHANCERY DIVISION
CLERK DOROTHY BROWN

# EXHIBIT D


**Amerisure**
**Insurance**

POLICY NUMBER:   CPP20487910602
ACCOUNT NUMBER: 20031234

IL DS 71 05 02 08

# COMMON POLICY DECLARATIONS

| | |
|---|---|
| AMERISURE MUTUAL INSURANCE COMPANY<br>26777 HALSTED ROAD<br>FARMINGTON HILLS, MI 48331-3586 | GRAHAM-NAYLOR AGENCY, INC.<br>1355 TERRELL MILL RD., BLDG. 1464<br>MARIETTA, GA 30067-5487<br><br>0805521- |

NAMED INSURED:  **ELITE STORAGE SOLUTIONS, LLC**

MAILING ADDRESS: **1118 WEST SPRING STREET**
**MONROE, GA 30655**

POLICY PERIOD:  FROM _____ **10/01/2013** _____ TO _____ **10/01/2014** _____ AT 12:01 A.M. STANDARD TIME AT YOUR MAILING ADDRESS SHOWN ABOVE.

BUSINESS DESCRIPTION **WHOLESALE EQUIPMENT**

ELECTRONICALLY FILED
6/25/2018 3:15 PM
2018-CH-07976
PAGE 2 of 81

IN RETURN FOR THE PAYMENT OF THE PREMIUM, AND SUBJECT TO ALL THE TERMS OF THIS POLICY, WE AGREE WITH YOU TO PROVIDE THE INSURANCE AS STATED IN THIS POLICY.

THIS POLICY CONSISTS OF THE FOLLOWING COVERAGE PARTS FOR WHICH A PREMIUM IS INDICATED. THIS PREMIUM MAY BE SUBJECT TO ADJUSTMENT.

| | PREMIUM |
|---|---|
| CAPITAL ASSETS PROGRAM (OUTPUT POLICY) COVERAGE PART | $ _____ |
| COMMERCIAL AUTOMOBILE COVERAGE PART | $ __ |
| COMMERCIAL GENERAL LIABILITY COVERAGE PART | $ __ |
| COMMERCIAL INLAND MARINE COVERAGE PART | $ __ |
| COMMERCIAL LIABILITY UMBRELLA | $ __ |
| COMMERCIAL PROPERTY COVERAGE PART | $ __ |
| CRIME AND FIDELITY COVERAGE PART | $ __ |
| EMPLOYMENT-RELATED PRACTICES LIABILITY COVERAGE PART | $ __ |
| EQUIPMENT BREAKDOWN COVERAGE PART | $ __ |
| FARM COVERAGE PART | $ __ |
| LIQUOR LIABILITY COVERAGE PART | $ __ |
| POLLUTION LIABILITY COVERAGE PART | $ __ |
| PROFESSIONAL LIABILITY COVERAGE PART | $ __ |
| **EMPLOYEE BENEFIT LIABILITY COVERAGE PART** | $ __ |
| TOTAL: | $ __ |

Premium shown is payable: $ _____ at inception. $ _____

Issue Date: _**10/28/2013**_

IL DS 71 05 02 08          INSURED COPY          Page 1 of 2

**FORMS APPLICABLE TO ALL COVERAGE PARTS (SHOW NUMBERS):**

**"SEE FORMS & ENDORSEMENT SCHEDULE"**

| Countersigned: | By: |
|---|---|
| (Date) | (Authorized Representative) |

**NOTE**
OFFICERS' FACSIMILE SIGNATURES MAY BE INSERTED HERE, ON THE POLICY COVER OR ELSEWHERE AT THE COMPANY'S OPTION.

ELECTRONICALLY FILED
6/25/2018 3:15 PM
2018-CH-07976
PAGE 3 of 83

**IL DS 71 05 02 08**   ◻

POLICY NUMBER: CPP20487910602

COMMERCIAL GENERAL LIABILITY
CG DS 70 01 09 06

# COMMERCIAL GENERAL LIABILITY DECLARATIONS

| | |
|---|---|
| AMERISURE MUTUAL INSURANCE COMPANY<br>26777 HALSTED ROAD<br>FARMINGTON HILLS, MI 48331-3586 | GRAHAM-NAYLOR AGENCY, INC.<br>1355 TERRELL MILL RD., BLDG. 1464<br>MARIETTA, GA 30067-5487 |

NAMED INSURED: ELITE STORAGE SOLUTIONS, LLC

MAILING ADDRESS: 1118 WEST SPRING STREET
MONROE, GA 30655

POLICY PERIOD: FROM ____10/01/2013____ TO ____10/01/2014____ AT 12:01 A.M. TIME AT YOUR MAILING ADDRESS SHOWN ABOVE

IN RETURN FOR THE PAYMENT OF THE PREMIUM, AND SUBJECT TO ALL THE TERMS OF THIS POLICY, WE AGREE WITH YOU TO PROVIDE THE INSURANCE AS STATED IN THIS POLICY.

ELECTRONICALLY FILED
6/25/2018 3:15 PM
2018-CH-07976
PAGE 4 of 83

### LIMITS OF INSURANCE

| | | |
|---|---|---|
| EACH OCCURRENCE LIMIT | $ 1,000,000 | |
| DAMAGE TO PREMISES RENTED TO YOU LIMIT | $ 100,000 | Any one premises |
| MEDICAL EXPENSE LIMIT | $ 5,000 | Any one person |
| PERSONAL & ADVERTISING INJURY LIMIT | $ 1,000,000 | Any one person or organization |
| GENERAL AGGREGATE LIMIT | $ 2,000,000 | |
| PRODUCTS/COMPLETED OPERATIONS AGGREGATE LIMIT | $ 2,000,000 | |

### RETROACTIVE DATE (CG 00 02 ONLY)

THIS INSURANCE DOES NOT APPLY TO "BODILY INJURY", "PROPERTY DAMAGE" OR "PERSONAL AND ADVERTISING INJURY" WHICH OCCURS BEFORE THE RETROACTIVE DATE, IF ANY, SHOWN BELOW.
RETROACTIVE DATE: _____
(ENTER DATE OR "NONE" IF NO RETROACTIVE DATE APPLIES)

### DESCRIPTION OF BUSINESS

FORM OF BUSINESS:

☐ INDIVIDUAL    ☐ PARTNERSHIP    ☐ JOINT VENTURE    ☐ TRUST

☐ LIMITED LIABILITY COMPANY    ☒ ORGANIZATION, INCLUDING A CORPORATION (BUT NOT IN-CLUDING A PARTNERSHIP, JOINT VENTURE OR LIMITED LIABILITY COMPANY)

BUSINESS DESCRIPTION: WHOLESALE EQUIPMENT

ISSUE DATE: 10/28/2013          INSURED COPY
CG DS 70 01 09 06          © ISO Properties, Inc., 2000          Page 1 of 2

| ALL PREMISES YOU OWN, RENT OR OCCUPY | |
|---|---|
| LOCATION NUMBER | ADDRESS OF ALL PREMISES YOU OWN, RENT OR OCCUPY |
| SEE SCHEDULE | SEE SCHEDULE |

| CLASSIFICATION AND PREMIUM | | | | | | | |
|---|---|---|---|---|---|---|---|
| LOCATION NUMBER | CLASSIFICATION | CODE NO. | PREMIUM BASE | RATE | | ADVANCE PREMIUM | |
| | | | | Prem/ Ops | Prod/Comp Ops | Prem/ Ops | Prod/Comp Ops |
| SEE SCHEDULE | SEE SCHEDULE | SEE SCHEDULE | SEE SCHEDULE | SEE SCHEDULE | SEE SCHEDULE | | |

STATE TAX OR OTHER (if applicable)  $ _____ 1,750.00

PREMIUM SHOWN IS PAYABLE:  AT INCEPTION  $ _____
AT EACH ANNIVERSARY  $ _____
(IF POLICY PERIOD IS MORE THAN ONE YEAR AND PRE-
MIUM IS PAID IN ANNUAL INSTALLMENTS)

| AUDIT PERIOD (IF APPLICABLE) | ☒ ANNUALLY | ☐ SEMI-ANNUALLY | ☐ QUARTERLY | ☐ MONTHLY |
|---|---|---|---|---|

| ENDORSEMENTS |
|---|
| ENDORSEMENTS ATTACHED TO THIS POLICY: |
| SEE FORMS AND ENDORSEMENTS SCHEDULE |

ELECTRONICALLY FILED
6/25/2018 3:15 PM
2018-CH-07976
PAGE 5 of 83

**THESE DECLARATIONS, TOGETHER WITH THE COMMON POLICY CONDITIONS AND COVERAGE FORM(S) AND ANY ENDORSEMENT(S), COMPLETE THE ABOVE NUMBERED POLICY.**

| Countersigned: | By: |
|---|---|
| (Date) | (Authorized Representative) |

**NOTE**
OFFICERS' FACSIMILE SIGNATURES MAY BE INSERTED HERE, ON THE POLICY COVER OR ELSEWHERE AT THE COMPANY'S OPTION.

# Named Insured Schedule

**POLICY NUMBER** CPP20487910602          **EFFECTIVE DATE** 10/01/2013

**NAMED INSURED**  ELITE STORAGE SOLUTIONS, LLC

**Named Insured**
ELITE STORAGE SOLUTIONS, LLC


BASE II ERECTORS


BASE MANUFACTURING, ETAL


BLACKSTOCKS, INC.


BOSTON RACK


PRECISION METAL FABRICATORS

ELECTRONICALLY FILED
6/25/2018 3:15 PM
2018-CH-07976
PAGE 6 of 83

**IL DS 71 04 09 06**                                                    **Page 1   of 1**

# General Liability Premises Schedule

**POLICY NUMBER** CPP20487910602          **EFFECTIVE DATE** 10/01/2013

ELITE STORAGE SOLUTIONS, LLC

**NAMED INSURED** _____

### ALL PREMISES YOU OWN, RENT OR OCCUPY

| LOC. | ADDRESS |
|------|---------|
| 001 | 1118 WEST SPRING STREET<br>MONROE, GA 30655 |
| 002 | 900 HENSON ROAD<br>MONROE, GA 30655 |
| 004 | 125 HENSON ROAD<br>MONROE, GA 30655 |
| 010 | 1533 SOUTH BROAD STREET<br>MONROE, GA 30655 |

ELECTRONICALLY FILED
6/25/2018 3:15 PM
2018-CH-07976
PAGE 7 of 83

**GL DS 71 02 09 06**                                              **Page 1     of 1**

ELECTRONICALLY FILED
Commercial General Liability
Classification and Premium Schedule

POLICY NUMBER CPP20487910602

EFFECTIVE DATE 10/01/2013

NAMED INSURED ELITE STORAGE SOLUTIONS, LLC

## CLASSIFICATION AND PREMIUM

| Line 1 | LOCATION NUMBER | CODE NO. | EXPOSURE | PREMIUM BASE | COVERAGE | RATE | ADVANCE PREMIUM |
|---|---|---|---|---|---|---|---|
| Line 2 | CLASSIFICATION | | | | | | |
| | 001 | | | PAYROLL | PREM/OPS | | |
| | CONSULTANTS - PRODUCTS/COMPLETED OPERATIONS ARE SUBJECT TO THE GENERAL AGGREGATE LIM. | | | | | | |
| | 001 | | | GROSS SALES | PREM/OPS | | |
| | METAL GOODS MFG. | | | | | | |
| | 001 | | | GROSS SALES | PROD/COMOPS | | |
| | METAL GOODS MFG. | | | | | | |
| | 001 | | | PAYROLL | PREM/OPS | | |
| | METAL ERECTION - NONSTRUCTURAL | | | | | | |
| | 001 | | | PAYROLL | PROD/COMOPS | | |
| | METAL ERECTION - NONSTRUCTURAL | | | | | | |
| | 002 | | | GROSS SALES | PREM/OPS | | |
| | METAL GOODS MFG. | | | | | | |
| | 002 | | | GROSS SALES | PROD/COMOPS | | |
| | METAL GOODS MFG. | | | | | | |

GL DS 71 09 09 06

ELECTRONICALLY FILED
Commercial General Liability
Classification and Premium Schedule
PAGE 1 of 1 DP000M

POLICY NUMBER CPP20487910602          EFFECTIVE DATE 10/01/2013

NAMED INSURED ___ ELITE STORAGE SOLUTIONS, LLC

CLASSIFICATION AND PREMIUM

| Line 1 | LOCATION NUMBER | CODE NO. | EXPOSURE | PREMIUM BASE | COVERAGE | RATE | ADVANCE PREMIUM |
|---|---|---|---|---|---|---|---|
| Line 2 | CLASSIFICATION | | | | | | |
| | 002 | | | | | | |
| | WAREHOUSES - PRIVATE - | | OTHER THAN NOT-FOR-PROFIT | AREA - PRODUCTS/COMPLETED OPERATIONS ARE SUBJECT TO THE GENERAL | PREM/OPS | | |
| | AGGREGATE LIMIT | | | | | | |
| | 004 | | | | | | |
| | WAREHOUSES - PRIVATE - | | OTHER THAN NOT-FOR-PROFIT | AREA - PRODUCTS/COMPLETED OPERATIONS ARE SUBJECT TO THE GENERAL | PREM/OPS | | |
| | AGGREGATE LIMIT | | | | | | |
| | 010 | | | | | | |
| | WAREHOUSES - PRIVATE - | | OTHER THAN NOT-FOR-PROFIT | AREA - PRODUCTS/COMPLETED OPERATIONS ARE SUBJECT TO THE GENERAL | PREM/OPS | | |
| | AGGREGATE LIMIT | | | | | | |
| | GA | | | | | | |
| | ADVANTAGE GENERAL LIABILITY EXTENSION ENDORSEMENT | | | | | | |
| | GA | | | | | | |
| | ADVANTAGE BLANKET ADDITIONAL INSURED | | | | | | |
| | GA | | | | | | |
| | MANUFACTURERS/PROCESSORS SPECIFICATIONS EXPENSE COVERAGE | | | | | | |
| | GA | | | | | | |
| | PRODUCT RECALL COVERAGE | | | | | | |

GL DS 71 09 09 06

## EMPLOYEE BENEFITS LIABILITY COVERAGE DECLARATIONS

| NAMED INSURED<br>ELITE STORAGE SOLUTIONS, LLC | EFFECTIVE DATE<br>10/01/2013 | POLICY NUMBER<br>CPP20487910602 |
|---|---|---|

### EMPLOYEE BENEFITS LIABILITY COVERAGE

**Limits of Insurance**                                           **Deductible**

Each Employee          $1,000,000                Each Employee

Annual Aggregate       $1,000,000

Forms Applicable: SEE FORMS AND ENDORSEMENTS SCHEDULE

|  |  |
|---|---|
| TOTAL COVERAGE PART PREMIUM | |
| APPLICABLE TAX OR SURCHARGE | |
| TOTAL ESTIMATED PREMIUM | |

ELECTRONICALLY FILED
6/25/2018 3:15 PM
2018-CH-07976
PAGE 10 of 83

EB DS 70 00 11 09

**COMMERCIAL GENERAL LIABILITY COVERAGE**
**ADVANTAGE SUPPLEMENTAL COVERAGE SCHEDULE**

| NAMED INSURED | POLICY NUMBER |
|---|---|
| ELITE STORAGE SOLUTIONS, LLC | CPP20487910602 |

**PRODUCT RECALL COVERAGE ENDORSEMENT**

| Limits of Insurance | | | Deductible |
|---|---|---|---|
| Each Loss | $ | 100,000 | Each Loss |
| Annual Aggregate | $ | 100,000 | |
| | | | Premium |

**MANUFACTURERS/PROCESSORS SPECIFICATIONS EXPENSE COVERAGE ENDORSEMENT**

| Limits of Insurance | | | Deductible |
|---|---|---|---|
| Each Loss | $ | 50,000 | Each Loss |
| Annual Aggregate | $ | 50,000 | |
| | | | Premium |

**REPAIR AND REWORK COVERAGE:**
**EXPENSE INDEMNIFICATION FOR REPAIR OF YOUR PRODUCT OR YOUR WORK ENDORSEMENT**

| Limits of Insurance | | Deductible |
|---|---|---|
| Each Loss | $ | Each Loss |
| Annual Aggregate | $ | |
| | | Premium |

**PROPERTY DAMAGE TO PROPERTY LOANED TO THE INSURED OR PERSONAL PROPERTY**
**IN THE CARE, CUSTODY AND CONTROL OF THE INSURED COVERAGE ENDORSEMENT**

| Limits of Insurance | | Deductible |
|---|---|---|
| Each Occurrence | $ | Each Occurrence |
| Annual Aggregate | $ | |
| | | Premium |

\* **Note:** Deductibles have been pre-entered. Coverage and the Deductible only apply if Limits of Insurance are entered.

ELECTRONICALLY FILED
6/25/2018 3:15 PM
2018-CH-07976
PAGE 79 of 178

GL DS 71 11 01 08

# Forms and Endorsements Schedule

**Policy Number:**  CPP20487910602        **Effective Date:** 10/01/2013

**Named Insured:**  ELITE STORAGE SOLUTIONS, LLC


**Form Number**        **Description**

**COMMON FORMS**

IL 00 17 11 98     COMMON POLICY CONDITIONS
IL 00 21 09 08     NUCLEAR ENERGY LIABILITY EXCLUSION
IL 02 62 09 08     GEORGIA CHANGES - CANCELLATION AND NONRENEWAL
IL 70 27 07 01     PRIVACY PROTECTION CONDITION
M 10 85 05 09      AMERISURE MUTUAL INSURANCE COMPANY - SIGNATURE PAGE

ELECTRONICALLY FILED
6/25/2018 3:15 PM
2018-CH-07976
PAGE 12 of 83

IL DS 71 01 09 06                                        **Page 1   of 1**

IL 00 17 11 98

# COMMON POLICY CONDITIONS

All Coverage Parts included in this policy are subject to the following conditions.

ELECTRONICALLY FILED
6/25/2018 3:15 PM
2018-CH-07976
PAGE 13 of 83

## A. Cancellation

1. The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.

2. We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least:

   a. 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

   b. 30 days before the effective date of cancellation if we cancel for any other reason.

3. We will mail or deliver our notice to the first Named Insured's last mailing address known to us.

4. Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

5. If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered a refund.

6. If notice is mailed, proof of mailing will be sufficient proof of notice.

## B. Changes

This policy contains all the agreements between you and us concerning the insurance afforded. The first Named Insured shown in the Declarations is authorized to make changes in the terms of this policy with our consent. This policy's terms can be amended or waived only by endorsement issued by us and made a part of this policy.

## C. Examination Of Your Books And Records

We may examine and audit your books and records as they relate to this policy at any time during the policy period and up to three years afterward.

## D. Inspections And Surveys

1. We have the right to:

   a. Make inspections and surveys at any time;

   b. Give you reports on the conditions we find; and

   c. Recommend changes.

2. We are not obligated to make any inspections, surveys, reports or recommendations and any such actions we do undertake relate only to insurability and the premiums to be charged. We do not make safety inspections. We do not undertake to perform the duty of any person or organization to provide for the health or safety of workers or the public. And we do not warrant that conditions:

   a. Are safe or healthful; or

   b. Comply with laws, regulations, codes or standards.

3. Paragraphs 1. and 2. of this condition apply not only to us, but also to any rating, advisory, rate service or similar organization which makes insurance inspections, surveys, reports or recommendations.

4. Paragraph 2. of this condition does not apply to any inspections, surveys, reports or recommendations we may make relative to certification, under state or municipal statutes, ordinances or regulations, of boilers, pressure vessels or elevators.

## E. Premiums

The first Named Insured shown in the Declarations:

1. Is responsible for the payment of all premiums; and

2. Will be the payee for any return premiums we pay.

## F. Transfer Of Your Rights And Duties Under This Policy

Your rights and duties under this policy may not be transferred without our written consent except in the case of death of an individual named insured.

If you die, your rights and duties will be transferred to your legal representative but only while acting within the scope of duties as your legal representative. Until your legal representative is appointed, anyone having proper temporary custody of your property will have your rights and duties but only with respect to that property.

IL 00 21 09 08

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# NUCLEAR ENERGY LIABILITY EXCLUSION ENDORSEMENT
### (Broad Form)

This endorsement modifies insurance provided under the following:

COMMERCIAL AUTOMOBILE COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
FARM COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
MEDICAL PROFESSIONAL LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
RAILROAD PROTECTIVE LIABILITY COVERAGE PART
UNDERGROUND STORAGE TANK POLICY

ELECTRONICALLY FILED
6/25/2018 3:15 PM
2018-CH-07976
PAGE 14 of 83

1. The insurance does not apply:

A. Under any Liability Coverage, to "bodily injury" or "property damage":

   (1) With respect to which an "insured" under the policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters, Nuclear Insurance Association of Canada or any of their successors, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability; or

   (2) Resulting from the "hazardous properties" of "nuclear material" and with respect to which (a) any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or (b) the "insured" is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

B. Under any Medical Payments coverage, to expenses incurred with respect to "bodily injury" resulting from the "hazardous properties" of "nuclear material" and arising out of the operation of a "nuclear facility" by any person or organization.

C. Under any Liability Coverage, to "bodily injury" or "property damage" resulting from "hazardous properties" of "nuclear material", if:

   (1) The "nuclear material" (a) is at any "nuclear facility" owned by, or operated by or on behalf of, an "insured" or (b) has been discharged or dispersed therefrom;

   (2) The "nuclear material" is contained in "spent fuel" or "waste" at any time possessed, handled, used, processed, stored, transported or disposed of, by or on behalf of an "insured"; or

   (3) The "bodily injury" or "property damage" arises out of the furnishing by an "insured" of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any "nuclear facility", but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion (3) applies only to "property damage" to such "nuclear facility" and any property thereat.

2. As used in this endorsement:

"Hazardous properties" includes radioactive, toxic or explosive properties.

"Nuclear material" means "source material", "special nuclear material" or "by-product material".

© ISO Properties, Inc., 2007

"Source material", "special nuclear material", and "by-product material" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof.

"Spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a "nuclear reactor".

"Waste" means any waste material **(a)** containing "by-product material" other than the tailings or wastes produced by the extraction or concentration of uranium or thorium from any ore processed primarily for its "source material" content, and **(b)** resulting from the operation by any person or organization of any "nuclear facility" included under the first two paragraphs of the definition of "nuclear facility".

"Nuclear facility" means:

    **(a)** Any "nuclear reactor";

    **(b)** Any equipment or device designed or used for **(1)** separating the isotopes of uranium or plutonium, **(2)** processing or utilizing "spent fuel", or **(3)** handling, processing or packaging "waste";

    **(c)** Any equipment or device used for the processing, fabricating or alloying of "special nuclear material" if at any time the total amount of such material in the custody of the "insured" at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235;

    **(d)** Any structure, basin, excavation, premises or place prepared or used for the storage or disposal of "waste";

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations.

"Nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material.

"Property damage" includes all forms of radioactive contamination of property.

ELECTRONICALLY FILED
6/25/2018 3:15 PM
2018-CH-07976
PAGE 15 of 83

© ISO Properties, Inc., 2007      **IL 00 21 09 08**   □

IL 02 62 09 08

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# GEORGIA CHANGES – CANCELLATION AND NONRENEWAL

This endorsement modifies insurance provided under the following:

CAPITAL ASSETS PROGRAM (OUTPUT POLICY) COVERAGE PART
COMMERCIAL AUTOMOBILE COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
COMMERCIAL INLAND MARINE COVERAGE PART
COMMERCIAL PROPERTY COVERAGE PART
CRIME AND FIDELITY COVERAGE PART
EMPLOYMENT-RELATED PRACTICES LIABILITY COVERAGE PART
EQUIPMENT BREAKDOWN COVERAGE PART
FARM COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
MEDICAL PROFESSIONAL LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

ELECTRONICALLY FILED
6/25/2018 3:15 PM
2018-CH-07976
PAGE 16 of 83

A. Paragraph **A.1.** of the **Cancellation** Common Policy Condition is replaced by the following:

1. The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation stating a future date on which the policy is to be cancelled, subject to the following:

   a. If only the interest of the first Named Insured is affected, the effective date of cancellation will be either the date we receive notice from the first Named Insured or the date specified in the notice, whichever is later. However, upon receiving a written notice of cancellation from the first Named Insured, we may waive the requirement that the notice state the future date of cancellation, by confirming the date and time of cancellation in writing to the first Named Insured.

   b. If by statute, regulation or contract this policy may not be cancelled unless notice is given to a governmental agency, mortgagee or other third party, we will mail or deliver at least 10 days notice to the first Named Insured and the third party as soon as practicable after receiving the first Named Insured's request for cancellation.

Our notice will state the effective date of cancellation, which will be the later of the following:

   (1) 10 days from the date of mailing or delivering our notice, or

   (2) The effective date of cancellation stated in the first Named Insured's notice to us.

B. Paragraph **A.5.** of the **Cancellation** Common Policy Condition is replaced by the following:

5. **Premium Refund**

   a. If this policy is cancelled, we will send the first Named Insured any premium refund due.

   b. If we cancel, the refund will be pro rata, except as provided in c. below.

   c. If the cancellation results from failure of the first Named Insured to pay, when due, any premium to us or any amount, when due, under a premium finance agreement, then the refund may be less than pro rata. Calculation of the return premium at less than pro rata represents a penalty charged on unearned premium.

   d. If the first Named Insured cancels, the refund may be less than pro rata.

   e. The cancellation will be effective even if we have not made or offered a refund.

 © ISO Properties, Inc., 2007 ▢

C. The following is added to the **Cancellation** Common Policy condition and supersedes any other provisions to the contrary:

If we decide to:

1. Cancel or nonrenew this policy; or

2. Increase current policy premium by more than 15% (other than any increase due to change in risk, exposure or experience modification or resulting from an audit of auditable coverages); or

3. Change any policy provision which would limit or restrict coverage;

Then:

We will mail or deliver notice of our action (including the dollar amount of any increase in renewal premium of more than 15%) to the first Named Insured and lienholder, if any, at the last mailing address known to us. Except as applicable as described in Paragraph **D.** below, we will mail or deliver notice at least:

1. 10 days before the effective date of cancellation if this policy has been in effect less than 60 days or if we cancel for nonpayment of premium; or

2. 45 days before the effective date of cancellation if this policy has been in effect 60 or more days and we cancel for a reason other than nonpayment of premium; or

3. 45 days before the expiration date of this policy if we decide to nonrenew, increase the premium or limit or restrict coverage.

D. The following provisions apply to insurance covering residential real property only provided under the:

Capital Assets Program (Output Policy) Coverage Part;

Commercial Property Coverage Part;

Farm Coverage Part;

If the named insured is a natural person.

With respect to such insurance, the following is added to the **Cancellation** Common Policy Condition and supersedes any provisions to the contrary:

1. When this policy has been in effect for 60 days or less and is not a renewal with us, we may cancel for any reason by notifying the first Named Insured at least 10 days before the date cancellation takes effect.

2. When this policy has been in effect for more than 60 days, or at any time if it is a renewal with us, we may cancel only for one or more of the following reasons:

a. Nonpayment of premium, whether payable to us or to our agent;

b. Upon discovery of fraud, concealment of a material fact, or material misrepresentation made by or with the knowledge of any person insured under this policy in obtaining this policy, continuing this policy or presenting a claim under this policy;

c. Upon the occurrence of a change in the risk which substantially increases any hazard insured against; or

d. Upon the violation of any of the material terms or conditions of this policy by any person insured under this policy.

We may cancel by providing notice to the first Named Insured at least:

● 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

● 45 days before the effective date of cancellation if we cancel for any of the reasons listed in **b., c.** or **d.** above.

ELECTRONICALLY FILED
6/25/2018 3:15 PM
2018-CH-07976
PAGE 17 of 83

© ISO Properties, Inc., 2007     IL 02 62 09 08     ☐

POLICY NUMBER: CPP20487910602

IL 09 85 01 08

**THIS ENDORSEMENT IS ATTACHED TO AND MADE PART OF YOUR POLICY IN RESPONSE TO THE DISCLOSURE REQUIREMENTS OF THE TERRORISM RISK INSURANCE ACT. THIS ENDORSEMENT DOES NOT GRANT ANY COVERAGE OR CHANGE THE TERMS AND CONDITIONS OF ANY COVERAGE UNDER THE POLICY.**

# DISCLOSURE PURSUANT TO TERRORISM RISK INSURANCE ACT

### SCHEDULE

Terrorism Premium (Certified Acts) $
**This premium is the total Certified Acts premium attributable to the following Coverage Part(s), Coverage Form(s) and/or Policy(s):**
COMPREHENSIVE GENERAL LIABILITY, CPP20487910602, EMPLOYEE BENEFITS LIABILITY, CPP20487910602

**Additional information, if any, concerning the terrorism premium:**

Information required to complete this Schedule, if not shown above, will be shown in the Declarations.

ELECTRONICALLY FILED
6/25/2018 3:15 PM
2018-CH-07976
PAGE 18 of 83

**A. Disclosure Of Premium**

In accordance with the federal Terrorism Risk Insurance Act, we are required to provide you with a notice disclosing the portion of your premium, if any, attributable to coverage for terrorist acts certified under the Terrorism Risk Insurance Act. The portion of your premium attributable to such coverage is shown in the Schedule of this endorsement or in the policy Declarations.

**B. Disclosure Of Federal Participation In Payment Of Terrorism Losses**

The United States Government, Department of the Treasury, will pay a share of terrorism losses insured under the federal program. The federal share equals 85% of that portion of the amount of such insured losses that exceeds the applicable insurer retention. However, if aggregate insured losses attributable to terrorist acts certified under the Terrorism Risk Insurance Act exceed $100 billion in a Program Year (January 1 through December 31), the Treasury shall not make any payment for any portion of the amount of such losses that exceeds $100 billion.

**C. Cap On Insurer Participation In Payment Of Terrorism Losses**

If aggregate insured losses attributable to terrorist acts certified under the Terrorism Risk Insurance Act exceed $100 billion in a Program Year (January 1 through December 31) and we have met our insurer deductible under the Terrorism Risk Insurance Act, we shall not be liable for the payment of any portion of the amount of such losses that exceeds $100 billion, and in such case insured losses up to that amount are subject to pro rata allocation in accordance with procedures established by the Secretary of the Treasury.

© ISO Properties, Inc., 2007

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# GEORGIA AMENDATORY ENDORSEMENT

This endorsement modifies insurance provided under the following:

BUSINESS AUTOMOBILE COVERAGE FORM
GENERAL LIABILITY COVERAGE FORM
PROPERTY COVERAGE FORM

# NOTICE

**The laws of the State of Georgia prohibit insurers from unfairly discriminating against any person based upon his or her status as a victim of family violence.**

ELECTRONICALLY FILED
6/25/2018 3:15 PM
2018-CH-07976
PAGE 19 of 83

IL 70 25 08 00

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# PRIVACY PROTECTION CONDITION

This endorsement modifies the following:

## COMMON POLICY CONDITIONS

**Privacy Protection**

The COMMON POLICY CONDITIONS is modified to include the following additional Condition:Privacy Protection

a.  This policy provides that you will report claims to us as soon as practicable and will cooperate with us in the investigation and settlement of claims. To enable you to assist us in the claim handling process we, or our independent agent, may share certain information with you. This information may be Confidential Information. Confidential Information means non-public personal information. This information will be shared solely for the purpose of helping to effect, administer or enforce rights and benefits payable or recoverable under this policy.

b.  You agree to use such Confidential Information solely to perform the services and obligations required under this policy. You will not use Confidential Information for any other purpose. You will use information shared to:

ELECTRONICALLY FILED
6/25/2018 3:15 PM
2018-CH-07976
PAGE 20 of 83

   (1)  work with us to develop settlement or litigation strategies on your behalf.
   (2)  detect and investigate any suspected fraud.
   (3)  support our safety, loss prevention, and case management programs. Case management includes utilization review, disability management, return to work, and light duty programs.
   (4)  check your premium charges and billings for accuracy.
   (5)  monitor our claim handling practices for quality assurance, quality improvement and performance evaluation purposes.
   (6)  report to us any information that may contribute to the fair and final resolution of all claims.

You specifically agree not to use any Confidential Information to market your products or services. You will also not use Confidential Information to make personnel or employment related decisions.

c.  You agree to protect the privacy of Confidential Information. You will not share Confidential Information, either directly or indirectly with any third party, except as may be allowed by law. You will share Confidential Information only with your employees who have a need for such information to perform their duties under this policy. If you need to disclose any Confidential Information to a third party in order to perform your duties under this policy, you will first get our written consent. You will then enter into a confidentiality agreement with such third party. Under that confidentiality agreement such third party must be restricted from disclosing, using or copying Confidential Information, except as consistent with this policy.

Nothing in this endorsement shall affect the coverage provided by this policy. Provided, however, if permitted by law, we may cancel your policy in the event you use or disclose Confidential Information other than as provided in thisendorsement or permitted by law.

**IL 70 27 07 01**

# AMERISURE MUTUAL INSURANCE COMPANY
26777 Halsted Road, Farmington Hills, MI 48331-3586
Phone 1-800-257-1900

## ASSIGNMENT

Assignment of this policy is valid only with the written consent of this Company.

## POLICY CONTENT

This policy is made and accepted subject to the foregoing provisions and stipulations and those which follow. These provisions, in addition to those added by amendment or endorsement are a part of this policy.

This policy consists of the Common Policy Declarations, Coverage Parts and endorsements listed in that Declarations form. In return for the payment of the premium, the Company agrees with the Named Insured to provide the insurance afforded by a Coverage Part forming part of this policy.

## MUTUAL POLICY CONDITIONS

This policy is non-assessable. You may participate in the distribution of dividends to the extent and upon the conditions fixed and determined by the Board of Directors. Dividends cannot be guaranteed. Any distribution will be made in accordance with law.

The Company has by its authorized representative executed and attested to these provisions as reflected below.

ELECTRONICALLY FILED
6/25/2018 3:15 PM
2018-CH-07976
PAGE 21 of 83

By virtue of this policy, the insured is a member of Amerisure Mutual Holdings, Inc. of Farmington Hills, Michigan. Members are entitled to vote either in person or by proxy at any meetings of members. Annual meetings are held on the second Thursday of May of each year at 10:30 A.M. at the Home Office in Farmington Hills, MI or at such other place in the City of Farmington Hills, to which the members may adjourn such meeting.

Secretary                    President

M 10 85 05 09

# Forms and Endorsements Schedule

**Policy Number:** CPP20487910602     **Effective Date:** 10/01/2013

**Named Insured:** ELITE STORAGE SOLUTIONS, LLC

| Form Number | Description |
|---|---|
| **COMMON FORMS** | |
| IL DS 71 01 09 06 | FORMS AND ENDORSEMENTS SCHEDULE |
| IL 09 85 01 08 | DISCLOSURE PURSUANT TO TERRORISM RISK INSURANCE ACT |
| CG 21 41 11 85 | EXCLUSION - INTERCOMPANY PRODUCTS SUITS |
| CG 21 70 01 08 | CAP ON LOSSES FROM CERTIFIED ACTS OF TERRORISM |
| CG 70 42 04 03 | ASBESTOS EXCLUSION ENDORSEMENT |
| **COMPREHENSIVE GENERAL LIABILITY** | |
| IL 70 25 08 00 | GEORGIA AMENDATORY ENDORSEMENT |
| CG 00 01 04 13 | COMMERCIAL GENERAL LIABILITY COVERAGE FORM |
| CG 21 47 12 07 | EMPLOYMENT-RELATED PRACTICES EXCLUSION |
| CG 21 60 09 98 | EXCLUSION - YEAR 2000 COMPUTER-RELATED AND OTHER ELECTRONIC PROBLEMS |
| CG 21 67 12 04 | FUNGI OR BACTERIA EXCLUSION |
| CG 21 86 12 04 | EXCLUSION - EXTERIOR INSULATION AND FINISH SYSTEMS |
| CG 21 96 03 05 | SILICA OR SILICA-RELATED DUST EXCLUSION |
| CG 22 34 07 98 | EXCLUSION - CONSTRUCTION MANAGEMENT ERRORS AND OMISSIONS |
| CG 22 43 07 98 | EXCLUSION - ENGINEERS, ARCHITECTS OR SURVEYORS PROFESSIONAL LIABILITY |
| CG 22 79 07 98 | EXCLUSION - CONTRACTORS - PROFESSIONAL LIABILITY |
| CG 24 25 12 04 | LIMITED FUNGI OR BACTERIA COVERAGE |
| CG 70 14 05 08 | MANUFACTURERS/PROCESSORS SPECIFICATIONS EXPENSE COVERAGE |
| CG 70 15 05 08 | PRODUCT RECALL COVERAGE ENDORSEMENT |
| CG 70 70 05 08 | ADVANTAGE GENERAL LIABILITY EXTENSION ENDORSEMENT |
| 34 04 05 | BODILY INJURY DEFINITION MODIFICATION |
| 53 12 06 | EXCLUSION-OPERATIONS INCLUDED WITHIN A CONTROLLED INSURANCE PROGRAM |
| 55 10 12 | ELECTRONIC DATA LIABILITY |
| 66 08 11 | TOTAL POLLUTION EXCLUSION WITH EXCEPTIONS FOR BUILDING HEAT, COOLING AND DEHUMI |
| **EMPLOYEE BENEFITS LIABILITY** | |
| EB 70 01 11 97 | EMPLOYEE BENEFITS LIABILITY COVERAGE FORM |

ELECTRONICALLY FILED
7/25/2018 8:15 PM
2018-CH-07976
PAGE 2 of 83

IL DS 71 01 09 06            **Page 1 of 1**

# COMMERCIAL GENERAL LIABILITY COVERAGE FORM

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy. The words "we", "us" and "our" refer to the company providing this insurance.

The word "insured" means any person or organization qualifying as such under Section II – Who Is An Insured.

Other words and phrases that appear in quotation marks have special meaning. Refer to Section V – Definitions.

## SECTION I – COVERAGES

### COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY

**1. Insuring Agreement**

**a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

**(1)** The amount we will pay for damages is limited as described in Section III – Limits Of Insurance; and

**(2)** Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages A or B or medical expenses under Coverage C.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages A and B.

**b.** This insurance applies to "bodily injury" and "property damage" only if:

**(1)** The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

**(2)** The "bodily injury" or "property damage" occurs during the policy period; and

**(3)** Prior to the policy period, no insured listed under Paragraph 1. of Section II – Who Is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.

**c.** "Bodily injury" or "property damage" which occurs during the policy period and was not, prior to the policy period, known to have occurred by any insured listed under Paragraph 1. of Section II – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim, includes any continuation, change or resumption of that "bodily injury" or "property damage" after the end of the policy period.

**d.** "Bodily injury" or "property damage" will be deemed to have been known to have occurred at the earliest time when any insured listed under Paragraph 1. of Section II – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim:

**(1)** Reports all, or any part, of the "bodily injury" or "property damage" to us or any other insurer;

**(2)** Receives a written or verbal demand or claim for damages because of the "bodily injury" or "property damage"; or

**(3)** Becomes aware by any other means that "bodily injury" or "property damage" has occurred or has begun to occur.

**e.** Damages because of "bodily injury" include damages claimed by any person or organization for care, loss of services or death resulting at any time from the "bodily injury".

ELECTRONICALLY FILED
6/25/2018 3:15 PM
2018-CH-07976
PAGE 23 of 83

 © Insurance Services Office, Inc.,2012

## 2. Exclusions

This insurance does not apply to:

### a. Expected Or Intended Injury

"Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

### b. Contractual Liability

"Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

(1) That the insured would have in the absence of the contract or agreement; or

(2) Assumed in a contract or agreement that is an "insured contract", provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement. Solely for the purposes of liability assumed in an "insured contract", reasonable attorneys' fees and necessary litigation expenses incurred by or for a party other than an insured are deemed to be damages because of "bodily injury" or "property damage", provided:

(a) Liability to such party for, or for the cost of, that party's defense has also been assumed in the same "insured contract"; and

(b) Such attorneys' fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged.

### c. Liquor Liability

"Bodily injury" or "property damage" for which any insured may be held liable by reason of:

(1) Causing or contributing to the intoxication of any person;

(2) The furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or

(3) Any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.

ELECTRONICALLY FILED
6/25/2018 3:15 PM
2018-CH-07976
PAGE 24 of 83

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in:

(a) The supervision, hiring, employment, training or monitoring of others by that insured; or

(b) Providing or failing to provide transportation with respect to any person that may be under the influence of alcohol;

if the "occurrence" which caused the "bodily injury" or "property damage", involved that which is described in Paragraph (1), (2) or (3) above.

However, this exclusion applies only if you are in the business of manufacturing, distributing, selling, serving or furnishing alcoholic beverages. For the purposes of this exclusion, permitting a person to bring alcoholic beverages on your premises, for consumption on your premises, whether or not a fee is charged or a license is required for such activity, is not by itself considered the business of selling, serving or furnishing alcoholic beverages.

### d. Workers' Compensation And Similar Laws

Any obligation of the insured under a workers' compensation, disability benefits or unemployment compensation law or any similar law.

### e. Employer's Liability

"Bodily injury" to:

(1) An "employee" of the insured arising out of and in the course of:

(a) Employment by the insured; or

(b) Performing duties related to the conduct of the insured's business; or

(2) The spouse, child, parent, brother or sister of that "employee" as a consequence of Paragraph (1) above.

This exclusion applies whether the insured may be liable as an employer or in any other capacity and to any obligation to share damages with or repay someone else who must pay damages because of the injury.

This exclusion does not apply to liability assumed by the insured under an "insured contract".

© Insurance Services Office, Inc.,2012

**f. Pollution**

(1) "Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants":

(a) At or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any insured. However, this subparagraph does not apply to:

(i) "Bodily injury" if sustained within a building and caused by smoke, fumes, vapor or soot produced by or originating from equipment that is used to heat, cool or dehumidify the building, or equipment that is used to heat water for personal use, by the building's occupants or their guests;

(ii) "Bodily injury" or "property damage" for which you may be held liable, if you are a contractor and the owner or lessee of such premises, site or location has been added to your policy as an additional insured with respect to your ongoing operations performed for that additional insured at that premises, site or location and such premises, site or location is not and never was owned or occupied by, or rented or loaned to, any insured, other than that additional insured; or

(iii) "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire";

(b) At or from any premises, site or location which is or was at any time used by or for any insured or others for the handling, storage, disposal, processing or treatment of waste;

(c) Which are or were at any time transported, handled, stored, treated, disposed of, or processed as waste by or for:

(i) Any insured; or

(ii) Any person or organization for whom you may be legally responsible; or

(d) At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the "pollutants" are brought on or to the premises, site or location in connection with such operations by such insured, contractor or subcontractor. However, this subparagraph does not apply to:

(i) "Bodily injury" or "property damage" arising out of the escape of fuels, lubricants or other operating fluids which are needed to perform the normal electrical, hydraulic or mechanical functions necessary for the operation of "mobile equipment" or its parts, if such fuels, lubricants or other operating fluids escape from a vehicle part designed to hold, store or receive them. This exception does not apply if the "bodily injury" or "property damage" arises out of the intentional discharge, dispersal or release of the fuels, lubricants or other operating fluids, or if such fuels, lubricants or other operating fluids are brought on or to the premises, site or location with the intent that they be discharged, dispersed or released as part of the operations being performed by such insured, contractor or subcontractor;

(ii) "Bodily injury" or "property damage" sustained within a building and caused by the release of gases, fumes or vapors from materials brought into that building in connection with operations being performed by you or on your behalf by a contractor or subcontractor; or

(iii) "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire".

(e) At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the operations are to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants".

ELECTRONICALLY FILED
6/25/2018 3:15 PM
2018-CH-07976
PAGE 25 of 83

© Insurance Services Office, Inc.,2012

ELECTRONICALLY FILED
6/25/2018 3:15 PM
2018-CH-07976
PAGE 26 of 83

(2) Any loss, cost or expense arising out of any:

   (a) Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

   (b) Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

However, this paragraph does not apply to liability for damages because of "property damage" that the insured would have in the absence of such request, demand, order or statutory or regulatory requirement, or such claim or "suit" by or on behalf of a governmental authority.

**g. Aircraft, Auto Or Watercraft**

"Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft owned or operated by or rented or loaned to any insured. Use includes operation and "loading or unloading".

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury" or "property damage" involved the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft that is owned or operated by or rented or loaned to any insured.

This exclusion does not apply to:

(1) A watercraft while ashore on premises you own or rent;

(2) A watercraft you do not own that is:

   (a) Less than 26 feet long; and

   (b) Not being used to carry persons or property for a charge;

(3) Parking an "auto" on, or on the ways next to, premises you own or rent, provided the "auto" is not owned by or rented or loaned to you or the insured;

(4) Liability assumed under any "insured contract" for the ownership, maintenance or use of aircraft or watercraft; or

(5) "Bodily injury" or "property damage" arising out of:

   (a) The operation of machinery or equipment that is attached to, or part of, a land vehicle that would qualify under the definition of "mobile equipment" if it were not subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged; or

   (b) The operation of any of the machinery or equipment listed in Paragraph f.(2) or f.(3) of the definition of "mobile equipment".

**h. Mobile Equipment**

"Bodily injury" or "property damage" arising out of:

(1) The transportation of "mobile equipment" by an "auto" owned or operated by or rented or loaned to any insured; or

(2) The use of "mobile equipment" in, or while in practice for, or while being prepared for, any prearranged racing, speed, demolition, or stunting activity.

**i. War**

"Bodily injury" or "property damage", however caused, arising, directly or indirectly, out of:

(1) War, including undeclared or civil war;

(2) Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

(3) Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

**j. Damage To Property**

"Property damage" to:

(1) Property you own, rent, or occupy, including any costs or expenses incurred by you, or any other person, organization or entity, for repair, replacement, enhancement, restoration or maintenance of such property for any reason, including prevention of injury to a person or damage to another's property;

(2) Premises you sell, give away or abandon, if the "property damage" arises out of any part of those premises;

(3) Property loaned to you;

ELECTRONICALLY FILED.
6/25/2018 3:15 PM
2018-CH-07976
PAGE 27 of 83

**(4)** Personal property in the care, custody or control of the insured;

**(5)** That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or

**(6)** That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

Paragraphs **(1), (3)** and **(4)** of this exclusion do not apply to "property damage" (other than damage by fire) to premises, including the contents of such premises, rented to you for a period of seven or fewer consecutive days. A separate limit of insurance applies to Damage To Premises Rented To You as described in Section III – Limits Of Insurance.

Paragraph **(2)** of this exclusion does not apply if the premises are "your work" and were never occupied, rented or held for rental by you.

Paragraphs **(3), (4), (5)** and **(6)** of this exclusion do not apply to liability assumed under a sidetrack agreement.

Paragraph **(6)** of this exclusion does not apply to "property damage" included in the "products-completed operations hazard".

**k. Damage To Your Product**

"Property damage" to "your product" arising out of it or any part of it.

**l. Damage To Your Work**

"Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard".

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

**m. Damage To Impaired Property Or Property Not Physically Injured**

"Property damage" to "impaired property" or property that has not been physically injured, arising out of:

**(1)** A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or

**(2)** A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

**n. Recall Of Products, Work Or Impaired Property**

Damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

**(1)** "Your product";

**(2)** "Your work"; or

**(3)** "Impaired property";

if such product, work, or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

**o. Personal And Advertising Injury**

"Bodily injury" arising out of "personal and advertising injury".

**p. Electronic Data**

Damages arising out of the loss of, loss of use of, damage to, corruption of, inability to access, or inability to manipulate electronic data.

However, this exclusion does not apply to liability for damages because of "bodily injury".

As used in this exclusion, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMs, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

**q. Recording And Distribution Of Material Or Information In Violation Of Law**

"Bodily injury" or "property damage" arising directly or indirectly out of any action or omission that violates or is alleged to violate:

**(1)** The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law;

**(2)** The CAN-SPAM Act of 2003, including any amendment of or addition to such law;

**(3)** The Fair Credit Reporting Act (FCRA), and any amendment of or addition to such law, including the Fair and Accurate Credit Transactions Act (FACTA); or

(4) Any federal, state or local statute, ordinance or regulation, other than the TCPA, CAN-SPAM Act of 2003 or FCRA and their amendments and additions, that addresses, prohibits, or limits the printing, dissemination, disposal, collecting, recording, sending, transmitting, communicating or distribution of material or information.

Exclusions c. through n. do not apply to damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner. A separate limit of insurance applies to this coverage as described in Section III – Limits Of Insurance.

## COVERAGE B – PERSONAL AND ADVERTISING INJURY LIABILITY

### 1. Insuring Agreement

a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "personal and advertising injury" to which this insurance does not apply. We may, at our discretion, investigate any offense and settle any claim or "suit" that may result. But:

(1) The amount we will pay for damages is limited as described in Section III – Limits Of Insurance; and

(2) Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages A or B or medical expenses under Coverage C.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages A and B.

b. This insurance applies to "personal and advertising injury" caused by an offense arising out of your business but only if the offense was committed in the "coverage territory" during the policy period.

### 2. Exclusions

This insurance does not apply to:

a. **Knowing Violation Of Rights Of Another**

"Personal and advertising injury" caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict "personal and advertising injury".

b. **Material Published With Knowledge Of Falsity**

"Personal and advertising injury" arising out of oral or written publication, in any manner, of material, if done by or at the direction of the insured with knowledge of its falsity.

c. **Material Published Prior To Policy Period**

"Personal and advertising injury" arising out of oral or written publication, in any manner, of material whose first publication took place before the beginning of the policy period.

d. **Criminal Acts**

"Personal and advertising injury" arising out of a criminal act committed by or at the direction of the insured.

e. **Contractual Liability**

"Personal and advertising injury" for which the insured has assumed liability in a contract or agreement. This exclusion does not apply to liability for damages that the insured would have in the absence of the contract or agreement.

f. **Breach Of Contract**

"Personal and advertising injury" arising out of a breach of contract, except an implied contract to use another's advertising idea in your "advertisement".

g. **Quality Or Performance Of Goods – Failure To Conform To Statements**

"Personal and advertising injury" arising out of the failure of goods, products or services to conform with any statement of quality or performance made in your "advertisement".

h. **Wrong Description Of Prices**

"Personal and advertising injury" arising out of the wrong description of the price of goods, products or services stated in your "advertisement".

ELECTRONICALLY FILED
6/25/2018 3:15 PM
2018-CH-07976
PAGE 28 of 83

© Insurance Services Office, Inc.,2012

ELECTRONICALLY FILED
6/25/2018 3:15 PM
2018-CH-07976
PAGE 29 of 83

**i. Infringement Of Copyright, Patent, Trademark Or Trade Secret**

"Personal and advertising injury" arising out of the infringement of copyright, patent, trademark, trade secret or other intellectual property rights. Under this exclusion, such other intellectual property rights do not include the use of another's advertising idea in your "advertisement".

However, this exclusion does not apply to infringement, in your "advertisement", of copyright, trade dress or slogan.

**j. Insureds In Media And Internet Type Businesses**

"Personal and advertising injury" committed by an insured whose business is:

(1) Advertising, broadcasting, publishing or telecasting;

(2) Designing or determining content of web sites for others; or

(3) An Internet search, access, content or service provider.

However, this exclusion does not apply to Paragraphs 14.a., b. and c. of "personal and advertising injury" under the Definitions section.

For the purposes of this exclusion, the placing of frames, borders or links, or advertising, for you or others anywhere on the Internet, is not by itself, considered the business of advertising, broadcasting, publishing or telecasting.

**k. Electronic Chatrooms Or Bulletin Boards**

"Personal and advertising injury" arising out of an electronic chatroom or bulletin board the insured hosts, owns, or over which the insured exercises control.

**l. Unauthorized Use Of Another's Name Or Product**

"Personal and advertising injury" arising out of the unauthorized use of another's name or product in your e-mail address, domain name or metatag, or any other similar tactics to mislead another's potential customers.

**m. Pollution**

"Personal and advertising injury" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time.

**n. Pollution-related**

Any loss, cost or expense arising out of any:

(1) Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

(2) Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

**o. War**

"Personal and advertising injury", however caused, arising, directly or indirectly, out of:

(1) War, including undeclared or civil war;

(2) Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

(3) Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

**p. Recording And Distribution Of Material Or Information In Violation Of Law**

"Personal and advertising injury" arising directly or indirectly out of any action or omission that violates or is alleged to violate:

(1) The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law;

(2) The CAN-SPAM Act of 2003, including any amendment of or addition to such law;

(3) The Fair Credit Reporting Act (FCRA), and any amendment of or addition to such law, including the Fair and Accurate Credit Transactions Act (FACTA); or

(4) Any federal, state or local statute, ordinance or regulation, other than the TCPA, CAN-SPAM Act of 2003 or FCRA and their amendments and additions, that addresses, prohibits, or limits the printing, dissemination, disposal, collecting, recording, sending, transmitting, communicating or distribution of material or information.

## COVERAGE C – MEDICAL PAYMENTS

### 1. Insuring Agreement

a. We will pay medical expenses as described below for "bodily injury" caused by an accident:

**(1)** On premises you own or rent;

**(2)** On ways next to premises you own or rent; or

**(3)** Because of your operations;

provided that:

**(a)** The accident takes place in the "coverage territory" and during the policy period;

**(b)** The expenses are incurred and reported to us within one year of the date of the accident; and

**(c)** The injured person submits to examination, at our expense, by physicians of our choice as often as we reasonably require.

b. We will make these payments regardless of fault. These payments will not exceed the applicable limit of insurance. We will pay reasonable expenses for:

**(1)** First aid administered at the time of an accident;

**(2)** Necessary medical, surgical, X-ray and dental services, including prosthetic devices; and

**(3)** Necessary ambulance, hospital, professional nursing and funeral services.

### 2. Exclusions

We will not pay expenses for "bodily injury":

a. **Any Insured**

To any insured, except "volunteer workers".

b. **Hired Person**

To a person hired to do work for or on behalf of any insured or a tenant of any insured.

c. **Injury On Normally Occupied Premises**

To a person injured on that part of premises you own or rent that the person normally occupies.

d. **Workers' Compensation And Similar Laws**

To a person, whether or not an "employee" of any insured, if benefits for the "bodily injury" are payable or must be provided under a workers' compensation or disability benefits law or a similar law.

e. **Athletics Activities**

To a person injured while practicing, instructing or participating in any physical exercises or games, sports, or athletic contests.

f. **Products-Completed Operations Hazard**

Included within the "products-completed operations hazard".

g. **Coverage A Exclusions**

Excluded under Coverage A.

## SUPPLEMENTARY PAYMENTS – COVERAGES A AND B

1. We will pay, with respect to any claim we investigate or settle, or any "suit" against an insured we defend:

a. All expenses we incur.

b. Up to $250 for cost of bail bonds required because of accidents or traffic law violations arising out of the use of any vehicle to which the Bodily Injury Liability Coverage applies. We do not have to furnish these bonds.

c. The cost of bonds to release attachments, but only for bond amounts within the applicable limit of insurance. We do not have to furnish these bonds.

d. All reasonable expenses incurred by the insured at our request to assist us in the investigation or defense of the claim or "suit", including actual loss of earnings up to $250 a day because of time off from work.

e. All court costs taxed against the insured in the "suit". However, these payments do not include attorneys' fees or attorneys' expenses taxed against the insured.

f. Prejudgment interest awarded against the insured on that part of the judgment we pay. If we make an offer to pay the applicable limit of insurance, we will not pay any prejudgment interest based on that period of time after the offer.

ELECTRONICALLY FILED
6/25/2018 3:15 PM
2018-CH-07976
PAGE 30 of 83

©Insurance Services Office, Inc.,2012  CG 00 01 04 13

g. All interest on the full amount of any judgment that accrues after entry of the judgment and before we have paid, offered to pay, or deposited in court the part of the judgment that is within the applicable limit of insurance.

These payments will not reduce the limits of insurance.

2. If we defend an insured against a "suit" and an indemnitee of the insured is also named as a party to the "suit", we will defend that indemnitee if all of the following conditions are met:

a. The "suit" against the indemnitee seeks damages for which the insured has assumed the liability of the indemnitee in a contract or agreement that is an "insured contract";

b. This insurance applies to such liability assumed by the insured;

c. The obligation to defend, or the cost of the defense of, that indemnitee, has also been assumed by the insured in the same "insured contract";

d. The allegations in the "suit" and the information we know about the "occurrence" are such that no conflict appears to exist between the interests of the insured and the interests of the indemnitee;

e. The indemnitee and the insured ask us to conduct and control the defense of that indemnitee against such "suit" and agree that we can assign the same counsel to defend the insured and the indemnitee; and

f. The indemnitee:

(1) Agrees in writing to:

(a) Cooperate with us in the investigation, settlement or defense of the "suit";

(b) Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the "suit";

(c) Notify any other insurer whose coverage is available to the indemnitee; and

(d) Cooperate with us with respect to coordinating other applicable insurance available to the indemnitee; and

(2) Provides us with written authorization to:

(a) Obtain records and other information related to the "suit"; and

(b) Conduct and control the defense of the indemnitee in such "suit".

ELECTRONICALLY FILED
6/25/2018 3:15 PM
2018-CH-07976
PAGE 31 of 83

So long as the above conditions are met, attorneys' fees incurred by us in the defense of that indemnitee, necessary litigation expenses incurred by us and necessary litigation expenses incurred by the indemnitee at our request will be paid as Supplementary Payments. Notwithstanding the provisions of Paragraph 2.b.(2) of Section I – Coverage A – Bodily Injury And Property Damage Liability, such payments will not be deemed to be damages for "bodily injury" and "property damage" and will not reduce the limits of insurance.

Our obligation to defend an insured's indemnitee and to pay for attorneys' fees and necessary litigation expenses as Supplementary Payments ends when we have used up the applicable limit of insurance in the payment of judgments or settlements or the conditions set forth above, or the terms of the agreement described in Paragraph f. above, are no longer met.

## SECTION II – WHO IS AN INSURED

1. If you are designated in the Declarations as:

a. An individual, you and your spouse are insureds, but only with respect to the conduct of a business of which you are the sole owner.

b. A partnership or joint venture, you are an insured. Your members, your partners, and their spouses are also insureds, but only with respect to the conduct of your business.

c. A limited liability company, you are an insured. Your members are also insureds, but only with respect to the conduct of your business. Your managers are insureds, but only with respect to their duties as your managers.

d. An organization other than a partnership, joint venture or limited liability company, you are an insured. Your "executive officers" and directors are insureds, but only with respect to their duties as your officers or directors. Your stockholders are also insureds, but only with respect to their liability as stockholders.

e. A trust, you are an insured. Your trustees are also insureds, but only with respect to their duties as trustees.

ELECTRONICALLY FILED
6/25/2018 3:15 PM
2018-CH-07976
PAGE 32 of 83

**2.** Each of the following is also an insured:

**a.** Your "volunteer workers" only while performing duties related to the conduct of your business, or your "employees", other than either your "executive officers" (if you are an organization other than a partnership, joint venture or limited liability company) or your managers (if you are a limited liability company), but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business. However, none of these "employees" or "volunteer workers" are insureds for:

**(1)** "Bodily injury" or "personal and advertising injury":

**(a)** To you, to your partners or members (if you are a partnership or joint venture), to your members (if you are a limited liability company), to a co-"employee" while in the course of his or her employment or performing duties related to the conduct of your business, or to your other "volunteer workers" while performing duties related to the conduct of your business;

**(b)** To the spouse, child, parent, brother or sister of that co-"employee" or "volunteer worker" as a consequence of Paragraph (1)(a) above;

**(c)** For which there is any obligation to share damages with or repay someone else who must pay damages because of the injury described in Paragraph (1)(a) or (b) above; or

**(d)** Arising out of his or her providing or failing to provide professional health care services.

**(2)** "Property damage" to property:

**(a)** Owned, occupied or used by;

**(b)** Rented to, in the care, custody or control of, or over which physical control is being exercised for any purpose by;

you, any of your "employees", "volunteer workers", any partner or member (if you are a partnership or joint venture), or any member (if you are a limited liability company).

**b.** Any person (other than your "employee" or "volunteer worker"), or any organization while acting as your real estate manager.

**c.** Any person or organization having proper temporary custody of your property if you die, but only:

**(1)** With respect to liability arising out of the maintenance or use of that property; and

**(2)** Until your legal representative has been appointed.

**d.** Your legal representative if you die, but only with respect to duties as such. That representative will have all your rights and duties under this Coverage Part.

**3.** Any organization you newly acquire or form, other than a partnership, joint venture or limited liability company, and over which you maintain ownership or majority interest, will qualify as a Named Insured if there is no other similar insurance available to that organization. However:

**a.** Coverage under this provision is afforded only until the 90th day after you acquire or form the organization or the end of the policy period, whichever is earlier;

**b.** Coverage A does not apply to "bodily injury" or "property damage" that occurred before you acquired or formed the organization; and

**c.** Coverage B does not apply to "personal and advertising injury" arising out of an offense committed before you acquired or formed the organization.

No person or organization is an insured with respect to the conduct of any current or past partnership, joint venture or limited liability company that is not shown as a Named Insured in the Declarations.

**SECTION III – LIMITS OF INSURANCE**

**1.** The Limits of Insurance shown in the Declarations and the rules below fix the most we will pay regardless of the number of:

**a.** Insureds;

**b.** Claims made or "suits" brought; or

**c.** Persons or organizations making claims or bringing "suits".

**2.** The General Aggregate Limit is the most we will pay for the sum of:

**a.** Medical expenses under Coverage C;

**b.** Damages under Coverage A, except damages because of "bodily injury" or "property damage" included in the "products-completed operations hazard"; and

**c.** Damages under Coverage B.

© Insurance Services Office, Inc.,2012

3. The Products-Completed Operations Aggregate Limit is the most we will pay under Coverage A for damages because of "bodily injury" and "property damage" included in the "products-completed operations hazard".

4. Subject to Paragraph 2. above, the Personal And Advertising Injury Limit is the most we will pay under Coverage B for the sum of all damages because of all "personal and advertising injury" sustained by any one person or organization.

5. Subject to Paragraph 2. or 3. above, whichever applies, the Each Occurrence Limit is the most we will pay for the sum of:

   a. Damages under Coverage A; and

   b. Medical expenses under Coverage C

   because of all "bodily injury" and "property damage" arising out of any one "occurrence".

6. Subject to Paragraph 5. above, the Damage To Premises Rented To You Limit is the most we will pay under Coverage A for damages because of "property damage" to any one premises, while rented to you, or in the case of damage by fire, while rented to you or temporarily occupied by you with permission of the owner.

7. Subject to Paragraph 5. above, the Medical Expense Limit is the most we will pay under Coverage C for all medical expenses because of "bodily injury" sustained by any one person.

The Limits of Insurance of this Coverage Part apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations, unless the policy period is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits of Insurance.

## SECTION IV – COMMERCIAL GENERAL LIABILITY CONDITIONS

1. **Bankruptcy**

   Bankruptcy or insolvency of the insured or of the insured's estate will not relieve us of our obligations under this Coverage Part.

2. **Duties In The Event Of Occurrence, Offense, Claim Or Suit**

   a. You must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim. To the extent possible, notice should include:

   (1) How, when and where the "occurrence" or offense took place;

   (2) The names and addresses of any injured persons and witnesses; and

(3) The nature and location of any injury or damage arising out of the "occurrence" or offense.

b. If a claim is made or "suit" is brought against any insured, you must:

   (1) Immediately record the specifics of the claim or "suit" and the date received; and

   (2) Notify us as soon as practicable.

   You must see to it that we receive written notice of the claim or "suit" as soon as practicable.

c. You and any other involved insured must:

   (1) Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";

   (2) Authorize us to obtain records and other information;

   (3) Cooperate with us in the investigation or settlement of the claim or defense against the "suit"; and

   (4) Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this insurance may also apply.

d. No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

3. **Legal Action Against Us**

   No person or organization has a right under this Coverage Part:

   a. To join us as a party or otherwise bring us into a "suit" asking for damages from an insured; or

   b. To sue us on this Coverage Part unless all of its terms have been fully complied with.

   A person or organization may sue us to recover on an agreed settlement or on a final judgment against an insured; but we will not be liable for damages that are not payable under the terms of this Coverage Part or that are in excess of the applicable limit of insurance. An agreed settlement means a settlement and release of liability signed by us, the insured and the claimant or the claimant's legal representative.

ELECTRONICALLY FILED
6/25/2018 3:15 PM
2018-CH-07976
PAGE 33 of 83

**4. Other Insurance**

If other valid and collectible insurance is available to the insured for a loss we cover under Coverages A or B of this Coverage Part, our obligations are limited as follows:

**a. Primary Insurance**

This insurance is primary except when Paragraph **b.** below applies. If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary. Then, we will share with all that other insurance by the method described in Paragraph **c.** below.

**b. Excess Insurance**

(1) This insurance is excess over:

(a) Any of the other insurance, whether primary, excess, contingent or on any other basis:

(i) That is Fire, Extended Coverage, Builder's Risk, Installation Risk or similar coverage for "your work";

(ii) That is Fire insurance for premises rented to you or temporarily occupied by you with permission of the owner;

(iii) That is insurance purchased by you to cover your liability as a tenant for "property damage" to premises rented to you or temporarily occupied by you with permission of the owner; or

(iv) If the loss arises out of the maintenance or use of aircraft, "autos" or watercraft to the extent not subject to Exclusion **g.** of Section I – Coverage A – Bodily Injury And Property Damage Liability.

(b) Any other primary insurance available to you covering liability for damages arising out of the premises or operations, or the products and completed operations, for which you have been added as an additional insured.

(2) When this insurance is excess, we will have no duty under Coverages A or B to defend the insured against any "suit" if any other insurer has a duty to defend the insured against that "suit". If no other insurer defends, we will undertake to do so, but we will be entitled to the insured's rights against all those other insurers.

(3) When this insurance is excess over other insurance, we will pay only our share of the amount of the loss, if any, that exceeds the sum of:

(a) The total amount that all such other insurance would pay for the loss in the absence of this insurance; and

(b) The total of all deductible and self-insured amounts under all that other insurance.

(4) We will share the remaining loss, if any, with any other insurance that is not described in this Excess Insurance provision and was not bought specifically to apply in excess of the Limits of Insurance shown in the Declarations of this Coverage Part.

**c. Method Of Sharing**

If all of the other insurance permits contribution by equal shares, we will follow this method also. Under this approach each insurer contributes equal amounts until it has paid its applicable limit of insurance or none of the loss remains, whichever comes first.

If any of the other insurance does not permit contribution by equal shares, we will contribute by limits. Under this method, each insurer's share is based on the ratio of its applicable limit of insurance to the total applicable limits of insurance of all insurers.

**5. Premium Audit**

a. We will compute all premiums for this Coverage Part in accordance with our rules and rates.

b. Premium shown in this Coverage Part as advance premium is a deposit premium only. At the close of each audit period we will compute the earned premium for that period and send notice to the first Named Insured. The due date for audit and retrospective premiums is the date shown as the due date on the bill. If the sum of the advance and audit premiums paid for the policy period is greater than the earned premium, we will return the excess to the first Named Insured.

c. The first Named Insured must keep records of the information we need for premium computation, and send us copies at such times as we may request.

**6. Representations**

By accepting this policy, you agree:

a. The statements in the Declarations are accurate and complete;

ELECTRONICALLY FILED
6/25/2018 3:15 PM
2018-CH-07976
PAGE 34 of 83

© Insurance Services Office, Inc.,2012

b. Those statements are based upon representations you made to us; and

c. We have issued this policy in reliance upon your representations.

**7. Separation Of Insureds**

Except with respect to the Limits of Insurance, and any rights or duties specifically assigned in this Coverage Part to the first Named Insured, this insurance applies:

a. As if each Named Insured were the only Named Insured; and

b. Separately to each insured against whom claim is made or "suit" is brought.

**8. Transfer Of Rights Of Recovery Against Others To Us**

If the insured has rights to recover all or part of any payment we have made under this Coverage Part, those rights are transferred to us. The insured must do nothing after loss to impair them. At our request, the insured will bring "suit" or transfer those rights to us and help us enforce them.

**9. When We Do Not Renew**

If we decide not to renew this Coverage Part, we will mail or deliver to the first Named Insured shown in the Declarations written notice of the nonrenewal not less than 30 days before the expiration date.

If notice is mailed, proof of mailing will be sufficient proof of notice.

**SECTION V – DEFINITIONS**

1. "Advertisement" means a notice that is broadcast or published to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters. For the purposes of this definition:

a. Notices that are published include material placed on the Internet or on similar electronic means of communication; and

b. Regarding web sites, only that part of a web site that is about your goods, products or services for the purposes of attracting customers or supporters is considered an advertisement.

2. "Auto" means:

a. A land motor vehicle, trailer or semitrailer designed for travel on public roads, including any attached machinery or equipment; or

b. Any other land vehicle that is subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged.

However, "auto" does not include "mobile equipment".

3. "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

4. "Coverage territory" means:

a. The United States of America (including its territories and possessions), Puerto Rico and Canada;

b. International waters or airspace, but only if the injury or damage occurs in the course of travel or transportation between any places included in Paragraph a. above; or

c. All other parts of the world if the injury or damage arises out of:

(1) Goods or products made or sold by you in the territory described in Paragraph a. above;

(2) The activities of a person whose home is in the territory described in Paragraph a. above, but is away for a short time on your business; or

(3) "Personal and advertising injury" offenses that take place through the Internet or similar electronic means of communication;

provided the insured's responsibility to pay damages is determined in a "suit" on the merits, in the territory described in Paragraph a. above or in a settlement we agree to.

5. "Employee" includes a "leased worker". "Employee" does not include a "temporary worker".

6. "Executive officer" means a person holding any of the officer positions created by your charter, constitution, bylaws or any other similar governing document.

7. "Hostile fire" means one which becomes uncontrollable or breaks out from where it was intended to be.

8. "Impaired property" means tangible property, other than "your product" or "your work", that cannot be used or is less useful because:

a. It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or

b. You have failed to fulfill the terms of a contract or agreement;

if such property can be restored to use by the repair, replacement, adjustment or removal of "your product" or "your work" or your fulfilling the terms of the contract or agreement.

ELECTRONICALLY FILED
6/25/2018 3:15 PM
2018-CH-07976
PAGE 35 of 83

ELECTRONICALLY FILED
6/25/2018 3:15 PM
2018-CH-07976
PAGE 36 of 83

**9.** "Insured contract" means:

**a.** A contract for a lease of premises. However, that portion of the contract for a lease of premises that indemnifies any person or organization for damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner is not an "insured contract";

**b.** A sidetrack agreement;

**c.** Any easement or license agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;

**d.** An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

**e.** An elevator maintenance agreement;

**f.** That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

Paragraph **f.** does not include that part of any contract or agreement:

**(1)** That indemnifies a railroad for "bodily injury" or "property damage" arising out of construction or demolition operations, within 50 feet of any railroad property and affecting any railroad bridge or trestle, tracks, road-beds, tunnel, underpass or crossing;

**(2)** That indemnifies an architect, engineer or surveyor for injury or damage arising out of:

**(a)** Preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; or

**(b)** Giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage; or

**(3)** Under which the insured, if an architect, engineer or surveyor, assumes liability for an injury or damage arising out of the insured's rendering or failure to render professional services, including those listed in **(2)** above and supervisory, inspection, architectural or engineering activities.

**10.** "Leased worker" means a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm, to perform duties related to the conduct of your business. "Leased worker" does not include a "temporary worker".

**11.** "Loading or unloading" means the handling of property:

**a.** After it is moved from the place where it is accepted for movement into or onto an aircraft, watercraft or "auto";

**b.** While it is in or on an aircraft, watercraft or "auto"; or

**c.** While it is being moved from an aircraft, watercraft or "auto" to the place where it is finally delivered;

but "loading or unloading" does not include the movement of property by means of a mechanical device, other than a hand truck, that is not attached to the aircraft, watercraft or "auto".

**12.** "Mobile equipment" means any of the following types of land vehicles, including any attached machinery or equipment:

**a.** Bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;

**b.** Vehicles maintained for use solely on or next to premises you own or rent;

**c.** Vehicles that travel on crawler treads;

**d.** Vehicles, whether self-propelled or not, maintained primarily to provide mobility to permanently mounted:

**(1)** Power cranes, shovels, loaders, diggers or drills; or

**(2)** Road construction or resurfacing equipment such as graders, scrapers or rollers;

**e.** Vehicles not described in Paragraph **a., b., c.** or **d.** above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

**(1)** Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment; or

**(2)** Cherry pickers and similar devices used to raise or lower workers;

**f.** Vehicles not described in Paragraph **a., b., c.** or **d.** above maintained primarily for purposes other than the transportation of persons or cargo.

© Insurance Services Office, Inc.,2012

ELECTRONICALLY FILED
6/25/2018 3:15 PM
2018-CH-07976
PAGE 37 of 83

However, self-propelled vehicles with the following types of permanently attached equipment are not "mobile equipment" but will be considered "autos":

(1) Equipment designed primarily for:

(a) Snow removal;

(b) Road maintenance, but not construction or resurfacing; or

(c) Street cleaning;

(2) Cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and

(3) Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment.

However, "mobile equipment" does not include any land vehicles that are subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged. Land vehicles subject to a compulsory or financial responsibility law or other motor vehicle insurance law are considered "autos".

13. "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

14. "Personal and advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses:

a. False arrest, detention or imprisonment;

b. Malicious prosecution;

c. The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

d. Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

e. Oral or written publication, in any manner, of material that violates a person's right of privacy;

f. The use of another's advertising idea in your "advertisement"; or

g. Infringing upon another's copyright, trade dress or slogan in your "advertisement".

15. "Pollutants" mean any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

16. "Products-completed operations hazard":

a. Includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:

(1) Products that are still in your physical possession; or

(2) Work that has not yet been completed or abandoned. However, "your work" will be deemed completed at the earliest of the following times:

(a) When all of the work called for in your contract has been completed.

(b) When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site.

(c) When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

b. Does not include "bodily injury" or "property damage" arising out of:

(1) The transportation of property, unless the injury or damage arises out of a condition in or on a vehicle not owned or operated by you, and that condition was created by the "loading or unloading" of that vehicle by any insured;

(2) The existence of tools, uninstalled equipment or abandoned or unused materials; or

(3) Products or operations for which the classification, listed in the Declarations or in a policy Schedule, states that products-completed operations are subject to the General Aggregate Limit.

17. "Property damage" means:

a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

b. Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

For the purposes of this insurance, electronic data is not tangible property.

As used in this definition, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMs, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

18. "Suit" means a civil proceeding in which damages because of "bodily injury", "property damage" or "personal and advertising injury" to which this insurance applies are alleged. "Suit" includes:

   a. An arbitration proceeding in which such damages are claimed and to which the insured must submit or does submit with our consent; or

   b. Any other alternative dispute resolution proceeding in which such damages are claimed and to which the insured submits with our consent.

19. "Temporary worker" means a person who is furnished to you to substitute for a permanent "employee" on leave or to meet seasonal or short-term workload conditions.

20. "Volunteer worker" means a person who is not your "employee", and who donates his or her work and acts at the direction of and within the scope of duties determined by you, and is not paid a fee, salary or other compensation by you or anyone else for their work performed for you.

21. "Your product":

   a. Means:

      (1) Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

         (a) You;

         (b) Others trading under your name; or

         (c) A person or organization whose business or assets you have acquired; and

      (2) Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

   b. Includes:

      (1) Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product"; and

      (2) The providing of or failure to provide warnings or instructions.

   c. Does not include vending machines or other property rented to or located for the use of others but not sold.

22. "Your work":

   a. Means:

      (1) Work or operations performed by you or on your behalf; and

      (2) Materials, parts or equipment furnished in connection with such work or operations.

   b. Includes:

      (1) Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work"; and

      (2) The providing of or failure to provide warnings or instructions.

ELECTRONICALLY FILED
6/25/2018 3:15 PM
2018-CH-07976
PAGE 38 of 83

© Insurance Services Office, Inc.,2012  **CG 00 01 04 13**

**COMMERCIAL GENERAL LIABILITY**

### THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# EXCLUSION – INTERCOMPANY PRODUCTS SUITS

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

This insurance does not apply to any claim for damages by any Named Insured against another Named Insured because of "bodily injury" or "property damage" arising out of "your products" and included within the "products-completed operations hazard."

ELECTRONICALLY FILED
6/25/2018 3:15 PM
2018-CH-07976
PAGE 39 of 83

Copyright, Insurance Services Office, Inc.,  1984                **Page 1 of 1**   □

<div align="right">

**COMMERCIAL GENERAL LIABILITY**
**CG 21 47 12 07**

</div>

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EMPLOYMENT-RELATED PRACTICES EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

ELECTRONICALLY FILED
6/25/2018 3:15 PM
2018-CH-07976
PAGE 40 of 83

**A.** The following exclusion is added to Paragraph 2., Exclusions of Section I – Coverage A – Bodily Injury And Property Damage Liability:

This insurance does not apply to:

"Bodily injury" to:

**(1)** A person arising out of any:

    **(a)** Refusal to employ that person;

    **(b)** Termination of that person's employment; or

    **(c)** Employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation, discrimination or malicious prosecution directed at that person; or

**(2)** The spouse, child, parent, brother or sister of that person as a consequence of "bodily injury" to that person at whom any of the employment-related practices described in Paragraphs (a), (b), or (c) above is directed.

This exclusion applies:

**(1)** Whether the injury-causing event described in Paragraphs (a), (b) or (c) above occurs before employment, during employment or after employment of that person;

**(2)** Whether the insured may be liable as an employer or in any other capacity; and

**(3)** To any obligation to share damages with or repay someone else who must pay damages because of the injury.

**B.** The following exclusion is added to Paragraph 2., Exclusions of Section I – Coverage B – Personal And Advertising Injury Liability:

This insurance does not apply to:

"Personal and advertising injury" to:

**(1)** A person arising out of any:

    **(a)** Refusal to employ that person;

    **(b)** Termination of that person's employment; or

    **(c)** Employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation, discrimination or malicious prosecution directed at that person; or

**(2)** The spouse, child, parent, brother or sister of that person as a consequence of "personal and advertising injury" to that person at whom any of the employment-related practices described in Paragraphs (a), (b), or (c) above is directed.

This exclusion applies:

**(1)** Whether the injury-causing event described in Paragraphs (a), (b) or (c) above occurs before employment, during employment or after employment of that person;

**(2)** Whether the insured may be liable as an employer or in any other capacity; and

**(3)** To any obligation to share damages with or repay someone else who must pay damages because of the injury.

**COMMERCIAL GENERAL LIABILITY**
**CG 21 60 09 98**

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# EXCLUSION – YEAR 2000 COMPUTER-RELATED AND OTHER ELECTRONIC PROBLEMS

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

The following exclusion is added to Paragraph **2.**, **Exclusions of Section I – Coverage A – Bodily Injury And Property Damage Liability** and Paragraph **2.**, **Exclusions of Section I – Coverage B – Personal And Advertising Injury Liability:**

**2. Exclusions**

This insurance does not apply to "bodily injury", "property damage", "personal injury" or "advertising injury" (or "personal and advertising injury" if defined as such in your policy) arising directly or indirectly out of:

**a.** Any actual or alleged failure, malfunction or inadequacy of:

   **(1)** Any of the following, whether belonging to any insured or to others:

   **(a)** Computer hardware, including microprocessors;

   **(b)** Computer application software;

   **(c)** Computer operating systems and related software;

   **(d)** Computer networks;

   **(e)** Microprocessors (computer chips) not part of any computer system; or

   **(f)** Any other computerized or electronic equipment or components; or

   **(2)** Any other products, and any services, data or functions that directly or indirectly use or rely upon, in any manner, any of the items listed in Paragraph **2.a.(1)** of this endorsement

due to the inability to correctly recognize, process, distinguish, interpret or accept the year 2000 and beyond.

**b.** Any advice, consultation, design, evaluation, inspection, installation, maintenance, repair, replacement or supervision provided or done by you or for you to determine, rectify or test for, any potential or actual problems described in Paragraph **2.a.** of this endorsement.

ELECTRONICALLY FILED
6/25/2018 3:15 PM
2018-CH-07976
PAGE 41 of 83

COMMERCIAL GENERAL LIABILITY
CG 21 67 12 04

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# FUNGI OR BACTERIA EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

ELECTRONICALLY FILED
6/25/2018 3:15 PM
2018-CH-07976
PAGE 42 of 83

**A.** The following exclusion is added to Paragraph **2. Exclusions of Section I – Coverage A – Bodily Injury And Property Damage Liability:**

**2. Exclusions**

This insurance does not apply to:

**Fungi Or Bacteria**

**a.** "Bodily injury" or "property damage" which would not have occurred, in whole or in part, but for the actual, alleged or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or presence of, any "fungi" or bacteria on or within a building or structure, including its contents, regardless of whether any other cause, event, material or product contributed concurrently or in any sequence to such injury or damage.

**b.** Any loss, cost or expenses arising out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to, or assessing the effects of, "fungi" or bacteria, by any insured or by any other person or entity.

This exclusion does not apply to any "fungi" or bacteria that are, are on, or are contained in, a good or product intended for bodily consumption.

**B.** The following exclusion is added to Paragraph **2. Exclusions of Section I – Coverage B – Personal And Advertising Injury Liability:**

**2. Exclusions**

This insurance does not apply to:

**Fungi Or Bacteria**

**a.** "Personal and advertising injury" which would not have taken place, in whole or in part, but for the actual, alleged or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or presence of any "fungi" or bacteria on or within a building or structure, including its contents, regardless of whether any other cause, event, material or product contributed concurrently or in any sequence to such injury.

**b.** Any loss, cost or expense arising out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to, or assessing the effects of, "fungi" or bacteria, by any insured or by any other person or entity.

**C.** The following definition is added to the **Definitions** Section:

"Fungi" means any type or form of fungus, including mold or mildew and any mycotoxins, spores, scents or byproducts produced or released by fungi.

© ISO Properties, Inc., 2003

COMMERCIAL GENERAL LIABILITY
CG 21 70 01 08

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# CAP ON LOSSES FROM CERTIFIED ACTS OF TERRORISM

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
RAILROAD PROTECTIVE LIABILITY COVERAGE PART
UNDERGROUND STORAGE TANK POLICY

ELECTRONICALLY FILED
6/25/2018 3:15 PM
2018-CH-07976
PAGE 4 of 83

If aggregate insured losses attributable to terrorist acts certified under the federal Terrorism Risk Insurance Act exceed $100 billion in a Program Year (January 1 through December 31) and we have met our insurer deductible under the Terrorism Risk Insurance Act, we shall not be liable for the payment of any portion of the amount of such losses that exceeds $100 billion, and in such case insured losses up to that amount are subject to pro rata allocation in accordance with procedures established by the Secretary of the Treasury.

"Certified act of terrorism" means an act that is certified by the Secretary of the Treasury, in concurrence with the Secretary of State and the Attorney General of the United States, to be an act of terrorism pursuant to the federal Terrorism Risk Insurance Act. The criteria contained in the Terrorism Risk Insurance Act for a "certified act of terrorism" include the following:

1. The act resulted in insured losses in excess of $5 million in the aggregate, attributable to all types of insurance subject to the Terrorism Risk Insurance Act; and

2. The act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

COMMERCIAL GENERAL LIABILITY
CG 21 86 12 04

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EXCLUSION – EXTERIOR INSULATION
# AND FINISH SYSTEMS

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

ELECTRONICALLY FILED
6/25/2018 3:15 PM
2018-CH-07976
PAGE 44 of 83

A. This insurance does not apply to "bodily injury", "property damage" or "personal and advertising injury" arising out of, caused by, or attributable to, whether in whole or in part, the following:

1. The design, manufacture, construction, fabrication, preparation, distribution and sale, installation, application, maintenance or repair, including remodeling, service, correction or replacement, of any "exterior insulation and finish system" or any part thereof, or any substantially similar system or any part thereof, including the application or use of conditioners, primers, accessories, flashings, coatings, caulking or sealants in connection with such a system; or

2. "Your product" or "your work" with respect to any exterior component, fixture or feature of any structure if an "exterior insulation and finish system", or any substantially similar system, is used on the part of that structure containing that component, fixture or feature.

B. The following definition is added to the **Definitions** Section:

"Exterior insulation and finish system" means a non-load bearing exterior cladding or finish system, and all component parts therein, used on any part of any structure, and consisting of:

1. A rigid or semi-rigid insulation board made of expanded polystyrene and other materials;

2. The adhesive and/or mechanical fasteners used to attach the insulation board to the substrate;

3. A reinforced or unreinforced base coat;

4. A finish coat providing surface texture to which color may be added; and

5. Any flashing, caulking or sealant used with the system for any purpose.

COMMERCIAL GENERAL LIABILITY
CG 21 96 03 05

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# SILICA OR SILICA-RELATED DUST EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

ELECTRONICALLY FILED
6/25/2018 3:15 PM
2018-CH-07976
PAGE 45 of 83

**A.** The following exclusion is added to Paragraph **2., Exclusions** of **Section I – Coverage A – Bodily Injury And Property Damage Liability:**

**2. Exclusions**

This insurance does not apply to:

**Silica Or Silica-Related Dust**

**a.** "Bodily injury" arising, in whole or in part, out of the actual, alleged, threatened or suspected inhalation of, or ingestion of, "silica" or "silica-related dust".

**b.** "Property damage" arising, in whole or in part, out of the actual, alleged, threatened or suspected contact with, exposure to, existence of, or presence of, "silica" or "silica-related dust".

**c.** Any loss, cost or expense arising, in whole or in part, out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to or assessing the effects of, "silica" or "silica-related dust", by any insured or by any other person or entity.

**B.** The following exclusion is added to Paragraph **2., Exclusions** of **Section I – Coverage B – Personal And Advertising Injury Liability:**

**2. Exclusions**

This insurance does not apply to:

**Silica Or Silica-Related Dust**

**a.** "Personal and advertising injury" arising, in whole or in part, out of the actual, alleged, threatened or suspected inhalation of, ingestion of, contact with, exposure to, existence of, or presence of, "silica" or "silica-related dust".

**b.** Any loss, cost or expense arising, in whole or in part, out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to or assessing the effects of, "silica" or "silica-related dust", by any insured or by any other person or entity.

**C.** The following definitions are added to the **Definitions** Section:

**1.** "Silica" means silicon dioxide (occurring in crystalline, amorphous and impure forms), silica particles, silica dust or silica compounds.

**2.** "Silica-related dust" means a mixture or combination of silica and other dust or particles.

CG 21 96 03 05 © ISO Properties, Inc., 2004 Page 1 of 1 □

**COMMERCIAL GENERAL LIABILITY**
CG 22 34 07 98

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EXCLUSION – CONSTRUCTION MANAGEMENT ERRORS AND OMISSIONS

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

The following exclusion is added to Paragraph 2., **Exclusions of Section I – Coverage A – Bodily Injury And Property Damage Liability** and Paragraph 2., **Exclusions of Section I – Coverage B – Personal And Advertising Injury Liability:**

This insurance does not apply to "bodily injury", "property damage" or "personal and advertising injury" arising out of:

1. The preparing, approving, or failure to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications by any architect, engineer or surveyor performing services on a project on which you serve as construction manager; or

2. Inspection, supervision, quality control, architectural or engineering activities done by or for you on a project on which you serve as construction manager.

This exclusion does not apply to "bodily injury" or "property damage" due to construction or demolition work done by you, your "employees" or your subcontractors.

ELECTRONICALLY FILED
6/25/2018 3:15 PM
2018-CH-07976
PAGE 46 of 83

COMMERCIAL GENERAL LIABILITY
CG 22 43 07 98

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EXCLUSION – ENGINEERS, ARCHITECTS OR SURVEYORS PROFESSIONAL LIABILITY

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

The following exclusion is added to Paragraph **2., Exclusions of Section I – Coverage A – Bodily Injury And Property Damage Liability** and Paragraph **2., Exclusions of Section I – Coverage B – Personal And Advertising Injury Liability:**

This insurance does not apply to "bodily injury", "property damage" or "personal and advertising injury" arising out of the rendering of or failure to render any professional services by you or any engineer, architect or surveyor who is either employed by you or performing work on your behalf in such capacity.

Professional services include:

1. The preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; and

2. Supervisory, inspection, architectural or engineering activities.

ELECTRONICALLY FILED
6/25/2018 3:15 PM
2018-CH-07976
PAGE 47 of 83

COMMERCIAL GENERAL LIABILITY
CG 22 79 07 98

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EXCLUSION – CONTRACTORS – PROFESSIONAL LIABILITY

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

The following exclusion is added to Paragraph 2., **Exclusions** of **Section I – Coverage A – Bodily Injury And Property Damage Liability** and Paragraph 2., **Exclusions** of **Section I – Coverage B – Personal And Advertising Injury Liability:**

1. This insurance does not apply to "bodily injury", "property damage" or "personal and advertising injury" arising out of the rendering of or failure to render any professional services by you or on your behalf, but only with respect to either or both of the following operations:

   a. Providing engineering, architectural or surveying services to others in your capacity as an engineer, architect or surveyor; and

   b. Providing, or hiring independent professionals to provide, engineering, architectural or surveying services in connection with construction work you perform.

2. Subject to Paragraph 3. below, professional services include:

   a. Preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders, or drawings and specifications; and

   b. Supervisory or inspection activities performed as part of any related architectural or engineering activities.

3. Professional services do not include services within construction means, methods, techniques, sequences and procedures employed by you in connection with your operations in your capacity as a construction contractor.

ELECTRONICALLY FILED
6/25/2018 3:15 PM
2018-CH-07976
PAGE 48 of 83

POLICY NUMBER: CPP20487910602

COMMERCIAL GENERAL LIABILITY
CG 24 25 12 04

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# LIMITED FUNGI OR BACTERIA COVERAGE

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

### SCHEDULE

| Fungi And Bacteria Liability Aggregate Limit     $ |
|---|

ELECTRONICALLY FILED
6/25/2018 3:15 PM
2018-CH-07976
PAGE 49 of 83

**A.** The following exclusion is added to Paragraph **2. Exclusions of Section I – Coverage B – Personal And Advertising Injury Liability:**

**2. Exclusions**

This insurance does not apply to:

**a.** "Personal and advertising injury" arising out of a "fungi or bacteria incident".

**b.** Any loss, cost or expense arising out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to, or assessing the effects of, "fungi" or bacteria, by any insured or by any other person or entity.

**B.** Coverage provided by this insurance for "bodily injury" or "property damage", arising out of a "fungi or bacteria incident", is subject to the Fungi and Bacteria Liability Aggregate Limit as described in Paragraph **C.** of this endorsement. This provision **B.** does not apply to any "fungi" or bacteria that are, are on, or are contained in, a good or product intended for bodily consumption.

**C.** The following are added to **Section III – Limits Of Insurance:**

**1.** Subject to Paragraphs **2.** and **3.** of Section III – Limits of Insurance, as applicable, the Fungi and Bacteria Liability Aggregate Limit shown in the Schedule of this endorsement is the most we will pay under Coverage **A** for all "bodily injury" or "property damage" and Coverage **C.** for Medical Payments arising out of one or more "fungi or bacteria incidents". This provision **C.1.** does not apply to any "fungi" or bacteria that are, are on, or are contained in, a good or product intended for bodily consumption.

**2.** Paragraphs **5.**, the Each Occurrence Limit, Paragraph **6.**, the Damage To Premises Rented To You Limit, and Paragraph **7.**, the Medical Expense Limit, of Section III – Limits Of Insurance continue to apply to "bodily injury" or "property damage" arising out of a "fungi or bacteria incident" but only if, and to the extent that, limits are available under the Fungi and Bacteria Liability Aggregate Limit.

**D.** The following definitions are added to the **Definitions** Section:

**1.** "Fungi" means any type or form of fungus, including mold or mildew and any mycotoxins, spores, scents or byproducts produced or released by fungi.

**2.** "Fungi or bacteria incident" means an incident which would not have occurred, in whole or in part, but for the actual, alleged or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or presence of, any "fungi" or bacteria on or within a building or structure, including its contents, regardless of whether any other cause, event, material or product contributed concurrently or in any sequence to such injury or damage.

© ISO Properties, Inc., 2003

# MANUFACTURERS/PROCESSORS SPECIFICATIONS EXPENSE COVERAGE ENDORSEMENT

This endorsement modifies the insurance provided under the following:

### COMMERCIAL GENERAL LIABILITY COVERAGE FORM

Various provisions in this endorsement restrict coverage. Read the entire endorsement carefully to determine rights, duties and what is and is not covered.

Throughout this endorsement the words "you" and "your" refer to the Named Insured shown in the Declarations. The words "we," "us" and "our" refer to the Company providing this insurance. The word "insured" means any person or organization qualifying as such under Provision **B. WHO IS AN INSURED** of this endorsement.

Other words and phrases that appear in quotation marks have special meaning. Refer to the **SECTION V - DEFINITIONS of the COMMERCIAL GENERAL LIABILITY COVERAGE FORM** and Provision **E. DEFINITIONS** of this endorsement.

By the addition of this endorsement to your policy, your coverage is extended to provide Manufacturers/Processors Specifications Expense coverage subject to the terms and conditions which follow. This coverage is added to or amends specified **SECTION(S)** of the **COMMERCIAL GENERAL LIABILITY COVERAGE FORM** contained in your policy. All other terms and conditions of the **COMMERCIAL GENERAL LIABILITY COVERAGE FORM** apply to the coverage afforded in this endorsement, except those sections amended specifically in this endorsement. THE COVERAGE, TERMS AND CONDITIONS CONTAINED IN THIS ENDORSEMENT APPLY ONLY TO MANUFACTURERS/PROCESSORS SPECIFICATIONS EXPENSE COVERAGE.

**A.** **SECTION I - COVERAGES** is amended as follows:

    **1.** The following is added to **SECTION I - COVERAGES**:

        **MANUFACTURERS/PROCESSORS SPECIFICATIONS EXPENSE COVERAGE**

        **1.** **Insuring Agreement.**

           **a.** We will indemnify you for expenses you incur to repair or replace "your products" which have been found to be "defective goods or products" because of an error or omission committed by you to which this insurance applies.

                We may at our discretion investigate any error or omission to which this insurance applies. However:

                **(1)** The amount we will pay as reimbursement for your expenses is limited as described under Provision **C. SECTION III - LIMITS OF INSURANCE AND DEDUCTIBLE** of this endorsement.

                **(2)** No other obligation to pay sums or perform acts or services is covered.

           **b.** This insurance applies as stated in a. above, but only if the expenses are incurred:

                **(1)** Within the "coverage territory"; and

                *(2)* During the policy period.

        **2.** **Exclusions.**

           The insurance afforded by the endorsement does not apply to:

           **a.** "Bodily injury" or "property damage";

           **b.** Injury to, destruction or loss of any property, except "defective goods or products", manufactured or processed by any insured;

           **c.** Expenses exceeding your cost to repair or replace any "defective goods or products";

Includes copyrighted material of Insurance Services Office, Inc., with its permission.
Copyright Insurance Services Office, Inc., 2004

ELECTRONICALLY FILED
6/25/2018 3:15 PM
2018-CH-07976
PAGE 50 of 83

ELECTRONICALLY FILED
6/25/2018 3:15 PM
2018-CH-07976
PAGE 51 of 83

**d.** Expenses arising out of any specifications not provided by your customer or any defect, deficiency or mistake in such specifications;

**e.** Expenses arising out of any oral specifications provided by your customer or any defect, deficiency or mistake in such specifications;

**f.** Loss of profits;

**g.** Any costs, expenses and damages for withdrawal or recall of "your products";

**h.** Liability assumed by an insured under any contract or agreement; this exclusion does not apply to a warranty of fitness or quality of "your products";

**i.** Any dishonest, fraudulent, criminal, or malicious error or omission of any insured or any person or organization, manufacturing or processing "your products" for you;

**j.** Fines or penalties;

**k.** Any expenses that occur prior to the Effective Date of this endorsement or after the Expiration Date stated on the Declarations page;

**l.** Any liability incurred or assumed by the insured arising directly or indirectly, caused by, or contributed to, or arising from:

   **(1)** Ionizing radiation or contamination by radioactivity from any nuclear fuel or from any nuclear waste from the combustion of nuclear fuel;

   **(2)** The radioactive, toxic, explosive, or other hazardous properties of any explosive nuclear assembly or nuclear component thereof or;

   **(3)** The furnishing by any insured of service, materials, parts, or equipment in connection with the planning, construction, maintenance, or use of any nuclear facility including any nuclear reactor or device designed or used for:

      **(a)** Separating the isotopes of uranium or plutonium;

      **(b)** Processing or utilizing spent fuel; or

      **(c)** Handling, processing, or packaging nuclear waste.

**m.** Pollution. This includes:

   **(1)** Any loss, cost or expense arising out of:

      **(a)** Any actual, alleged, or threatened emission, discharge, dispersal, seepage, migration, release, or escape of "pollutants" at any time; or

      **(b)** Any request, demand, or order that you or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "pollutants"; or

      **(c)** Any clean up of "pollutants"; or

      **(d)** Any claim, "suit" by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to or assessing the effects of "pollutants."

   **(2)** The investigation, settlement, or defense of any claim, "suit", proceeding, damages, loss, cost, or expense excluded in (1) above or alleging or in any way involving (1) above.

   As used in this endorsement, clean up includes monitoring, removal, containment, treatment, detoxification, or neutralization of, testing for, or response in any way to, or assessment of the effects of "pollutants".

**n.** Defense costs, legal expenses, attorney's fees, arbitration costs, costs or expenses arising out of alternative dispute resolution or other court costs.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.
Copyright Insurance Services Office, Inc., 2004

CG 70 14 05 08

   **2. SUPPLEMENTARY PAYMENTS - COVERAGES A AND B** (Section I) is deleted.

**B. SECTION II - WHO IS AN INSURED** is deleted and replaced with the following:

  **SECTION II - WHO IS AN INSURED**

  **1.** If you are designated in the Declarations as:

    **a.** An individual, you and your spouse are insureds, but only with respect to the conduct of a business of which you are the sole owner.

    **b.** A partnership or joint venture, you are an insured. Your members, your partners, and their spouses are also insureds but only with respect to the conduct of your business.

    **c.** A limited liability company, you are an insured. Your members are also insured, but only with respect to the conduct of your business. Your managers are insureds, but only with respect to their duties as your managers.

    **d.** An organization other than a partnership, joint venture or limited liability company, you are an insured. Your executive officers and directors are insureds, but only with respect to their duties as your officers or directors. Your stockholders are also insureds, but only with respect to their liability as stockholders.

    **e.** A trust, you are an insured. Your trustees are also insureds, but only with respect to their duties.

  **2.** Your legal representative is an insured if you die, but only with respect to duties as such. That representative will have all your rights and duties under this endorsement.

  **3.** Any organization you newly acquire or form, other than a partnership, joint venture or limited liability company, and over which you maintain ownership or majority interest, will qualify as a Named Insured if there is no other similar insurance available to that organization. However, coverage under this provision is afforded only until the 90th day after you acquire or form the organization or the end of the policy period, whichever is earlier.

**SECTION III - LIMITS OF INSURANCE** is deleted and replaced with the following:

**SECTION III - LIMITS OF INSURANCE AND DEDUCTIBLE**

  **1.** The Limits of Insurance shown in the Supplemental Coverage Schedule and the rules below fix the most we will pay regardless of the number of:

    **a.** Insureds;

    **b.** Claims made; or

    **c.** Persons or organizations making claims.

  **2.** The Aggregate Limit is the most we will pay for the sum of all expenses payable under this coverage.

  **3.** We will only pay expenses in excess of the deductible amount stated in the Supplemental Coverage Schedule. Such deductible will apply separately to all claims for the same goods or products ("your products").

    Separate shipments of the same goods or products ("your products") to the same customer will be subject to a single deductible.

  **4.** If we have paid any amounts as a result of this coverage in settlement or satisfaction of claims or judgments in excess of the Limit of Insurance, or within the amount of the deductible, you will be liable to us for any and all such amounts and, upon demand, will pay such amounts to us. We will not make any payment in excess of the Limit of Insurance without your consent.

The limit afforded under this endorsement, as stated in the Supplemental Coverage Schedule, applies separately to each consecutive annual period, and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations Page unless the policy period is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limit of Insurance.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.
Copyright Insurance Services Office, Inc., 2004

ELECTRONICALLY FILED
6/25/2018 3:15 PM
2018-CH-07976
PAGE 6 of 83

**D. SECTION IV - CONDITIONS** is amended as follows:

1. Condition **2. Duties In the Event of Occurrence, Offense, Claim or Suit** is deleted and replaced by the following:

   **2. Duties In the Event of an Error, Omission, or Claim.**

      **a.** You must see to it that we are given notice as soon as practicable of an error or omission which may result in a claim. To the extent possible, notice should include:

         **(1)** How, when and where the error or omission took place;

         **(2)** The names and addresses of any witnesses.

      **b.** If a claim is made against any insured, you must see to it that we receive written notice of the claim as soon as practicable.

      **c.** You and any other involved insured must:

         **(1)** Immediately send us copies of any demands or notices received in connection with the claim;

         **(2)** Authorize us to obtain records and other information;

         **(3)** Cooperate with us in the investigation of the claim; and

         **(4)** Assist us, upon our request, in the enforcement of any rights against any person or organization which may be liable to you for expenses you incurred to which this insurance may also apply.

2. Condition **4. Other Insurance** is deleted and replaced by the following:

   **4. Other Insurance.**

      This insurance is excess over any other insurance whether primary, excess, contingent or on any other basis.

**SECTION V - DEFINITIONS** is amended as follows:

1. The following definitions are added:

   "Defective Goods or Products" mean goods or products which do not meet the "written specifications" provided by your customer as to quality, type or grade of such goods or products.

   "Written Specifications" mean advance written specifications provided by your customer as to quality, type or grade of goods or products purchased from you.

2. The following **SECTION V - DEFINITIONS** are deleted and replaced with the definitions contained in this endorsement:

   **4.** "Coverage Territory" means:

      **a.** The United States of America (including its territories and possessions);

      **b.** Puerto Rico; and

      **c.** Canada.

   **18.** "Suit" means a civil proceeding in which expenses to which this insurance applies are alleged. "Suit" includes:

      **a.** An arbitration proceeding in which such expenses are claimed and to which you must submit or do submit with our consent; or

      **b.** Any other alternative dispute resolution proceeding in which such expenses are claimed and to which you submit with our consent.

ELECTRONICALLY FILED
6/25/2018 3:15 PM
2018-CH-07976
PAGE 53 of 83

Includes copyrighted material of Insurance Services Office, Inc., with its permission.
Copyright Insurance Services Office, Inc., 2004

CG 70 14 05 08

# PRODUCT RECALL COVERAGE ENDORSEMENT

This endorsement modifies the coverage provided in the following forms:

### COMMERCIAL GENERAL LIABILITY COVERAGE FORM

Various provisions in this endorsement restrict coverage. Read the entire endorsement carefully to determine rights, duties and what is not covered.

Throughout this endorsement the words "you" and "your" refer to the Named Insured shown in the Declarations. The words "we," "us" and "our" refer to the Company providing this insurance. The word "insured" means any person or organization qualifying as such under Provision **B.** of this endorsement.

Other words and phrases that appear in quotation marks have special meaning. Refer to **SECTION V - DEFINITIONS** of the **COMMERCIAL GENERAL LIABILITY COVERAGE FORM** and Provision **E. DEFINITIONS** of this endorsement.

By the addition of this endorsement to your policy, your coverage is extended to provide Product Recall Coverage subject to the terms and conditions that follow. This coverage is added to or amends specified **SECTION(S)** of the **COMMERCIAL GENERAL LIABILITY COVERAGE FORM** contained in your policy. All other terms and conditions of the **COMMERCIAL GENERAL LIABILITY COVERAGE FORM** apply to the coverage afforded in this endorsement except those sections amended specifically in this endorsement. THE COVERAGE, TERMS AND CONDITIONS CONTAINED IN THIS ENDORSEMENT APPLY ONLY TO PRODUCT RECALL COVERAGE.

ELECTRONICALLY FILED
6/25/2018 3:15 PM
2018-CH-07976
PAGE 54 of 83

**A.** **SECTION I - COVERAGES** is amended as follows:

    **1.** The following is added to **SECTION I - COVERAGES:**

    **PRODUCT RECALL COVERAGE**

        **1.** **Insuring Agreement.**

        We will indemnify you for your "Product Recall expenses" and will pay on your behalf those sums you become legally obligated to pay for similar and related "Product Recall expenses" of others.

        Such recall or withdrawal must be deemed necessary by you, a manufacturer of products of which "your product" is a component part, or a governmental body due to a determination which reveals that use of "your product" has caused or is reasonably expected to cause "bodily injury" or "property damage" arising out of a known or suspected defect or deficiency in "your product".

        This insurance applies only to "Product Recall expenses" incurred during the policy period and which take place within the "coverage territory".

        We may elect to defend you against suits arising from claims by others seeking "Product Recall expense" reimbursement. We will do this at our expense.

        We also agree to indemnify you for additional "Product Recall expenses" incurred for recall or withdrawal, which occur within ninety days after the end of the policy period. The amount we will pay as reimbursement for all your "Product Recall expenses" is limited as described in Provision **C. LIMITS OF INSURANCE AND DEDUCTIBLE** as stated in this endorsement.

        **2.** **Exclusions.**

        The insurance provided in this endorsement does not apply to "Product Recall expenses" resulting from:

        **a.** The failure of "your products" to accomplish their intended purpose, including any breach of warranty of fitness, whether written or implied. This exclusion does not apply if such failure has caused or is reasonably expected to cause "bodily injury" or physical damage to tangible property.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.
Copyright Insurance Services Office, Inc., 2007

ELECTRONICALLY FILED
6/25/2018 3:15 PM
2018-CH-07976
PAGE 55 of 83

    **b.** Loss of revenue, profits, goodwill or market share or any effort to regain them, but we will cover costs incurred to regain customer approval for the lesser of the amount of such expenses or $2,500.

    **c.** Caprice or whim of the insured.

    **d.** Patent, trade secret or trademark infringements.

    **e.** Redistribution, repair, redesign, decontamination or treatment of "your products" which have been recalled or replacement of the withdrawn products with like products or substitutes.

    **f.** Withdrawal of "your products" because they are kindred products or products with similar trade or brand names which are not part of the defective or deficient batch giving rise to a potential "loss" under this endorsement.

    **g.** Any "loss", cost or expense arising out of any testing for, monitoring of, cleaning up, removing, containing, treating, detoxifying, or neutralizing or in any way responding to or assessing the effects of "pollutants".

    **h.** "Loss" due to chemical change, decomposition, or deterioration not a result of tampering or an error or omission in the manufacturing, design, processing, or transportation of "your product".

    **i.** Expenses paid to or on behalf of others who provided inaccurate, inadequate, or faulty plans, specifications, or formulas resulting in a recall or withdrawal of "your product".

    **j.** "Loss" occurring due to a preexisting condition, if you had knowledge of a preexisting condition prior to the effective date of this endorsement or prior to the time "your product" left your control or possession. However, if this policy is a renewal of a similar product recall coverage afforded by us during a period when you first had knowledge of any condition possibly or likely to cause a "loss", such prior knowledge shall not be the basis of excluding coverage under this policy, provided no payment is made for expenses for the preexisting condition under any previous coverage and provided such knowledge occurred after "your product" left your control or possession. We will not indemnify you for "Product Recall expenses" exceeding the amount of the Product Recall Coverage afforded by us when the preexisting condition first became known to you.

    **k.** "Loss" due to nuclear reaction, nuclear radiation or radioactive contamination.

    **l.** "Loss" due to the use of materials banned or declared unsafe by any authorized governmental entity before its use in "your product" began or prior to the effective date of this endorsement.

    **m.** Any "loss", cost or damages arising from the imposition of any fines or penalties related to the sale, use or existence of "your product" or product of which "your product" is a component part.

    **n.** Expiration of the designated shelf life of "your product".

    **o.** Recall of any specific products for which "bodily injury" or "property damage" is excluded under Coverage A - Bodily Injury and Property Damage Liability by endorsement.

**B.** SECTION II - WHO IS AN INSURED is deleted and replaced with the following:

**SECTION II - WHO IS AN INSURED**

**1.** If you are designated in the Declarations as:

    **a.** An individual, you and your spouse are insureds, but only with respect to the conduct of a business of which you are the sole owner.

    **b.** A partnership or joint venture, you are an insured. Your members, your partners, and their spouses are also insureds, but only with respect to the conduct of your business.

    **c.** A limited liability company, you are an insured. Your members are also insureds, but only with respect to the conduct of your business. Your managers are insureds, but only with respect to their duties as your managers.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.
Copyright Insurance Services Office, Inc., 2007

          CG 70 15 05 08

ELECTRONICALLY FILED
6/25/2018 3:15 PM
2018-CH-07976
PAGE 56 of 83

       **d.**  An organization other than a partnership, joint venture or limited liability company, you are an insured. Your executive officers and directors are insureds, but only with respect to their duties as your officers or directors. Your stockholders are also insureds, but only with respect to their liability as stockholders.

       **e.**  A trust, you are an insured. Your trustees are also insureds, but only with respect to their duties as trustees.

   **2.**  Your legal representative if you die is an insured, but only with respect to duties as such. That representative will have all your rights and duties under this endorsement.

   **3.**  Any organization you newly acquire or form, other than a partnership, joint venture or limited liability company, and over which you maintain ownership or majority interest, will qualify as a Named Insured if there is no other similar insurance available to that organization. However, coverage under this provision is afforded only until the end of the policy period.

**C.**  **SECTION III - LIMITS OF INSURANCE** is deleted and replaced with the following:

  **SECTION III - LIMITS OF INSURANCE AND DEDUCTIBLE**

   **1.**  The Limits of Insurance shown in the Supplemental Coverage Schedule and the rules below fix the most we will pay regardless of the number of:

       **a.**  Insureds;

       **b.**  Claims made or "suits" brought; or

       **c.**  Persons or organizations making claims or bringing "suits".

   **2.**  The Aggregate Limit is the most we will pay for "Product Recall expenses" incurred for all "losses" during each consecutive annual period starting with the beginning of the policy period.

   **3.**  We shall only pay "Product Recall expenses" in excess of the deductible amount stated in the Supplemental Coverage Schedule. Such deductible shall apply separately to all "Product Recall expenses" involved in a single recall or withdrawal.

   **4.**  If we have paid any amounts as a result of this coverage in excess of the Limit of Insurance, or within the amount of the deductible, you will be liable to us for any and all such amounts and, upon demand, will pay such amounts to us.

The Limits of Insurance of this endorsement apply separately to each consecutive annual period, and to any remaining period of less than 12 months, starting with the beginning of the policy period, unless the policy period is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits of Insurance.

**D.**  **SECTION IV - CONDITIONS** is amended by the following provisions:

   **1.**  Condition 2. **Duties in the Event of Occurrence, Offense, Claim Or Suit** is deleted and replaced with the following:

   **2.**  **Duties in the Event of Loss.**

      You must see that the following are done in the event of a "loss":

       **a.**  We are notified as soon as practicable of any actual, suspected or threatened defect in "your products", or of any governmental investigation that may result in a product recall. To the extent possible, notice should include:

         **(1)**  How, when and where the "defect" was discovered;

         **(2)**  The names and addresses of any injured persons and witnesses; and

         **(3)**  The nature, location and circumstances of any injury or damage arising out of use or consumption of "your product".

Includes copyrighted material of Insurance Services Office, Inc., with its permission.
Copyright Insurance Services Office, Inc., 2007

    **b.** If a product recall is initiated, you must:

        **(1)** Immediately record the specifics of the product recall and the date it was initiated; and

        **(2)** Notify us in writing of the product recall as soon as practicable.

    **c.** You and any other involved insured must:

        **(1)** Permit us to inspect the property and records proving the "loss". Also permit us to take samples of the damaged property for inspection, testing and analysis;

        **(2)** If requested, permit us to question you under oath at such times as may be reasonably required about any matter relating to this insurance and your claim, including your books and records. In such event, your answers must be signed and sworn to;

        **(3)** Send us a signed, sworn statement of "loss" containing the information we request to investigate the claim. You must do this within 60 days after our request. We will supply you with the necessary forms;

        **(4)** Cooperate with us in the investigation or settlement of the claim; and

        **(5)** Resume all or part of your operations as quickly as possible.

**2.** Condition **4. Other Insurance** is deleted and replaced by the following:

    **4. Other Insurance.**

    This insurance is excess over any other insurance whether primary, excess, contingent or on any other basis.

ELECTRONICALLY FILED
6/25/2018 3:15 PM
2018-CH-07976
PAGE 57 of 83

**3.** Condition **8. Transfer of Rights of Recovery Against Others To Us** is deleted and replaced by the following:

    **8. Transfer of Rights of Recovery Against Others to Us.**

    If you have rights to recover all or part of any payment we have made under this endorsement, these rights are transferred to us. You must do nothing after "loss" to impair them. At our request, you will bring "suit" or transfer those rights to us and help us enforce them.

**4.** The following conditions are added to **SECTION IV - COMMERCIAL GENERAL LIABILITY CONDITIONS:**

    **Control of Property.**

    Any act of neglect of any person other than you beyond your direction or control will not affect this insurance.

    **Insurance Under Two or More Coverages.**

    If two or more of this policy's coverages apply to the same "loss", we will not pay more than the actual amount of the "loss".

    **No Benefit to Bailee.**

    No person or organization, other than you, having custody of "your product" will benefit from this insurance.

    **Loss Payment.**

    We will pay for covered "loss" within 30 days after we receive the sworn statement of "loss", if:

    **a.** You have complied with all of the terms of this endorsement; and

    **b.** **(1)** We have reached agreement with you on the amount of "loss"; or

        **(2)** An appraisal award has been made.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.
Copyright Insurance Services Office, Inc., 2007

                                              **CG 70 15 05 08**

**Concealment, Misrepresentation or Fraud.**

This endorsement is void in any case of fraud by you as it relates to this endorsement at any time. It is also void if you or any other insured, at any time, intentionally conceal or misrepresent a material fact concerning this endorsement, covered "Product Recall expenses", "your product" or a claim under this endorsement.

E.   **SECTION V - DEFINITIONS** is amended by the following provisions:

1.   The following definitions are added:

   a.   "Each loss" means all "Product Recall expenses" incurred in a single incident or event which necessitates the recall or withdrawal of "your product" from the marketplace (including wholesalers, retailers or customers) due to a known or suspected defect or deficiency.

   b.   "Product Recall expenses" means only reasonable and necessary extra costs, which result from or are related to the recall or withdrawal of "your product" for:

      (1)   Telephone and telegraphic communication, radio or television announcements, computer time and newspaper advertising;

      (2)   Stationery, envelopes, production of announcements and postage or facsimiles;

      (3)   Remuneration paid to regular employees for necessary overtime or authorized travel expense;

      (4)   Temporary hiring by you or by agents designated by you of persons, other than your regular employees, to perform necessary tasks;

      (5)   Rental of necessary additional warehouse or storage space;

      (6)   Packaging of or transportation or shipping of defective products to the location you designate; and

      (7)   Disposal of "your products" which cannot be reused. Disposal expenses do not include:

         (a)   Expenses which exceed the original cost of the materials incurred to manufacture or process such product; and

         (b)   Expenses, which exceed the cost of normal trash discarding or disposal, except as are necessary to avoid "bodily injury" or "property damage".

   c.   "Loss" means the "Product Recall expenses" incurred in the recall or withdrawal of "your product" or a product of which "your product" is a component part from the marketplace (including wholesalers, retailers or customers) due to a known or suspected defect or deficiency. The known or suspected defect must arise from:

      (1)   The accidental omission of a part or substance in the manufacture of "your product";

      (2)   The accidental introduction or substitution of a part or a substance in the manufacture of "your product";

      (3)   Accidental error in the manufacture, blending, mixing, compounding, labeling or storage of "your product";

      (4)   Improper, inadequate, or faulty designs, formulas or specifications of "your product";

      (5)   Intentional tampering, damaging, or poisoning of "your product" including batches of such a product which are not known to be or suspected of having been tampered with; or

      (6)   Extortion, meaning actual or threatened sabotage, intentional damage, or poisoning of "your product" for the purpose of securing money.

      Items (5) and (6) above, apply only to expenses listed in Item 1. of the definition of "Product Recall expenses".

ELECTRONICALLY FILED
6/25/2018 3:15 PM
2018-CH-07976
PAGE 58 of 83

Includes copyrighted material of Insurance Services Office, Inc., with its permission.
Copyright Insurance Services Office, Inc., 2007

2.  The following **SECTION V - DEFINITIONS** are deleted and replaced with the wording contained in this endorsement:

    4.  "Coverage territory" means:

        a.  The United States of America (including its territories and possessions), Puerto Rico and Canada; or

        b.  All parts of the world if:

            (1)  The "Product Recall expenses" arise out of "your products" made or sold within the territory described in **4. a.** above; and

            (2)  The insured's responsibility to pay damages is determined in a "suit" on the merits, in the territory described in **4.a.** above or in settlement we agree to.

    17.  "Property damage" means:

        a.  Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

        b.  Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the recall or withdrawal of "your product".

    21.  "Your product" means:

        a.  Any goods or products, other than real property, manufactured, processed, sold, handled, distributed, or disposed of by:

            (1)  You;

            (2)  Others trading under your name; or

            (3)  A person or organization whose business or assets you have acquired; and

        b.  Containers (other than vehicles), materials, parts or equipment furnished in connection with a. above.

        c.  Any goods or products manufactured by others of which "your product" is a component part.

        "Your product" does not include:

        a.  Vending machines or other property rented to or located for use of others, but not sold; or

        b.  Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your products".

        c.  Products still in your physical possession when the recall is declared.

ELECTRONICALLY FILED
6/25/2018 3:15 PM
2018-CH-07976
PAGE 59 of 83

Includes copyrighted material of Insurance Services Office, Inc., with its permission.
Copyright Insurance Services Office, Inc., 2007

CG 70 15 05 08

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# ASBESTOS EXCLUSION ENDORSEMENT

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART

All of the terms, provisions, exclusions, and limitations of the coverage form apply except as specifically stated below.

This insurance does not apply to:

**ASBESTOS**

"Bodily Injury" or "Personal and Advertising injury" or "Property Damage" arising out of:

(1) The removal, replacement, repair, enclosure or encapsulation of asbestos from any building or structure;

(2) The use, manufacture, transportation, removal, storage or disposal of asbestos or any substance, goods, products or structures containing asbestos; or

(3) The inhalation, ingestion or absorption of asbestos by any person, including any prolonged or repeated exposure to asbestos.

ELECTRONICALLY FILED
6/25/2018 3:15 PM
2018-CH-07976
PAGE 60 of 83

Includes copyrighted material of Insurance Services Office, Inc., with its permission.
Copyright Insurance Services Office, Inc., 2002

CG 70 42 04 03

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# ADVANTAGE GENERAL LIABILITY EXTENSION ENDORSEMENT

This endorsement modifies insurance provided under the following:

**COMMERCIAL GENERAL LIABILITY COVERAGE FORM**

Under **SECTION I - COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY**, paragraph **2. EXCLUSIONS**, provisions **1.** through **6.** of this endorsement amend the policy as follows:

1. **LIQUOR LIABILITY**

   Exclusion **c. Liquor Liability** is deleted.

2. **AMENDED FELLOW EMPLOYEE EXCLUSION**

   A. The following is added to Paragraph **2.a.(1)** of **Section II – Who Is An Insured**:

   Paragraphs **(a)**, **(b)** and **(c)** above do not apply to your "employees" that are:

   (i)   Managers;
   (ii)  Supervisors;
   (iii) Directors; or
   (iv)  Officers;

   with respect to "bodily injury" to a "co-employee".

   B. This Amended Fellow Employee Exclusion coverage is excess over any other valid and collectible insurance.

   **NONOWNED WATERCRAFT AND NONOWNED AIRCRAFT (HIRED, RENTED OR LOANED WITH PAID CREW)**

   Exclusion **g. Aircraft, Auto or Watercraft**, paragraph **(2)** is deleted and replaced with the following:

   (2) A watercraft you do not own that is:

   (a) Less than 51 feet long; and

   (b) Not being used to carry persons or property for a charge;

   Exclusion **g. Aircraft, Auto or Watercraft**, paragraph **(6)** is added as follows:

   (6) An aircraft that you do not own that is:

   (a) Hired;

   (b) Rented; or

   (c) Loaned to you;

   with paid crew for a period of five (5) consecutive days or less.

   Paragraph **(6)** does not apply if the insured has any other insurance for "bodily injury or "property damage" liability for such aircraft, whether such other insurance is primary, excess, contingent or on any other basis.

4. **PREMISES ALIENATED**

   A. Exclusion **j. Damage to Property**, paragraph **(2)** is deleted.

   B. The following paragraph is also deleted from Exclusion **j. Damage to Property**:

   Paragraph **(2)** of this exclusion does not apply if the premises are "your work" and were never occupied, rented or held for rental by you.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.
Copyright Insurance Services Office, Inc., 2004

ELECTRONICALLY FILED
6/25/2018 3:15 PM
2018-CH-07976
PAGE 61 of 83

5. **PROPERTY DAMAGE LIABILITY - ELEVATORS AND SIDETRACK AGREEMENTS**

   A. Exclusion **j. Damage to Property**, paragraphs (3) and (6) do not apply to the use of elevators.

   B. Exclusion **k. Damage to Your Product** does not apply to:

      1. The use of elevators; or

      2. Liability assumed under a sidetrack agreement.

6. **PROPERTY DAMAGE LIABILITY – PROPERTY LOANED TO YOU AND PERSONAL PROPERTY IN THE CARE, CUSTODY AND CONTROL OF THE INSURED**

   A. Exclusion **j. Damage to Property**, paragraphs (3) and (4) are deleted, however paragraph 3. is deleted only for this provision 6.

   B. Provision 6. A. above does not apply to "property damage" that exceeds $25,000 per occurrence or $25,000 annual aggregate regardless of the number of:

      1. Insureds;

      2. Claims made; or

      3. Persons or organizations making claims.

   C. This provision 6. does not apply if Property Damage Coverage Endorsement CG 70 21 is attached to this policy.

   The insurance afforded by provisions 1. through 6. of this endorsement is excess over any valid and collectible insurance (including any deductible) available to the insured whether primary, excess or contingent, and **SECTION IV.**, paragraph 4. **Other Insurance** is changed accordingly.

ELECTRONICALLY FILED
6/25/2018 3:15 PM
2018-CH-07976
PAGE 62 of 83

7. **CONTRACTUAL LIABILITY - PERSONAL AND ADVERTISING INJURY**

   Under **SECTION 1 - COVERAGE B.**, paragraph 2. **Exclusions**, paragraph e. **Contractual Liability** is deleted.

8. **SUPPLEMENTARY PAYMENTS**

   Under **SECTION I - SUPPLEMENTARY PAYMENTS - COVERAGES A AND B**, paragraphs 1.b. and 1.d. are deleted and replaced with the following:

   b. Up to $2,500 for cost of bail bonds required because of accidents or traffic law violations arising out of the use of any vehicle to which the Bodily Injury Liability Coverage applies. We do not have to furnish these bonds.

   d. All reasonable expenses incurred by the insured at our request to assist us in the investigation or defense of the claim or "suit", including actual loss of earnings up to $500 a day because of time off from work.

9. **BROADENED WHO IS AN INSURED**

   SECTION II - WHO IS AN INSURED is deleted and replaced with the following:

   1. If you are designated in the Declarations as:

      a. An individual, you and your spouse are insureds, but only with respect to the conduct of a business of which you are the sole owner.

      b. A partnership or joint venture, you are an insured. Your members, your partners, and their spouses are also insureds, but only with respect to the conduct of your business.

      c. A limited liability company, you are an insured. Your members are also insureds, but only with respect to the conduct of your business. Your managers are insureds, but only with respect to their duties as your managers.

      d. An organization other than a partnership, joint venture or limited liability company, you are an insured. Your "executive officers" and directors are insureds, but only with respect to their duties as your officers or directors. Your stockholders are also insureds, but only with respect to their liability as stockholders.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.
Copyright Insurance Services Office, Inc., 2004

**Page 2 of 7**                                                                                                    **CG 70 70 05 08**

**e.** A trust, you are an insured. Your trustees are also insureds, but only with respect to their duties as trustees.

**2.** Each of the following is also an insured:

**a.** Your "volunteer workers" only while performing duties related to the conduct of your business, or your "employees," other than either your "executive officers," (if you are an organization other than a partnership, joint venture or limited liability company) or your managers (if you are a limited liability company), but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business. However, none of these "employees" or "volunteer workers" are insured for:

    **(1)** "Bodily injury" or "personal and advertising injury":

        **(a)** To you, to your partners or members (if you are a partnership or joint venture), to your members (if you are a limited liability company), to a co-"employee" while in the course of his or her employment or performing duties related to the conduct of your business, or to your other "volunteer workers" while performing duties related to the conduct of your business;

        **(b)** To the spouse, child, parent, brother or sister of that co-"employee" or "volunteer worker" as a consequence of paragraph **(1) (a)** above;

        **(c)** For which there is any obligation to share damages with or repay someone else who must pay damages because of the injury described in paragraphs **(1)(a)** or **(b)** above; or

        **(d)** Arising out of his or her providing or failing to provide professional health care services except as provided in Provision **10.** of this endorsement.

    **(2)** "Property damage" to property:

        **(a)** Owned, occupied or used by;

        **(b)** Rented to, in the care, custody or control of, or over which physical control is being exercised for any purpose by

    you, any of your "employees," "volunteer workers", any partner or member (if you are a partnership or joint venture), or any member (if you are a limited liability company).

**b.** Any person (other than your "employee" or "volunteer worker"), or any organization while acting as your real estate manager.

**c.** Any person or organization having proper temporary custody of your property if you die, but only;

    **(1)** With respect to liability arising out of the maintenance or use of that property; and

    **(2)** Until your legal representative has been appointed.

**d.** Your legal representative if you die, but only with respect to duties as such. That representative will have all your rights and duties under this Coverage Part.

**e.** Your subsidiaries if:

    **(1)** They are legally incorporated entities; and

    **(2)** You own more than 50% of the voting stock in such subsidiaries as of the effective date of this policy.

    If such subsidiaries are not shown in the Declarations, you must report them to us within 180 days of the inception of your original policy.

**f.** Any person or organization to whom you are obligated by virtue of a written contract to provide insurance such as is afforded by this policy, but only with respect to liability arising out of the maintenance or use of that part of any premises leased to you, including common or public areas about such premises if so required in the contract.

ELECTRONICALLY FILED
6/25/2018 3:15 PM
2018-CH-07976
PAGE 63 of 83

Includes copyrighted material of Insurance Services Office, Inc., with its permission.
Copyright Insurance Services Office, Inc., 2004

However, no such person or organization is an insured with respect to:

**(1)** Any "occurrence" that takes place after you cease to occupy those premises; or

**(2)** Structural alterations, new construction or demolition operations performed by or on behalf of such person or organization.

**g.** Any state or political subdivision but only as respects legal liability incurred by the state or political subdivision solely because it has issued a permit with respect to operations performed by you or on your behalf.

However, no state or political subdivision is an insured with respect to:

**(1)** "Bodily injury", "property damage", "personal and advertising injury" arising out of operations performed for the state or municipality; or

**(2)** "Bodily injury" or "property damage" included within the "products-completed operations hazard."

**h.** Any person or organization who is the lessor of equipment leased to you to whom you are obligated by virtue of a written contract to provide insurance such as is afforded by this policy, but only with respect to their liability arising out of the maintenance, operation or use by you of such equipment.

However, no such person or organization is an insured with respect to any "occurrence" that takes place after the equipment lease expires.

**i.** Any manager, owner, lessor, mortgagee, assignee or receiver of premises, including land leased to you, but only with respect to liability arising out of the ownership, maintenance, or use of that part of the premises or land leased to you.

However, no such person or organization is an insured with respect to:

**(1)** Any "occurrence" that takes place after you cease to occupy that premises, or cease to lease the land; or

**(2)** Structural alteration, new construction or demolition operations performed by or on behalf of that person or organization.

**j.** Any person or organization granting a license to make or distribute "your products", including "your products" that use the name or logo of such grantor and to whom you are obligated by virtue of a written contract to provide insurance such as afforded by this policy, but only with respect to liability arising out of "your products".

**3.** Any organization you newly acquire or form, other than a partnership, joint venture or limited liability company and over which you maintain ownership or majority interest, will qualify as a Named Insured if there is no other similar insurance available to that organization. However:

**a.** Coverage under this provision is afforded only until the end of the policy period;

**b.** Coverage A does not apply to "bodily injury" or "property damage" that occurred before you acquired or formed the organization;

**c.** Coverage B does not apply to "personal and advertising injury" arising out of an offense committed before you acquired or formed the organization.

**4.** Any person or organization (referred to below as vendor) with whom you agreed because of a written contract or agreement to provide insurance, but only with respect to "bodily injury" or "property damage" arising out of "your products" that are distributed or sold in the regular course of the vendor's business.

However, no such person or organization is an insured with respect to:

**a.** "Bodily injury" or "property damage" for which the vendor is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages that the vendor would have in the absence of the contract or agreement.

**b.** Any express warranty unauthorized by you;

**c.** Any physical or chemical change in the product made intentionally by the vendor;

Includes copyrighted material of Insurance Services Office, Inc., with its permission.
Copyright Insurance Services Office, Inc., 2004

CG 70 70 05 08

ELECTRONICALLY FILED
6/25/2018 3:15 PM
2018-CH-07976
PAGE 64 of 83

    **d.**   Repackaging, except when unpacked solely for the purpose of inspection, demonstration, testing, or the substitution of parts under instructions from the manufacturer, and then repackaged in the original container;

    **e.**   Demonstration, installation, servicing or repair operations, except such operations performed at the vendor's premises in connection with the sale of the product;

    **f.**   Products which, after distribution or sale by you, have been labeled or relabeled or used as a container, part or ingredient of any other thing or substance by or for the vendor.

    **g.**   "Bodily injury" or "property damage" arising out of the sole negligence of the vendor for its own acts or omissions or those of its employees or anyone else acting on its behalf. However, this exclusion does not apply to:

        **(1)**  The exceptions contained in subparagraphs **d.** or **e.**; or

        **(2)**  Such inspections, adjustments, tests or servicing as the vendor has agreed to make or normally undertakes to make in the usual course of business, in connection with the distribution or sale of the products.

This insurance does not apply to any insured person or organization from which you have acquired such products, or any ingredient, part of container, entering into, accompanying or containing such products.

No person or organization is an insured with respect to the conduct of any current or past partnership, joint venture or limited liability company that is not shown as a Named Insured in the Declarations.

**10.**  **INCIDENTAL MALPRACTICE LIABILITY**

As respects provision **9.**, **SECTION II - WHO IS AN INSURED**, paragraph **2.a.(1)(d)** does not apply to any nurse, emergency medical technician or paramedic employed by you to provide medical or paramedical services, provided that you are not engaged in the business or occupation of providing such services, and your "employee" does not have any other insurance that would also cover claims arising under this provision, whether the other insurance is primary, excess, contingent or on any other basis.

Under **SECTION III - LIMITS OF INSURANCE**, provisions **11.** and **12.** of this endorsement amend the policy as follows:

**11.**  **AGGREGATE LIMITS PER LOCATION**

The General Aggregate Limit applies separately to each of your locations. As respects this provision **11.**, your locations are premises you own, rent or use involving the same or connecting lots or premises whose connection is interrupted only by a street, roadway, waterway or right-of-way of a railroad.

**12.**  **INCREASED MEDICAL PAYMENTS LIMIT AND REPORTING PERIOD**

    **A.**   The requirement under **SECTION I - COVERAGE C MEDICAL PAYMENTS** that expenses be incurred and reported to us within one year of the date of the accident is changed to three years.

    **B.**   **SECTION III – LIMITS OF INSURANCE**, paragraph **7.**, the Medical Expense Limit, is subject to all the terms of **SECTION III - LIMITS OF INSURANCE** and is the higher of:

        **1.**  $10,000; or

        **2.**  The amount shown in the Declarations for Medical Expense Limit.

    **C.**   This provision **12.** does not apply if **COVERAGE C MEDICAL PAYMENTS** is excluded either by the provisions of the Coverage Form or by endorsement.

**13.**  **LEGAL LIABILITY (SPECIFIC PERILS)**

    **A.**   The word fire is changed to "specific perils" where it appears in:

        **1.**  The Limits of Insurance section of the Declarations;

        **2.**  The last paragraph of **SECTION I – COVERAGE A**, paragraph **2. Exclusions:**

        **3.**  **SECTION IV**, paragraph **4.b. Excess Insurance.**

ELECTRONICALLY FILED
6/25/2018 3:15 PM
2018-CH-07976
PAGE 45 of 83

Includes copyrighted material of Insurance Services Office, Inc., with its permission.
Copyright Insurance Services Office, Inc., 2004

**B.** The Limits of Insurance shown in the Declarations will apply to all damage proximately caused by the same event, whether such damage results from a "specific peril" or any combination of "specific perils."

**C.** The Damage to Premises Rented to You Limit described in **SECTION III - LIMITS OF INSURANCE,** paragraph **6.**, is the higher of:

**(1)** $300,000; or

**(2)** The amount shown in the Declarations for Damage to Premises Rented to You Limit.

**D.** This provision **13.** does not apply if Damage to Premises Rented to You of **SECTION I – COVERAGE A** is excluded either by the provisions of the Coverage Part or by endorsement.

Under **SECTION IV - COMMERCIAL GENERAL LIABILITY CONDITIONS**, provisions **14.** through **16.** of this endorsement amend the policy as follows:

### 14. KNOWLEDGE OF OCCURRENCE

Under **2. Duties In The Event Of Occurrence, Offense, Claim Or Suit**, paragraph **a.** is deleted and replaced by the following:

**a.** You must see to it that we are notified as soon as practicable of an "occurrence" or an offense, regardless of the amount, which may result in a claim. Knowledge of an "occurrence" or an offense by your "employee(s)" shall not, in itself, constitute knowledge to you unless one of your partners, members, "executive officers", directors, or managers has knowledge of the "occurrence" or offense. To the extent possible, notice should include:

**(1)** How, when and where the "occurrence" or offense took place;

**(2)** The names and addresses of any injured persons and witnesses; and

**(3)** The nature and location of any injury or damage arising out of the "occurrence" or offense.

ELECTRONICALLY FILED
6/25/2018 3:15 PM
2018-CH-07876
PAGE 66 of 88

**UNINTENTIONAL FAILURE TO DISCLOSE HAZARDS**

Paragraph **6. Representations** is deleted and replaced with the following:

**6. Representations**

By accepting this policy, you agree:

**a.** The statements in the Declarations are accurate and complete;

**b.** Those statements are based upon representations you made to us;

**c.** We have issued this policy in reliance upon your representations; and

**d.** This policy is void in any case of fraud by you as it relates to this policy or any claim under this policy.

We will not deny coverage under this coverage part if you unintentionally fail to disclose all hazards existing as of the inception date of this policy. You must report to us any knowledge of an error or omission in the description of any premises or operations intended to be covered by the Coverage Part as soon as practicable after its discovery. However, this provision does not affect our right to collect additional premium or exercise our right of cancellation or nonrenewal.

### 16. TRANSFER OF RIGHTS (BLANKET WAIVER OF SUBROGATION)

Paragraph **8. Transfer of Rights Of Recovery Against Others To Us** is deleted and replaced with the following:

**8.** If the insured has rights to recover all or part of any payment we have made under this Coverage Part, those rights are transferred to us. The insured must do nothing after loss to impair them. At our request, the insured will bring "suit" or transfer those rights to us and help us enforce them. However, if the insured has waived rights to recover through a written contract, or if "your work" was commenced under a letter of intent or work order, subject to a subsequent reduction to writing with customers whose customary contracts require a waiver, we waive any right of recovery we may have under this Coverage Part.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.
Copyright Insurance Services Office, Inc., 2004

CG 70 70 05 08

17. **EXTENDED NOTICE OF CANCELLATION AND NONRENEWAL**

In the **COMMON POLICY CONDITIONS**, IL 00 17, Paragraph **2.b.** of A. **Cancellation** is deleted and replaced with the following:

**b.** 60 days before the effective date of cancellation if we cancel for any other reason.

Under **SECTION IV – COMMERCIAL GENERAL LIABILITY CONDITIONS**, Paragraph **9. When We Do Not Renew** is deleted and replaced with the following:

**9. When We Do Not Renew**

If we decide not to renew this Coverage Part, we will mail or deliver to the first Named Insured shown in the Declarations written notice of the nonrenewal not less than 60 days before the expiration date.

If notice is mailed, proof of mailing will be sufficient proof of notice.

18. **MOBILE EQUIPMENT REDEFINED**

Under **SECTION V - DEFINITIONS**, paragraph **12.** "Mobile equipment", paragraph **f (1)** does not apply to self-propelled vehicles of less than 1,000 pounds gross vehicle weight.

19. **DEFINITIONS**

1. **SECTION V – DEFINITIONS**, Paragraph **4.** "Coverage territory" is replaced by the following definition:

   **4.** "Coverage territory" means anywhere in the world with respect to liability arising out of "bodily injury," "property damage," or "personal and advertising injury," including "personal and advertising injury" offenses that take place through the Internet or similar electronic means of communication provided the insured's responsibility to pay damages is determined in a settlement to which we agree or in a "suit" on the merits, in the United States of America (including its territories and possessions), Puerto Rico and Canada.

2. **SECTION V – DEFINITIONS** is amended by the addition of the following definitions:

   "Specific Perils" means fire; lightning; explosion; windstorm or hail; smoke; aircraft or vehicles; riot or civil commotion; vandalism; leakage from fire extinguishing equipment; weight of snow, ice or sleet; or "water damage."

   "Water damage" means accidental discharge or leakage of water or steam as the direct result of the breaking or cracking of any part of a system or appliance containing water or steam.

ELECTRONICALLY FILED
6/25/2018 3:15 PM
2018-CH-07976
PAGE 67 of 83

Includes copyrighted material of Insurance Services Office, Inc., with its permission.
Copyright Insurance Services Office, Inc., 2004

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EXCESS INSURANCE CONDITION - WHEN YOU ARE AN INSURED ON OTHER INSURANCE

This endorsement modifies insurance provided under the following:

**COMMERCIAL GENERAL LIABILITY COVERAGE FORM**

All of the terms, provisions, exclusions, and limitations of the coverage form apply except as specifically stated below.

Paragraph **4.b.** of the Other Insurance Condition - (Section IV - Commercial General Liability Conditions) is deleted and replaced by the following:

**4. Other Insurance**

    **b. Excess Insurance**

This insurance is excess over any other insurance, whether primary, excess, contingent or on any other basis:

    **(1)** That is Fire, Extended Coverage, Builder's Risk, Installation Risk, or similar coverage for "your work;"

    **(2)** That is Fire Insurance for premises rented to you or temporarily occupied by you with permission of the owner;

    **(3)** That is insurance purchased by you to cover your liability as a tenant for "property damage" to premises rented to you or temporarily occupied by you with permission of the owner;

    **(4)** If the loss arises out of the maintenance or use of aircraft, "autos", or watercraft to the extent not subject to Exclusion **g.** of Section I - Coverage A - Bodily Injury And Property Damage Liability; or

    **(5)** That is valid and collectible insurance available to you as an insured under any other policy.

When this insurance is excess, we will have no duty under Coverages **A** or **B** to defend any claim or "suit" that any other insurer has a duty to defend. If no other insurer defends, we will undertake to do so, but we will be entitled to the insured's rights against all those other insurers.

When this insurance is excess over other insurance, we will pay only our share of the amount of loss, if any, that exceeds the sum of:

    **(1)** The total amount that all such other insurance would pay for the loss in the absence of this insurance; and

    **(2)** The total of all deductible and self-insured amounts under all that other insurance.

We will share the remaining loss, if any, with any other insurance that is not described in this Excess Insurance provision and was not bought specifically to apply in excess of the Limits of Insurance shown in the Declarations of this Coverage Part.

ELECTRONICALLY FILED
6/25/2018 3:15 PM
2018-CH-07976
PAGE 68 of 83

Includes copyrighted material of Insurance Services Office, Inc., with its permission.
Copyright Insurance Services Office, Inc., 1997

CG 70 71 09 99

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EXCLUSION - LEAD POISONING OR CONTAMINATION

This endorsement modifies insurance provided under the following:

**COMMERCIAL GENERAL LIABILITY POLICY**

All other terms, provisions, exclusions, and limitations of the policy apply except as specifically stated below.

1.     Under **A. COVERAGES**, Item **2. Exclusions** is amended by the addition of the following:

**Lead Poisoning or Contamination**

This insurance does not apply to:

    (1)    "Bodily injury" or "property damage" arising out of the actual, alleged or threatened ingestion, inhalation, absorption, dispersal or escape of lead in any form.

    (2)    Any loss, cost or expense arising out of any:

        (a)    Request, demand or order that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of lead; or

        (b)    Claim or suit by or on behalf of any person, organization or governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of lead.

ELECTRONICALLY FILED
6/25/2018 3:15 PM
2018-CH-07976
PAGE 69 of 83

**CG 71 17 01 01**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# ADVANTAGE BLANKET ADDITIONAL INSURED ENDORSEMENT

This endorsement modifies insurance provided under the following:

**COMMERCIAL GENERAL LIABILITY COVERAGE FORM**

All of the terms, provisions, exclusions, and limitations of the coverage form apply except as specifically stated below.

**SECTION II - WHO IS AN INSURED** is amended to include as an insured any person or organization, called an additional insured in this endorsement:

1.  Whom you are required to add as an additional insured on this policy under a written contract or agreement relating to your business; or

2.  Who is named as an additional insured under this policy on a certificate of insurance.

However, the written contract, agreement or certificate of insurance must require additional insured status for a time period during the term of this policy; and be executed prior to the "bodily injury", "property damage", "personal injury", or "advertising injury" giving rise to a claim under this policy.

If, however, "your work" was commenced under a letter of intent or work order, subject to a subsequent reduction to writing within 30 days from such commencement and with customers whose customary contracts require they be named as additional insureds, we will provide additional insured status as specified in this endorsement.

ELECTRONICALLY FILED
6/25/2018 3:15 PM
2018-CH-07976
PAGE 70 of 83

3.  If the additional insured is:

    (a)  An individual, their spouse is also an additional insured.

    (b)  A partnership or joint venture, members, partners, and their spouses are also additional insureds.

    (c)  A limited liability company, members and managers are also additional insureds.

    (d)  An organization other than a partnership, joint venture or limited liability company, executive officers and directors of the organization are also additional insureds. Stockholders are also additional insureds, but only with respect to their liability as stockholders.

    (e)  A trust, you are an insured. Your trustees are also insureds, but only with respect to their duties as trustees.

The insurance provided to the additional insured is limited as follows:

1.  That person or organization is only an additional insured with respect to liability arising out of:

    (a)  Premises you own, rent, lease, or occupy, or

    (b)  Your ongoing operations performed for that additional insured, unless the written contract agreement, or certificate of insurance requires "your work" coverage (or wording to the same effect) in which case the coverage provided shall extend to "your work" for that additional insured.

    Premises, as respects this provision, shall include common or public areas about such premises if so required in the written contract or agreement.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.
Copyright Insurance Services Office, Inc. 2004

CG 71 24 12 05

Page 1 of 2

Ongoing operations, as respects this provision, does not apply to "bodily injury" or "property damage" occurring after:

(1) All work including materials, parts or equipment furnished in connection with such work on the project (other then service, maintenance or repairs) to be performed by or on behalf of the additional insured(s) at the site of the covered operations has been completed; or

(2) That portion of "your work" out of which the injury or damage arises has been put to its intended use by any person or organization other than another contractor or subcontractor engaged in performing operations for a principal as a part of the same project.

2. The limits of insurance applicable to the additional insured are the least of those specified in the written contract or agreement, or in the certificate of insurance or in the Declarations for this policy. If you also carry an Umbrella policy, and the written contract or agreement or certificate of insurance requires that the additional insured status also apply to such Umbrella policy, the limits of insurance applicable to the additional insured under this policy shall be those specified in the Declarations of this policy. The limits of insurance applicable to the additional insured are inclusive of and not in addition to the limits of insurance shown in the Declarations.

3. The additional insured status provided by this endorsement does not extend beyond the expiration or termination of a lease or rental agreement nor beyond the term of this policy.

4. This endorsement does not apply to vendors of "your products" or any person or organization included as an insured under the provisions of Section II – WHO IS AN INSURED in the COMMERCIAL GENERAL LIABILITY FORM or in the BROADENED WHO IS AN INSURED provision of the ADVANTAGE GENERAL LIABILITY EXTENSION ENDORSEMENT if attached to this policy.

The insurance provided to the additional insured does not apply to "bodily injury", "property damage", "personal injury", or "advertising injury" arising out of an architect's, engineer's, or surveyor's rendering of or failure to render any professional services including but not limited to:

1. The preparing, approving, or failing to prepare or approve maps, drawings, opinions, reports, surveys, change orders, design specifications; and

2. Supervisory, inspection, or engineering services.

SECTION IV - COMMERCIAL GENERAL LIABILITY CONDITIONS is amended by the following provisions:

Condition 4. Other Insurance is deleted and replaced with the following:

4. Other Insurance.

This insurance is excess over any other insurance whether primary, excess, contingent or on any other basis, unless the written contract, agreement, or certificate of insurance requires that this insurance be primary, in which case this insurance will be primary without contribution from such other insurance available to the additional insured.

ELECTRONICALLY FILED
6/25/2018 3:15 PM
2018-CH-07976
PAGE 74 of 89

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# BODILY INJURY DEFINITION MODIFICATION

This endorsement modifies insurance provided under the following:

**COMMERCIAL GENERAL LIABILITY COVERAGE FORM**

**All other terms, provisions, exclusions, and limitations of the policy apply except as specifically stated below.**

**SECTION V - DEFINITIONS,** Item 3. "Bodily injury" is deleted and replaced with the following:

3.   "Bodily injury"

    **a.**   Means physical:

        **(1)**   Injury;
        **(2)**   Disability;
        **(3)**   Sickness; or
        **(4)**   Disease;

        sustained by a person, including death resulting from any of these at any time.

    **b.**   Includes mental:

        **(5)**   Anguish;
        **(6)**   Injury;
        **(7)**   Humiliation;
        **(8)**   Fright; or
        **(9)**   Shock;

        sustained by a person who has sustained any "bodily injury" described in paragraph **3.a.**, provided that any "bodily injury" described in paragraph **3.b.** results directly from any "bodily injury" described in paragraph **3.a.**

    **c.**   All "bodily injury" described in paragraph **3.b.** shall be deemed to have occurred at the time the "bodily injury" described in paragraph **3.a.** occurred.

ELECTRONICALLY FILED
6/25/2018 3:15 PM
2018-CH-07976
PAGE 72 of 83

CG 71 34 04 05

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EXCLUSION – OPERATIONS INCLUDED WITHIN A CONTROLLED INSURANCE PROGRAM

This endorsement modifies the insurance provided under the following:

**COMMERCIAL GENERAL LIABILITY COVERAGE FORM**

All other terms, provisions, exclusions, and limitations of the policy apply except as specifically stated below.

**The following exclusion is added to SECTION I – COVERAGES, COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY, paragraph 2. Exclusions:**

This insurance does not apply to "bodily injury" or "property damage" arising out of either your ongoing operations or operations included within the "products-completed operations hazard" if such operations were at any time included within a "controlled insurance program" for a construction project in which you are or were involved.

This exclusion applies whether or not the "controlled insurance program" provides:

(1)  Coverage identical to that provided by this Coverage Form;

(2)  Limits adequate to cover all claims; or

(3)  Coverage that remains in effect.

This exclusion applies regardless of whether such operations are or were conducted by you or on your behalf.

This exclusion does not apply to your operations away from a "controlled insurance program" project site incidental to the support of such a project and not included within the "controlled insurance program".

This exclusion does not apply to the "products-completed operations hazard" if such operations were included within a "controlled insurance program" and coverage provided by the" controlled insurance program" for the "products-completed operations hazard" has terminated.

C.  **The following is added to Section V - Definitions**

"Controlled insurance program" means a construction, erection or demolition project for which the prime contractor/project manager or owner of the construction project has secured general liability insurance covering some or all of the contractors or subcontractors involved in the project, otherwise referred to as an Owner Controlled Insurance Program (O.C.I.P.) or Contractor Controlled Insurance Program (C.C.I.P.).

ELECTRONICALLY FILED
6/25/2018 3:15 PM
2018-CH-07976
PAGE 73 of 83

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

CG 71 53 12 06

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# ELECTRONIC DATA LIABILITY

This endorsement modifies insurance provided under the following:

    COMMERCIAL GENERAL LIABILITY COVERAGE PART

A.   Exclusion **2.p.** of **Coverage A – Bodily Injury And Property Damage Liability** in **Section I – Coverages** is replaced by the following:

   **2.**   **Exclusions**

      This insurance does not apply to:

      **p.**   **Electronic Data**

         Damages arising out of the loss of, loss of use of, damage to, corruption of, inability to access, or inability to manipulate "electronic data" that does not result from physical injury to tangible property. However, this exclusion does not apply to liability for damages because of "bodily injury".

ELECTRONICALLY FILED
6/25/2018 3:15 PM
2018-CH-07976
PAGE 74 of 83

B.   The following definition is added to the **Definitions** section:

"Electronic data" means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software (including systems and applications software), hard or floppy disks, CD-ROMs, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

For the purposes of the coverage provided by this endorsement, the definition of "property damage" in the **Definitions** section is replaced by the following:

**17.**  "Property damage" means:

    **a.**   Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it;

    **b.**   Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it; or

    **c.**   Loss of, loss of use of, damage to, corruption of, inability to access, or inability to properly manipulate "electronic data", resulting from physical injury to tangible property. All such loss of "electronic data" shall be deemed to occur at the time of the "occurrence" that caused it.

For the purposes of this insurance, "electronic data" is not tangible property.

Includes copyrighted material of Insurance Services Office, Inc.

CG 71 55 10 12

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY

# TOTAL POLLUTION EXCLUSION WITH EXCEPTIONS FOR BUILDING HEATING, COOLING AND DEHUMIDIFYING EQUIPMENT; HOSTILE FIRE; CONTRACTOR JOB SITE; AND SEWAGE BACKUP

This endorsement modifies insurance provided under the following:

**COMMERCIAL GENERAL LIABILITY COVERAGE PART**

All terms of the coverage form apply except as specifically stated below.

Exclusion f. under Paragraph 2., **Exclusions of Section I - Coverage A - Bodily Injury And Property Damage Liability** is replaced by the following:

This insurance does not apply to:

**f. Pollution**

(1) "Bodily injury" or "property damage" which would not have occurred in whole or part but for the actual, alleged or threatened:

discharge;
dispersal;
seepage;
migration;
release; or
escape;

of "pollutants" at any time.

This exclusion does not apply to:

(a) "Bodily injury" if sustained within a building which is or was at any time owned or occupied by, or rented or loaned to, any insured and caused by smoke, fumes, vapor or soot produced by or originating from equipment that is used to heat, cool or dehumidify the building, or equipment that is used to heat water for personal use, by the building's occupants or their guests;

(b) "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire" unless that "hostile fire" occurred or originated:

(i) At any premises, site or location which is or was at any time used by or for any insured or others for the:

handling;
storage;
disposal;
processing; or
treatment;

of waste; or

ELECTRONICALLY FILED
6/25/2018 3:15 PM
2018-CH-07976
PAGE 75 of 83

Includes copyrighted material of Insurance Services Office, Inc.

CG 71 66 08 11

Page 1 of 2

    (ii)  At any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations to:

test for;
monitor;
clean up;
remove;
contain;
treat;
detoxify;

neutralize; or
in any way respond to, or assess the effects of;

"pollutants".

    (c)  "Bodily injury" or "property damage" sustained within a building and caused by the release of gases, fumes or vapors from materials brought into that building in connection with operations being performed by you or on your behalf by a contractor or subcontractor.

    (d)  "Bodily injury" or "property damage" sustained within a building and caused by the sudden and accidental backup or discharge of "sewage" through sewers, drains or pipes.

  (2)  Any loss, cost or expense arising out of any:

    (a)  Request, demand, order or statutory or regulatory requirement that any insured or others:

test for;
monitor;
clean up;
remove;
contain;
treat;
detoxify; or
neutralize;
or in any way respond to, or assess the effects of;

"pollutants"; or

    (b)  Claim or suit by or on behalf of a governmental authority for damages because of:

testing for;
monitoring;
cleaning up;
removing;
containing;
treating;
detoxifying; or
neutralizing;
or in any way responding to, or assessing the effects of;

"pollutants".

## Section V – DEFINITIONS

The following definition is added to the **Definitions** section:

"Sewage" means refuse liquids or waste matter carried off by sewers, drains or pipes.

ELECTRONICALLY FILED
6/25/2018 3:15 PM
2018-CH-07976
PAGE 76 of 83

Includes copyrighted material of Insurance Services Office, Inc.

# EMPLOYEE BENEFITS LIABILITY COVERAGE FORM

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy. The words "we", "us" and "our" refer to the company providing this insurance.

The word "insured" means any person or organization qualifying as such under WHO IS AN INSURED (Section II).

Other words and phrases that appear in quotation marks have special meaning. Refer to DEFINITIONS (Section V).

The provisions of this policy apply only as respects Employee Benefits Liability coverage. All other terms and conditions of any other policy issued to you by us shall not be affected by any provision of this policy

## SECTION I - COVERAGE

### 1. Insuring Agreement

ELECTRONICALLY FILED
6/25/2018 3:15 PM
2018-CH-07976
PAGE 77 of 83

We will pay those sums that the insured becomes legally obligated to pay as damages because of any negligent act, error or omission of the insured committed in the "administration" of your "employee benefit program." This insurance applies only to negligent acts, errors or omissions which occur during the policy period. The negligent acts, errors, or omissions must take place in the "coverage territory".

We will have the right and duty to defend any "suit" seeking these damages. However, we will have no duty to defend the insured against any "suit" seeking damages for any negligent acts, errors or omissions to which this insurance does not apply. We may at our discretion, investigate any report of a negligent act, error or omission and settle any claim or "suit" that may result. But:

a. The amount we will pay for damages is limited as described in **SECTION III - LIMITS OF INSURANCE AND DEDUCTIBLE**; and

b. Our right and duty to defend end when we have used up the applicable Limit of Insurance in the payment of judgments or settlements.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under **3. Supplementary Payments** which follows.

### 2. Exclusions

This insurance does not apply to:

a. "Bodily injury," "property damage," "personal injury" or "advertising injury";

b. Loss arising out of failure of an insured to perform a contract;

c. Loss arising out of failure of an insurer to perform a contract;

d. Loss arising out of any intentional, dishonest, fraudulent, criminal or malicious act, error or omission, committed by an insured;

e. Loss arising out of any insufficiency of funds to meet any obligations under any plan included in the "employee benefit program";

f. Any claim or "suit" based upon:

    (1) Failure of any investment to perform as represented by any insured or by the plan provider on behalf of the insured; or

    (2) Advice given to any person to participate or not to participate in any plan included in the "employee benefit program";

**EB 70 01 11 97**                                                                                           **Page 1 of 7**

g.  Loss arising out of the insured's failure to comply with mandatory provisions of laws concerning:

   (1)  Workers' Compensation;

   (2)  Unemployment Insurance;

   (3)  Social Security;

   (4)  Disability benefits; or

   (5)  Any similar law.

h.  Loss arising out of liability of an insured as a fiduciary under:

   (1)  EMPLOYEE RETIREMENT INCOME SECURITY ACT OF 1974; or

   (2)  INTERNAL REVENUE CODE OF 1986 (including the INTERNAL REVENUE CODE OF 1954); and

   (3)  Any amendments of 1. and 2. above.

i.  Loss arising out of any discriminatory act committed in the "administration" of your "employee benefit program".

**3.  Supplementary Payments**

We will pay with respect to any claim we investigate or settle or any "suit" we defend:

a.  All expenses we incur.

b.  The cost of bonds to release attachments, but only for bond amounts within the applicable Limit of Insurance. We do not have to furnish these bonds.

c.  All reasonable expenses incurred by the insured at our request to assist us in the investigation or defense of the claim or "suit", including actual loss of earnings up to $250 a day because of time off from work.

d.  All costs taxed against the insured in the "suit".

e.  Prejudgment interest awarded against the insured on that part of the judgment we pay. If we make an offer to pay the applicable Limit of Insurance, we will not pay any prejudgment interest based on that period of time after the offer.

f.  All interest on the full amount of any judgment that accrues after entry of the judgment and before we have paid, offered to pay, or deposited in court the part of the judgment that is within the applicable Limit of Insurance.

These payments will not reduce the Limit of Insurance.

**SECTION II - WHO IS AN INSURED**

1.  If you are designated in the Declarations as:

a.  An individual, you and your spouse are insureds.

b.  A partnership or joint venture, you are an insured. Your members, your partners, and their spouses are also insureds, but only with respect to the conduct of your business.

c.  A limited liability company, you are an insured. Your members are also insureds, but only with respect to the conduct of your business. Your managers are insureds, but only with respect to their duties as your managers.

d.  An organization other than a partnership, joint venture or limited liability company, you are an insured. Your "executive officers" and directors are insureds, but only with respect to their duties as your officers or directors. Your stockholders are also insureds, but only with respect to their liability as stockholders.

ELECTRONICALLY FILED
6/25/2018 3:15 PM
2018-CH-07976
PAGE 78 of 83

EB 70 01 11 97

2.  Each of the following is also an insured:

    a.  Your "employees" who have been given responsibility for the "administration" of your "employee benefit program" as part of their regular job duties, but only for acts within the scope of their duties.

    b.  Your legal representative if you die, but only with respect to duties as such. That representative will have all your rights and duties under this coverage part.

3.  Any organization you newly acquire or form, other than a partnership, joint venture or limited liability company, and over which you maintain ownership or majority interest, will qualify as a Named Insured if there is no other similar insurance available to that organization. However:

    a.  Coverage under this provision is afforded only until the 90th day after you acquire or form the organization or the end of the policy period, whichever is earlier.

    b.  Coverage under this provision does not apply to any negligent act, error or omission that occurred before you acquired or formed the organization.

No person or organization is an insured with respect to the conduct of any current or past partnership, joint venture or limited liability company that is not shown as a Named Insured in the Declarations.

### SECTION III - LIMITS OF INSURANCE AND DEDUCTIBLE

1.  The Limits of Insurance shown in the Declarations and the rules below fix the most we will pay regardless of the number of:

    a.  Insureds;

    b.  Claims made or "suits" brought;

    c.  Persons or organizations making claims or bringing "suits";

    d.  Acts, errors or omissions which result in loss; or

    e.  Plans included in your "employee benefit program."

    The Aggregate Limit is the most we will pay for all damages because of acts, errors or omissions committed in the "administration" of your "employee benefit program."

3.  Subject to the Aggregate Limit, the Each Employee Limit is the most we will pay for all damages sustained by any one "employee," including the "employee's" dependents and beneficiaries, because of acts, errors or omissions committed in the "administration" of your "employee benefit program".

    The limits afforded by this coverage part apply separately to each consecutive annual period, and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations, unless the policy period is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limit of Insurance.

4.  **DEDUCTIBLE**

    a.  Our obligation to pay damages on behalf of the insured applies only to the amount of damages in excess of the deductible amount stated in the Declarations as applicable to Each Employee. The Limits of Insurance applicable to Each Employee will be reduced by the amount of this deductible. The Aggregate Limit will not be reduced by the application of such deductible.

    b.  The deductible amount stated in the Declarations applies to all damages sustained by an "employee" because of an act, error or omission covered by this insurance.

ELECTRONICALLY FILED
6/25/2018 3:15 PM
2018-CH-07976
PAGE 79 of 83

    c.    The terms of this insurance, including those with respect to:

        (1)    Our right and duty to defend "suits" seeking those damages; and

        (2)    Your duties in the event of an act, error, omission, claim or "suit;"

        apply irrespective of the application of the deductible amount.

    d.    We may pay any part or all of the deductible amount to effect settlement of a claim or "suit" and, upon notification of the action taken, you shall promptly reimburse us for that part of the deductible amount paid by us.

## SECTION IV - EMPLOYEE BENEFITS LIABILITY CONDITIONS

**1. Bankruptcy**

Bankruptcy or insolvency of the insured or of the insured's estate will not relieve us of our obligations under this Coverage Part.

**2. Duties In The Event Of An Act, Error, Omission, Claim or Suit**

    a.    You must see to it that we are notified as soon as practicable of any act, error or omission which may result in a claim. Notice should include:

        (1)    A description of the act, error or omission and when it occurred.

        (2)    The name and address of any "employee" or beneficiary who may suffer damages as a result of the act, error or omission.

        Notice of any act, error or omission is not notice of a claim

    b.    If a claim is received by any insured, you must:

        (1)    Immediately record the specifics of the claim and the data received; and

        (2)    Notify us as soon as practicable.

        You must see to it that we receive written notice of the claim as soon as practicable.

    c.    You and any other involved insured must:

        (1)    Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";

        (2)    Authorize us to obtain records and other information;

        (3)    Cooperate with us in the investigation, settlement or defense of the claim or "suit"; and

        (4)    Assist us, upon request, in the enforcement of any rights against any person or organization which may be liable to the insured because of damages to which this insurance may also apply.

    d.    No insureds will, except at their own cost, voluntarily make a payment, assume any obligation, or incur any expense without our consent; to do so will jeopardize your coverage under this policy.

**3. Legal Action Against Us**

No person or organization has a right under this Coverage Part:

    a.    To join us as a party or otherwise bring us into a "suit" asking for damages from an insured; or

    b.    To sue us on this Coverage Part unless all of its terms have been fully complied with.

ELECTRONICALLY FILED
6/25/2018 3:15 PM
2018-CH-07976
PAGE 80 of 83

EB 70 01 11 97

A person or organization may sue us to recover on an agreed settlement or on a final judgment against the insured obtained after an actual trial; but we will not be liable for damages that are not payable under the terms of this Coverage Part or that are in excess of the applicable limit of insurance. An agreed settlement means a settlement and release of liability signed by us, the insured and the claimant or the claimant's legal representative.

**4. Other Insurance**

If other valid and collectible insurance is available to the insured for a loss we cover under this coverage part, our obligations are limited as follows:

**a. Primary Insurance**

This insurance is primary. Our obligations are not affected unless any of the other insurance is also primary. Then, we will share with any other insurance by the method described in **b.** below.

**b. Method of Sharing**

If the other insurance permits contribution by equal shares, we will follow this method also. Under this approach each insurer contributes equal amounts until it:

**(1)** Has paid its applicable limit of insurance; or

**(2)** None of the loss remains;

whichever comes first.

If any of the other insurance does not permit contribution by equal shares, we will contribute by limits. Under this method, each insurer's share is based on the ratio of its applicable Limit of Insurance to the total applicable limits of insurance of all insurers.

**Premium Audit**

ELECTRONICALLY FILED
6/25/2018 3:15 PM
2018-CH-07976
PAGE 81 of 83.

**a.** We will compute all premiums for this Coverage Part in accordance with our rules and rates.

**b.** Premium shown in this Coverage Part as advance premium is a deposit premium only. At the close of each audit period we will compute the earned premium for that period. Audit premiums are due and payable on notice to the first Named Insured. If the sum of the advance and audit premium paid for the policy period is greater than the earned premium, we will return the excess to the first Named Insured.

**c.** The first Named Insured must keep records of the information we need for premium computation, and send us copies at such times as we may request.

**6. Representations**

By accepting this policy, you agree:

**a.** The statements in the Declarations are accurate and complete.

**b.** Those statements are based on representations you made to us; and

**c.** We have issued this policy in reliance upon your representations.

**7. Separation of Insureds**

Except with respect to the Limits of Insurance, and any rights or duties specifically assigned in this Coverage Part to the first Named Insured, this insurance applies;

**a.** As if each Named Insured were the only Named Insured; and

**b.** Separately to each insured against whom claim is made or "suit" is brought.

**8. Transfer of Rights of Recovery Against Others To Us**

If the insured has rights to recover all or part of any payment we have made under this Coverage Part, those rights are transferred to us. The insured must do nothing after loss to impair them. At our request, the insured will bring "suit" or transfer those rights to us and help us enforce them.

9. **When We Do Not Renew**

If we decide not to renew this Coverage Part, we will mail or deliver to the first Named Insured shown in the Declarations written notice of the nonrenewal not less than 30 days before the expiration date.

If notice is mailed, proof of mailing will be sufficient proof of notice.

## SECTION V - DEFINITIONS

1. "Administration" means:

   a. Providing information to "employees," including their dependents and beneficiaries, with respect to the "employee benefit program";

   b. Handling records in connection with the "employee benefit program";

   c. Effecting or terminating any "employee's" participation in a plan included in the "employee benefit program".

2. "Advertising injury" means injury arising out of one or more of the following offenses:

   a. Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

   b. Oral or written publication of material that violates a person's right of privacy;

   c. Misappropriation of advertising ideas or style of doing business; or

   d. Infringement of copyright, title or slogan.

3. "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting form any of these at any time.

4. "Coverage territory" means the United States of America (including its territories and possessions), Puerto Rico and Canada.

5. "Employees" mean your officers, partners and employees whether actively employed, disabled or retired.

6. "Employee benefit program" means the following plans:

   a. "Pension plans" under the Employee Retirement Income Security Act; and

   b. "Welfare benefit plans" under the Employee Retirement Income Security Act.

7. "Executive officers" means a person holding any of the officer positions created by your charter, constitution, by-laws or any other similar governing document.

8. "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

9. "Pension plans" mean any plan, fund, or program which is established or maintained by an employer or by an employee organization (such as a labor union), or by both, to the extent that by its express terms or as a result of surrounding circumstances such plan, fund, or program (1) provides retirement income to employees, or (2) results in a deferral of income by employees for periods extending to the termination of covered employment or beyond regardless of the method of calculating the contributions made to the plan, the method of calculating the benefits under the plan, or the method of distributing benefits from the plan. This definition includes all qualified pension, profit-sharing, stock bonus, and similar plans.

10. "Personal injury" means injury, other than "bodily injury", arising out of one or more of the following offenses:

    a. False arrest, detention or imprisonment;

    b. Malicious prosecution;

    c. The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies by or on behalf of its owner, landlord or lessor.

    d. Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

    e. Oral or written publication of material that violates a person's right of privacy; or

ELECTRONICALLY FILED
6/25/2018 3:15 PM
2018-CH-07976
PAGE 82 of 83

EB 70 01 11 97

11. "Property damage" means:

    a.   Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

    b.   Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

12. "Suit" means a civil proceeding in which damages are alleged because of an act, error or omission to which this insurance applies. "Suit" includes:

    a.   An arbitration proceeding in which such damages are claimed and to which the insured must submit or does submit with our consent; or

    b.   Any other alternative dispute resolution proceeding in which such damages are claimed and to which the insured submits with our consent.

13. "Welfare benefit plans" mean any plan, fund, or program established or maintained by an employer or by an employee organization, or by both, for the purpose of providing for its participants or their beneficiaries, through the purchase of insurance or otherwise, medical, surgical, or hospital care or benefits, or benefits in the event of sickness, accident, disability, death or unemployment, or vacation benefits, apprenticeship or other training programs, or day care centers, scholarship funds, or prepaid legal services.

ELECTRONICALLY FILED
6/25/2018 3:15 PM
2018-CH-07976
PAGE 83 of 83

ELECTRONICALLY FILED
6/25/2018 3:15 PM
2018-CH-07976
CALENDAR: 03
PAGE 1 of 27
CIRCUIT COURT OF
COOK COUNTY, ILLINOIS
CHANCERY DIVISION
CLERK DOROTHY BROWN

# EXHIBIT E

 **ACE American Insurance Company**
436 Walnut Street
Philadelphia PA 19106

# Commercial General Liability Declarations

**POLICY NUMBER:** HDO G27327254     **EXPIRING POLICY NUMBER:**

|  |
|---|
| **NEW** |

## ITEM ONE

**Named Insured:** Iron Mountain Incorporated

**Address:** 745 Atlantic Avenue
Boston, MA 02111

**Producer Number:** 272594

**Producer Name:** MARSH USA INC

**Producer Address:** 1166 AVENUE OF THE AMERICAS
42ND FLOOR
NEW YORK, NY 10036-2774

**Form of Business:** [X] Corporation    [ ] Limited Liability Company
            [ ] Other _

**Named Insured's business:** Transportation

**Policy Period:** Policy covers from 11/01/2013 to 11/01/2014 12:01 am standard time at the named insured's address stated above.

**Audit Period: Annual, unless otherwise stated:** [ ] **Semi-Annual** [ ] **Quarterly** [ ] _
**Total Advance Premium (Including surcharges):** $████████
Refer to Surcharge Endorsement for surcharge amounts and rates. (Does Not Apply in Puerto Rico)

PAGE 2 of 27
2018-CH-07976
6/25/2018 3:15 PM
Ma3 1:15 PM
ELECTRONICALLY FILED



ACE American Insurance Company
436 Walnut Street
Philadelphia PA 19106

# Commercial General Liability Declarations

**POLICY NUMBER:** HDO G27327254

| COVERAGES AND LIMITS OF INSURANCE | | | | |
|---|---|---|---|---|
| **EACH OCCURRENCE LIMIT** | $ | 1,000,000 | | |
| **DAMAGE TO PREMISES RENTED TO YOU LIMIT** | $ | 1,000,000 | | Any one premises |
| **MEDICAL EXPENSE LIMIT** | $ | 25,000 | | Any one person |
| **PERSONAL & ADVERTISING INJURY LIMIT** | $ | 1,000,000 | | Any one person or organization |
| **GENERAL AGGREGATE LIMIT** | | | $ | 1,000,000 |
| **PRODUCTS/COMPLETED OPERATIONS AGGREGATE LIMIT** | | | $ | 1,000,000 |
| | | | $ | |
| | | | $ | |
| | | | $ | |
| | | | $ | |
| | | | $ | |

| RETROACTIVE DATE (CLAIMS MADE POLICIES ONLY) |
|---|
| THIS INSURANCE DOES NOT APPLY TO "BODILY INJURY", "PROPERTY DAMAGE" OR "PERSONAL AND ADVERTISING INJURY" WHICH OCCURS BEFORE THE RETROACTIVE DATE, IF ANY, SHOWN BELOW. RETROACTIVE DATE: _____ |
| (ENTER DATE OR "NONE" IF NO RETROACTIVE DATE APPLIES) |

| SCHEDULE OF LOCATIONS | |
|---|---|
| LOCATION NUMBER | ADDRESS OF ALL PREMISES YOU OWN, RENT OR OCCUPY |
| | |

| LOCATION NUMBER | COVERAGE | CLASS CODE/ DESCRIPTION |
|---|---|---|
| All | All | 40050/Transportation |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

LD-25211 (10/08)

PAGE 3 of 27
2018-CH-07976
Copyright, Insurance Services Office, Inc. 2000
5/25/2018 3:16 PM
ELECTRONICALLY FILED



**ACE American Insurance Company**
436 Walnut Street
Philadelphia PA 19106

# Commercial General Liability Declarations

**POLICY NUMBER:** HDO G27327254

## SCHEDULE OF NOTICES

| Form No. | Description |
|---|---|
| ALL23445b0713 | Policyholder Notice Commercial Lines Deregulation New York |
| ALL208871006 | ACE Producer Compensation Practices & Policies |
| ALL223680607 | Colorado Fraud Statement |
| ILN1760112 | Delaware Notice To Policyholders Regarding The Civil Union And Equality Act |
| ALL8Z4172000 | Georgia Notice |
| ILN1751111 | Illinois Notice To Policyholders Regarding The Religious Freedom Protection And Civil Union Act |
| ALL7X47a0206 | Important Information To Virginia Policyholders Regarding Your Insurance |
| ALL2Y81 | Indiana Notice To Policyholders |
| ALL4Y30e0713 | Information And Complaints |
| ALL2U78b0206 | Notice To All Oklahoma Policyholders |
| ALL398220413 | Notice To Our Florida Property And Casualty Policyholders Guidelines For Loss Control Plans |
| ALL5S540792 | Notice To Pennsylvania Property And Casualty Insurance Policyholders |
| ALL5W060795 | Policyholder Notice - Ohio |
| ALL18653c0512 | Questions About Your Insurance? |
| ALL5X451196 | Questions About Your Insurance? |
| ALL11559d1007 | Risk Control Services For Texas Policyholders |
| ILP0010104 | U.S. Treasury Department's Office Of Foreign Assets Control ("OFAC") Advisory Notice To Policyholders |
| ALL5X51a0206 | Wisconsin Notice To Policyholders |

## SCHEDULE OF COVERAGE FORMS

| Form No. | Description |
|---|---|
| CG00010413 | Commercial General Liability Coverage Form |
| IL00171198 | Common Policy Conditions |

## SCHEDULE OF ENDORSEMENTS

| Endt. No. | Form No. | Description |
|---|---|---|
| 1 | CG20120413 | Additional Insured – State Or Governmental Agency Or Subdivision Or Political Subdivision – Permits Or Authorizations |
| 2 | CG20370413 | Additional Insured – Owners, Lessees Or Contractors – Completed Operations |
| 3 | CG20370413 | Additional Insured – Owners, Lessees Or Contractors – Completed Operations |

PAGE 4 of 27
2018-CH-07976
ELECTRONICALLY FILED

LD-25211 (10/08)          Copyright, Insurance Services Office, Inc. 2000          Page 3 of 9



ACE American Insurance Company
436 Walnut Street
Philadelphia PA 19106

# Commercial General Liability Declarations

**POLICY NUMBER:** HDO G27327254

| Endt. No. | Form No. | Description |
|---|---|---|
| 4 | CG20100413 | Additional Insured – Owners, Lessees Or Contractors – Scheduled Person Or Organization |
| 5 | CG20100413 | Additional Insured – Owners, Lessees Or Contractors – Scheduled Person Or Organization |
| 6 | CG20100413 | Additional Insured – Owners, Lessees Or Contractors – Scheduled Person Or Organization |
| 7 | CG20100413 | Additional Insured – Owners, Lessees Or Contractors – Scheduled Person Or Organization |
| 8 | CG20100413 | Additional Insured – Owners, Lessees Or Contractors – Scheduled Person Or Organization |
| 9 | CG20100413 | Additional Insured – Owners, Lessees Or Contractors – Scheduled Person Or Organization |
| 10 | CG20100413 | Additional Insured – Owners, Lessees Or Contractors – Scheduled Person Or Organization |
| 11 | CG20100413 | Additional Insured – Owners, Lessees Or Contractors – Scheduled Person Or Organization |
| 12 | CG20100413 | Additional Insured – Owners, Lessees Or Contractors – Scheduled Person Or Organization |
| 13 | CG20100413 | Additional Insured – Owners, Lessees Or Contractors – Scheduled Person Or Organization |
| 14 | CG20100413 | Additional Insured – Owners, Lessees Or Contractors – Scheduled Person Or Organization |
| 15 | CG20100413 | Additional Insured – Owners, Lessees Or Contractors – Scheduled Person Or Organization |
| 16 | CG24040509 | Waiver Of Transfer Of Rights Of Recovery Against Others To Us |
| 17 | CG24040509 | Waiver Of Transfer Of Rights Of Recovery Against Others To Us |
| 18 | CG24040509 | Waiver Of Transfer Of Rights Of Recovery Against Others To Us |
| 19 | CG24040509 | Waiver Of Transfer Of Rights Of Recovery Against Others To Us |
| 20 | CG24040509 | Waiver Of Transfer Of Rights Of Recovery Against Others To Us |
| 21 | MS252661013 | Designated Location(s) Sub-Limit |
| 22 | ALL326860111 | Notice To Others Endorsement – Schedule Notice By Insured's Representative |
| 23 | ALL326880111 | Notice To Others Endorsement - Specific Parties |
| 24 | CG20110413 | Additional Insured – Managers Or Lessors Of Premises |
| 25 | CG20180413 | Additional Insured – Mortgagee, Assignee Or Receiver |
| 26 | CG20330413 | Additional Insured – Owners, Lessees Or Contractors – Automatic Status When Required In Construction Agreement With You |
| 27 | CG20100413 | Additional Insured – Owners, Lessees Or Contractors – Scheduled Person Or Organization |
| 28 | CG20100413 | Additional Insured – Owners, Lessees Or Contractors – Scheduled Person Or Organization |

LD-25211 (10/08)          Copyright, Insurance Services Office, Inc. 2000          Page 4 of 9



ACE American Insurance Company
436 Walnut Street
Philadelphia PA 19106

# Commercial General Liability Declarations

**POLICY NUMBER:** HDO G27327254

| Endt. No. | Form No. | Description |
|---|---|---|
| 29 | CG20100413 | Additional Insured – Owners, Lessees Or Contractors – Scheduled Person Or Organization |
| 30 | CG20370413 | Additional Insured – Owners, Lessees Or Contractors – Completed Operations |
| 31 | CG20370413 | Additional Insured – Owners, Lessees Or Contractors – Completed Operations |
| 32 | CG20370413 | Additional Insured – Owners, Lessees Or Contractors – Completed Operations |
| 33 | ALL32677a0412 | Kentucky Local Government Premium Tax Schedule |
| 34 | ALL224211011 | Surcharge Schedule |
| 35 | CC1K11g0111 | Signatures |
| 36 | LD380430712 | Stop Gap - Employers Liability Coverage Endorsement- Puerto Rico Supplementary Payments Included in the Deductible Amount |
| 37 | LD342791011 | ACE GPS ᔚᴹ Global Program Solutions Endorsement (Non-Admitted Eliminated) |
| 38 | LD217300107 | Additional Insured Where Required By Written Contract |
| 39 | LD6X26 | Alienated Premises |
| 40 | LD202830606 | Amendment Of Duties In The Event Of Occurrence |
| 41 | LD246700308 | Clubs |
| 42 | ALL18845c0612 | Difference In Conditions/Difference In Limits |
| 43 | LD342511011 | Employee Benefits Liability Coverage Supplementary Payments Included In The Deductible Amount |
| 44 | LD3R160387 | Exclusion - Asbestos |
| 45 | LD5T99 | Extended Property Damage |
| 46 | LD5T92 | Fellow Employee Coverage |
| 47 | LD3T73 | Fire, Explosion, Smoke And Water Damage Legal Liability |
| 48 | LD200360206 | Incidental Medical Malpractice Liability Coverage |
| 49 | LD2X61 | Knowledge Of Occurrence |
| 50 | LD200330206 | Limited Discrimination Coverage |
| 51 | LD200380206 | Mental Injury Coverage |
| 52 | LD202870606 | Non-Contributory Endorsement For Additional Insureds |
| 53 | LD5T98 | Nonowned Watercraft Exception |
| 54 | ALL180571211 | Notification Of Premium Adjustment |
| 55 | LD12988a0804 | Pollution Exclusion - Combination Exception Time Element And Named Perils |
| 56 | LD7X820697 | Pollution Exclusion – Exception For Building Heating Equipment |
| 57 | LD6575a797 | Pollution Exclusion – Hostile Fire Exception |
| 58 | ALL218580207 | Port Authority Of New York And New Jersey |
| 59 | LD19644e0909 | Reimbursement Of Deductible Endorsement Allocated Loss Adjustment Expense ("ALAE") Included In The Deductible Amount |

Copyright, Insurance Services Office, Inc. 2000

2018-CH-07976
ELECTRONICALLY FILED
9/6/2018 3:19 PM



ACE American Insurance Company
436 Walnut Street
Philadelphia PA 19106

# Commercial General Liability Declarations

**POLICY NUMBER:** HDO G27327254

| Endt. No. | Form No. | Description |
|---|---|---|
| 60 | ALL211011106 | Trade Or Economic Sanctions Endorsement |
| 61 | LD2X62a0408 | Unintentional Failure To Disclose |
| 62 | MS257721113 | Breach of Warranty |
| 63 | MS257731113 | Professional Services Liability Exclusion - Exception for Resulting Bodily Injury and Property Damage, Personal & Advertising Injury |
| 64 | MS257491113 | Schedule of Named Insureds |
| 65 | IL09850108 | Disclosure Pursuant To Terrorism Risk Insurance Act |
| 66 | IL00210908 | Nuclear Energy Liability Exclusion Endorsement (Broad Form) |
| 67 | CG20260413 | Additional Insured – Designated Person Or Organization |
| 68 | CG20280413 | Additional Insured – Lessor Of Leased Equipment |
| 69 | CG20370413 | Additional Insured – Owners, Lessees Or Contractors – Completed Operations |
| 70 | CG20100413 | Additional Insured – Owners, Lessees Or Contractors – Scheduled Person Or Organization |
| 71 | CG20100413 | Additional Insured – Owners, Lessees Or Contractors – Scheduled Person Or Organization |
| 72 | CG20100413 | Additional Insured – Owners, Lessees Or Contractors – Scheduled Person Or Organization |
| 73 | CG20100413 | Additional Insured – Owners, Lessees Or Contractors – Scheduled Person Or Organization |
| 74 | CG24220413 | Amendment Of Coverage Territory – Worldwide Coverage |
| 75 | CG21510413 | Amendment Of Liquor Liability Exclusion – Exception For Scheduled Premises Or Activities |
| 76 | CG21700108 | Cap On Losses From Certified Acts Of Terrorism |
| 77 | CG24171001 | Contractual Liability – Railroads |
| 78 | CG04241093 | Coverage For Injury To Leased Workers |
| 79 | CG02241093 | Earlier Notice Of Cancellation Provided By Us |
| 80 | CG21471207 | Employment-Related Practices Exclusion |
| 81 | CG22741001 | Limited Contractual Liability Coverage For Personal And Advertising Injury |
| 82 | CG24040509 | Waiver Of Transfer Of Rights Of Recovery Against Others To Us |
| 83 | LD316620811 | Vermont Changes - Pollution |
| 84 | IL02580112 | Arizona Changes - Cancellation And Nonrenewal |
| 85 | CG32340105 | California Changes |
| 86 | IL01251113 | Colorado Changes – Civil Union |
| 87 | CG02200312 | Florida Changes - Cancellation And Nonrenewal |
| 88 | CG02001207 | Illinois Changes - Cancellation And Nonrenewal |
| 89 | IL01621013 | Illinois Changes – Defense Costs |
| 90 | CG01230397 | Indiana Changes - Pollution Exclusion |



ACE American Insurance Company
436 Walnut Street
Philadelphia PA 19106

# Commercial General Liability Declarations

**POLICY NUMBER:** HDO G27327254

| Endt. No. | Form No. | Description |
|---|---|---|
| 91 | CG01091185 | Kansas And Oklahoma Changes - Transfer Of Rights |
| 92 | IL02610907 | Kansas Changes - Cancellation And Nonrenewal |
| 93 | CG01250303 | Louisiana Changes - Insuring Agreement |
| 94 | CG01181204 | Louisiana Changes - Legal Action Against Us |
| 95 | CG26841204 | Louisiana Changes - Transfer Of Rights Of Recovery Against Others To Us Condition |
| 96 | CG02011009 | Maryland Changes |
| 97 | CG26731204 | Maryland Changes - Premium Audit Condition |
| 98 | CG01681009 | Michigan Changes |
| 99 | CG26050207 | Minnesota Changes |
| 100 | CG01221207 | Minnesota Changes - Contractual Liability Exclusion And Supplementary Payments |
| 101 | CG26811204 | Minnesota Changes - Duties Condition |
| 102 | IL02740908 | Missouri Changes - Cancellation And Nonrenewal |
| 103 | CG26250405 | Missouri Changes - Guaranty Association |
| 104 | CG26500413 | Missouri Changes – Medical Payments |
| 105 | CG01340803 | Missouri Changes - Pollution Exclusion |
| 106 | IL02590907 | Nebraska Changes - Cancellation And Nonrenewal |
| 107 | CG01121108 | New Hampshire Changes |
| 108 | CG26551108 | New Hampshire Changes - Amendment Of Representations Condition |
| 109 | CG26201093 | New Jersey Changes - Loss Information |
| 110 | IL02980908 | New Mexico Changes - Cancellation And Nonrenewal |
| 111 | IL02680111 | New York Changes - Cancellation And Nonrenewal |
| 112 | CG01630711 | New York Changes - Commercial General Liability Coverage Form |
| 113 | CG01041204 | New York Changes - Premium Audit |
| 114 | CG26211091 | New York Changes - Transfer Of Duties When A Limit Of Insurance Is Used Up |
| 115 | IL02690908 | North Carolina Changes - Cancellation And Nonrenewal |
| 116 | IL01201013 | Pennsylvania Changes – Defense Costs |
| 117 | IL02730110 | Rhode Island Changes - Cancellation And Nonrenewal |
| 118 | CG01030606 | Texas Changes |
| 119 | IL02751113 | Texas Changes – Cancellation And Nonrenewal Provisions For Casualty Lines And Commercial Package Policies |
| 120 | CG01861204 | Utah Changes |
| 121 | CG01790710 | Virginia Changes |
| 122 | CG01810508 | Washington Changes |
| 123 | IL01231113 | Washington Changes – Defense Costs |
| 124 | CG01240193 | Wisconsin Changes – Amendment Of Policy Conditions |

PAGE 8 of 177
2018-CH-07976
ELECTRONICALLY FILED

 **ACE American Insurance Company**
436 Walnut Street
Philadelphia PA 19106

# Commercial General Liability Declarations

**POLICY NUMBER:** HDO G27327254

| Endt. No. | Form No. | Description |
|---|---|---|
| 125 | IL02700811 | California Changes - Cancellation And Nonrenewal |
| 126 | IL02280907 | Colorado Changes - Cancellation And Nonrenewal |
| 127 | IL02600210 | Connecticut Changes - Cancellation And Nonrenewal |
| 128 | IL01400908 | Connecticut Changes - Civil Union |
| 129 | IL01510112 | Delaware Changes - Civil Union |
| 130 | IL02370412 | Delaware Changes - Termination Provisions |
| 131 | IL02620908 | Georgia Changes - Cancellation And Nonrenewal |
| 132 | IL01470911 | Illinois Changes - Civil Union |
| 133 | IL01580908 | Indiana Changes |
| 134 | IL02720907 | Indiana Changes - Cancellation And Nonrenewal |
| 135 | IL01171210 | Indiana Changes - Workers' Compensation Exclusion |
| 136 | IL09130498 | Insurance Inspection Services Exemption From Liability |
| 137 | IL02760908 | Iowa Changes - Cancellation And Nonrenewal |
| 138 | IL02630908 | Kentucky Changes - Cancellation And Nonrenewal |
| 139 | IL02770312 | Louisiana Changes - Cancellation And Nonrenewal |
| 140 | IL02470211 | Maine Changes - Cancellation And Nonrenewal |
| 141 | IL02860908 | Michigan Changes - Cancellation And Nonrenewal |
| 142 | IL02450908 | Minnesota Changes - Cancellation And Nonrenewal |
| 143 | IL02820908 | Mississippi Changes - Cancellation And Nonrenewal |
| 144 | IL02510907 | Nevada Changes - Cancellation And Nonrenewal |
| 145 | IL01150110 | Nevada Changes - Domestic Partnership |
| 146 | IL01350908 | New Hampshire Changes - Cancellation And Nonrenewal |
| 147 | IL01450908 | New Hampshire Changes - Civil Union |
| 148 | IL02080907 | New Jersey Changes - Cancellation And Nonrenewal |
| 149 | IL01410908 | New Jersey Changes - Civil Union |
| 150 | IL02440907 | Ohio Changes - Cancellation And Nonrenewal |
| 151 | IL02360907 | Oklahoma Changes - Cancellation And Nonrenewal |
| 152 | IL02790908 | Oregon Changes - Cancellation And Nonrenewal |
| 153 | IL01420908 | Oregon Changes - Domestic Partnership |
| 154 | IL02460907 | Pennsylvania Changes - Cancellation And Nonrenewal |
| 155 | IL01970908 | Rhode Island Changes |
| 156 | IL01610312 | Rhode Island Changes - Civil Union |
| 157 | IL01280908 | Rhode Island Changes - Prejudgment Interest |
| 158 | IL02490908 | South Carolina Changes - Cancellation And Nonrenewal |
| 159 | IL02500908 | Tennessee Changes - Cancellation And Nonrenewal |
| 160 | IL01680908 | Texas Changes - Duties |
| 161 | IL02660908 | Utah Changes - Cancellation And Nonrenewal |

PAGE 9 of 27
2018-CH-07976
08/25/2018 8:14 PM
ELECTRONICALLY FILED



**ACE American Insurance Company**
436 Walnut Street
Philadelphia PA 19106

# Commercial General Liability Declarations

**POLICY NUMBER:** HDO G27327254

| Endt. No. | Form No. | Description |
|---|---|---|
| 162 | IL02190908 | Vermont Changes - Cancellation And Nonrenewal |
| 163 | IL01090908 | Vermont Changes - Civil Union |
| 164 | IL01260908 | Vermont Changes - Statutory Liability |
| 165 | IL01381111 | Virginia Changes - Cancellation And Nonrenewal |
| 166 | IL02830907 | Wisconsin Changes - Cancellation And Nonrenewal |

PAGE 10 of 27
2018-CH-07976
ELECTRONICALLY FILED

POLICY NUMBER: HDO G27327254

COMMERCIAL GENERAL LIABILITY
CG 00 01 04 13

# COMMERCIAL GENERAL LIABILITY COVERAGE FORM

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy. The words "we", "us" and "our" refer to the company providing this insurance.

The word "insured" means any person or organization qualifying as such under Section II – Who Is An Insured.

Other words and phrases that appear in quotation marks have special meaning. Refer to Section V – Definitions.

## SECTION I – COVERAGES

### COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY

**1. Insuring Agreement**

a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

(1) The amount we will pay for damages is limited as described in Section III – Limits Of Insurance; and

(2) Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages A or B or medical expenses under Coverage C.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages A and B.

b. This insurance applies to "bodily injury" and "property damage" only if:

(1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

(2) The "bodily injury" or "property damage" occurs during the policy period; and

(3) Prior to the policy period, no insured listed under Paragraph 1. of Section II – Who Is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.

c. "Bodily injury" or "property damage" which occurs during the policy period and was not, prior to the policy period, known to have occurred by any insured listed under Paragraph 1. of Section II – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim, includes any continuation, change or resumption of that "bodily injury" or "property damage" after the end of the policy period.

d. "Bodily injury" or "property damage" will be deemed to have been known to have occurred at the earliest time when any insured listed under Paragraph 1. of Section II – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim:

(1) Reports all, or any part, of the "bodily injury" or "property damage" to us or any other insurer;

(2) Receives a written or verbal demand or claim for damages because of the "bodily injury" or "property damage"; or

(3) Becomes aware by any other means that "bodily injury" or "property damage" has occurred or has begun to occur.

e. Damages because of "bodily injury" include damages claimed by any person or organization for care, loss of services or death resulting at any time from the "bodily injury".

PAGE 11 of 27
2018-CH-07976
© Insurance Services Office, Inc., 2012
ELECTRONICALLY FILED

## 2. Exclusions

This insurance does not apply to:

### a. Expected Or Intended Injury

"Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

### b. Contractual Liability

"Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

(1) That the insured would have in the absence of the contract or agreement; or

(2) Assumed in a contract or agreement that is an "insured contract", provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement. Solely for the purposes of liability assumed in an "insured contract", reasonable attorneys' fees and necessary litigation expenses incurred by or for a party other than an insured are deemed to be damages because of "bodily injury" or "property damage", provided:

    (a) Liability to such party for, or for the cost of, that party's defense has also been assumed in the same "insured contract"; and

    (b) Such attorneys' fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged.

### c. Liquor Liability

"Bodily injury" or "property damage" for which any insured may be held liable by reason of:

(1) Causing or contributing to the intoxication of any person;

(2) The furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or

(3) Any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in:

    (a) The supervision, hiring, employment, training or monitoring of others by that insured; or

    (b) Providing or failing to provide transportation with respect to any person that may be under the influence of alcohol;

if the "occurrence" which caused the "bodily injury" or "property damage", involved that which is described in Paragraph (1), (2) or (3) above.

However, this exclusion applies only if you are in the business of manufacturing, distributing, selling, serving or furnishing alcoholic beverages. For the purposes of this exclusion, permitting a person to bring alcoholic beverages on your premises, for consumption on your premises, whether or not a fee is charged or a license is required for such activity, is not by itself considered the business of selling, serving or furnishing alcoholic beverages.

### d. Workers' Compensation And Similar Laws

Any obligation of the insured under a workers' compensation, disability benefits or unemployment compensation law or any similar law.

### e. Employer's Liability

"Bodily injury" to:

(1) An "employee" of the insured arising out of and in the course of:

    (a) Employment by the insured; or

    (b) Performing duties related to the conduct of the insured's business; or

(2) The spouse, child, parent, brother or sister of that "employee" as a consequence of Paragraph (1) above.

This exclusion applies whether the insured may be liable as an employer or in any other capacity and to any obligation to share damages with or repay someone else who must pay damages because of the injury.

This exclusion does not apply to liability assumed by the insured under an "insured contract".

ELECTRONICALLY FILED
2018-CH-07976
PAGE 12 of 27

© Insurance Services Office, Inc., 2012

CG 00 01 04 13

**f. Pollution**

(1) "Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants":

(a) At or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any insured. However, this subparagraph does not apply to:

(i) "Bodily injury" if sustained within a building and caused by smoke, fumes, vapor or soot produced by or originating from equipment that is used to heat, cool or dehumidify the building, or equipment that is used to heat water for personal use, by the building's occupants or their guests;

(ii) "Bodily injury" or "property damage" for which you may be held liable, if you are a contractor and the owner or lessee of such premises, site or location has been added to your policy as an additional insured with respect to your ongoing operations performed for that additional insured at that premises, site or location and such premises, site or location is not and never was owned or occupied by, or rented or loaned to, any insured, other than that additional insured; or

(iii) "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire";

(b) At or from any premises, site or location which is or was at any time used by or for any insured or others for the handling, storage, disposal, processing or treatment of waste;

(c) Which are or were at any time transported, handled, stored, treated, disposed of, or processed as waste by or for:

(i) Any insured; or

(ii) Any person or organization for whom you may be legally responsible; or

(d) At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the "pollutants" are brought on or to the premises, site or location in connection with such operations by such insured, contractor or subcontractor. However, this subparagraph does not apply to:

(i) "Bodily injury" or "property damage" arising out of the escape of fuels, lubricants or other operating fluids which are needed to perform the normal electrical, hydraulic or mechanical functions necessary for the operation of "mobile equipment" or its parts, if such fuels, lubricants or other operating fluids escape from a vehicle part designed to hold, store or receive them. This exception does not apply if the "bodily injury" or "property damage" arises out of the intentional discharge, dispersal or release of the fuels, lubricants or other operating fluids, or if such fuels, lubricants or other operating fluids are brought on or to the premises, site or location with the intent that they be discharged, dispersed or released as part of the operations being performed by such insured, contractor or subcontractor;

(ii) "Bodily injury" or "property damage" sustained within a building and caused by the release of gases, fumes or vapors from materials brought into that building in connection with operations being performed by you or on your behalf by a contractor or subcontractor; or

(iii) "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire".

(e) At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the operations are to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants".

PAGE 13 of 27
2018-CH-07976
© Insurance Services Office, Inc., 2012
ELECTRONICALLY FILED

© Insurance Services Office, Inc., 2012

(2) Any loss, cost or expense arising out of any:

  (a) Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

  (b) Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

However, this paragraph does not apply to liability for damages because of "property damage" that the insured would have in the absence of such request, demand, order or statutory or regulatory requirement, or such claim or "suit" by or on behalf of a governmental authority.

**g. Aircraft, Auto Or Watercraft**

"Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft owned or operated by or rented or loaned to any insured. Use includes operation and "loading or unloading".

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury" or "property damage" involved the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft that is owned or operated by or rented or loaned to any insured.

This exclusion does not apply to:

(1) A watercraft while ashore on premises you own or rent;

(2) A watercraft you do not own that is:

  (a) Less than 26 feet long; and

  (b) Not being used to carry persons or property for a charge;

(3) Parking an "auto" on, or on the ways next to, premises you own or rent, provided the "auto" is not owned by or rented or loaned to you or the insured;

(4) Liability assumed under any "insured contract" for the ownership, maintenance or use of aircraft or watercraft; or

(5) "Bodily injury" or "property damage" arising out of:

  (a) The operation of machinery or equipment that is attached to, or part of, a land vehicle that would qualify under the definition of "mobile equipment" if it were not subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged; or

  (b) The operation of any of the machinery or equipment listed in Paragraph f.(2) or f.(3) of the definition of "mobile equipment".

**h. Mobile Equipment**

"Bodily injury" or "property damage" arising out of:

(1) The transportation of "mobile equipment" by an "auto" owned or operated by or rented or loaned to any insured; or

(2) The use of "mobile equipment" in, or while in practice for, or while being prepared for, any prearranged racing, speed, demolition, or stunting activity.

**i. War**

"Bodily injury" or "property damage", however caused, arising, directly or indirectly, out of:

(1) War, including undeclared or civil war;

(2) Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

(3) Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

**j. Damage To Property**

"Property damage" to:

(1) Property you own, rent, or occupy, including any costs or expenses incurred by you, or any other person, organization or entity, for repair, replacement, enhancement, restoration or maintenance of such property for any reason, including prevention of injury to a person or damage to another's property;

(2) Premises you sell, give away or abandon, if the "property damage" arises out of any part of those premises;

(3) Property loaned to you;

PAGE 14 of 27
2018-CH-07976
© Insurance Services Office, Inc., 2012
ELECTRONICALLY FILED

CG 00 01 04 13

(4) Personal property in the care, custody or control of the insured;

(5) That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or

(6) That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

Paragraphs (1), (3) and (4) of this exclusion do not apply to "property damage" (other than damage by fire) to premises, including the contents of such premises, rented to you for a period of seven or fewer consecutive days. A separate limit of insurance applies to Damage To Premises Rented To You as described in Section III – Limits Of Insurance.

Paragraph (2) of this exclusion does not apply if the premises are "your work" and were never occupied, rented or held for rental by you.

Paragraphs (3), (4), (5) and (6) of this exclusion do not apply to liability assumed under a sidetrack agreement.

Paragraph (6) of this exclusion does not apply to "property damage" included in the "products-completed operations hazard".

k. **Damage To Your Product**

"Property damage" to "your product" arising out of it or any part of it.

l. **Damage To Your Work**

"Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard".

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

m. **Damage To Impaired Property Or Property Not Physically Injured**

"Property damage" to "impaired property" or property that has not been physically injured, arising out of:

(1) A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or

(2) A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

n. **Recall Of Products, Work Or Impaired Property**

Damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

(1) "Your product";

(2) "Your work"; or

(3) "Impaired property";

if such product, work, or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

o. **Personal And Advertising Injury**

"Bodily injury" arising out of "personal and advertising injury".

p. **Electronic Data**

Damages arising out of the loss of, loss of use of, damage to, corruption of, inability to access, or inability to manipulate electronic data.

However, this exclusion does not apply to liability for damages because of "bodily injury".

As used in this exclusion, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMs, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

q. **Recording And Distribution Of Material Or Information In Violation Of Law**

"Bodily injury" or "property damage" arising directly or indirectly out of any action or omission that violates or is alleged to violate:

(1) The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law;

(2) The CAN-SPAM Act of 2003, including any amendment of or addition to such law;

(3) The Fair Credit Reporting Act (FCRA), and any amendment of or addition to such law, including the Fair and Accurate Credit Transactions Act (FACTA); or

PAGE 15 of 27
2018-CH-07976
ELECTRONICALLY FILED

© Insurance Services Office, Inc., 2012

(4) Any federal, state or local statute, ordinance or regulation, other than the TCPA, CAN-SPAM Act of 2003 or FCRA and their amendments and additions, that addresses, prohibits, or limits the printing, dissemination, disposal, collecting, recording, sending, transmitting, communicating or distribution of material or information.

Exclusions c. through n. do not apply to damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner. A separate limit of insurance applies to this coverage as described in Section III – Limits Of Insurance.

**COVERAGE B – PERSONAL AND ADVERTISING INJURY LIABILITY**

**1. Insuring Agreement**

**a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "personal and advertising injury" to which this insurance does not apply. We may, at our discretion, investigate any offense and settle any claim or "suit" that may result. But:

(1) The amount we will pay for damages is limited as described in Section III – Limits Of Insurance; and

(2) Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages A or B or medical expenses under Coverage C.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages A and B.

**b.** This insurance applies to "personal and advertising injury" caused by an offense arising out of your business but only if the offense was committed in the "coverage territory" during the policy period.

**2. Exclusions**

This insurance does not apply to:

**a. Knowing Violation Of Rights Of Another**

"Personal and advertising injury" caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict "personal and advertising injury".

**b. Material Published With Knowledge Of Falsity**

"Personal and advertising injury" arising out of oral or written publication, in any manner, of material, if done by or at the direction of the insured with knowledge of its falsity.

**c. Material Published Prior To Policy Period**

"Personal and advertising injury" arising out of oral or written publication, in any manner, of material whose first publication took place before the beginning of the policy period.

**d. Criminal Acts**

"Personal and advertising injury" arising out of a criminal act committed by or at the direction of the insured.

**e. Contractual Liability**

"Personal and advertising injury" for which the insured has assumed liability in a contract or agreement. This exclusion does not apply to liability for damages that the insured would have in the absence of the contract or agreement.

**f. Breach Of Contract**

"Personal and advertising injury" arising out of a breach of contract, except an implied contract to use another's advertising idea in your "advertisement".

**g. Quality Or Performance Of Goods – Failure To Conform To Statements**

"Personal and advertising injury" arising out of the failure of goods, products or services to conform with any statement of quality or performance made in your "advertisement".

**h. Wrong Description Of Prices**

"Personal and advertising injury" arising out of the wrong description of the price of goods, products or services stated in your "advertisement".

PAGE 16 of 27
2018-CH-07976
© Insurance Services Office, Inc., 2012
ELECTRONICALLY FILED

CG 00 01 04 13

**i. Infringement Of Copyright, Patent, Trademark Or Trade Secret**

"Personal and advertising injury" arising out of the infringement of copyright, patent, trademark, trade secret or other intellectual property rights. Under this exclusion, such other intellectual property rights do not include the use of another's advertising idea in your "advertisement".

However, this exclusion does not apply to infringement, in your "advertisement", of copyright, trade dress or slogan.

**j. Insureds In Media And Internet Type Businesses**

"Personal and advertising injury" committed by an insured whose business is:

(1) Advertising, broadcasting, publishing or telecasting;

(2) Designing or determining content of web sites for others; or

(3) An Internet search, access, content or service provider.

However, this exclusion does not apply to Paragraphs 14.a., b. and c. of "personal and advertising injury" under the Definitions section.

For the purposes of this exclusion, the placing of frames, borders or links, or advertising, for you or others anywhere on the Internet, is not by itself, considered the business of advertising, broadcasting, publishing or telecasting.

**k. Electronic Chatrooms Or Bulletin Boards**

"Personal and advertising injury" arising out of an electronic chatroom or bulletin board the insured hosts, owns, or over which the insured exercises control.

**l. Unauthorized Use Of Another's Name Or Product**

"Personal and advertising injury" arising out of the unauthorized use of another's name or product in your e-mail address, domain name or metatag, or any other similar tactics to mislead another's potential customers.

**m. Pollution**

"Personal and advertising injury" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time.

**n. Pollution-related**

Any loss, cost or expense arising out of any:

(1) Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

(2) Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

**o. War**

"Personal and advertising injury", however caused, arising, directly or indirectly, out of:

(1) War, including undeclared or civil war;

(2) Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

(3) Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

**p. Recording And Distribution Of Material Or Information In Violation Of Law**

"Personal and advertising injury" arising directly or indirectly out of any action or omission that violates or is alleged to violate:

(1) The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law;

(2) The CAN-SPAM Act of 2003, including any amendment of or addition to such law;

(3) The Fair Credit Reporting Act (FCRA), and any amendment of or addition to such law, including the Fair and Accurate Credit Transactions Act (FACTA); or

(4) Any federal, state or local statute, ordinance or regulation, other than the TCPA, CAN-SPAM Act of 2003 or FCRA and their amendments and additions, that addresses, prohibits, or limits the printing, dissemination, disposal, collecting, recording, sending, transmitting, communicating or distribution of material or information.

PAGE 17 of 27
2018-CH-07976
© Insurance Services Office, Inc., 2012
ELECTRONICALLY FILED

CG 00 01 04 13

**COVERAGE C – MEDICAL PAYMENTS**

**1. Insuring Agreement**

**a.** We will pay medical expenses as described below for "bodily injury" caused by an accident:

(1) On premises you own or rent;

(2) On ways next to premises you own or rent; or

(3) Because of your operations;

provided that:

(a) The accident takes place in the "coverage territory" and during the policy period;

(b) The expenses are incurred and reported to us within one year of the date of the accident; and

(c) The injured person submits to examination, at our expense, by physicians of our choice as often as we reasonably require.

**b.** We will make these payments regardless of fault. These payments will not exceed the applicable limit of insurance. We will pay reasonable expenses for:

(1) First aid administered at the time of an accident;

(2) Necessary medical, surgical, X-ray and dental services, including prosthetic devices; and

(3) Necessary ambulance, hospital, professional nursing and funeral services.

**2. Exclusions**

We will not pay expenses for "bodily injury":

**a. Any Insured**

To any insured, except "volunteer workers".

**b. Hired Person**

To a person hired to do work for or on behalf of any insured or a tenant of any insured.

**c. Injury On Normally Occupied Premises**

To a person injured on that part of premises you own or rent that the person normally occupies.

**d. Workers' Compensation And Similar Laws**

To a person, whether or not an "employee" of any insured, if benefits for the "bodily injury" are payable or must be provided under a workers' compensation or disability benefits law or a similar law.

**e. Athletics Activities**

To a person injured while practicing, instructing or participating in any physical exercises or games, sports, or athletic contests.

**f. Products-Completed Operations Hazard**

Included within the "products-completed operations hazard".

**g. Coverage A Exclusions**

Excluded under Coverage A.

**SUPPLEMENTARY PAYMENTS – COVERAGES A AND B**

1. We will pay, with respect to any claim we investigate or settle, or any "suit" against an insured we defend:

**a.** All expenses we incur.

**b.** Up to $250 for cost of bail bonds required because of accidents or traffic law violations arising out of the use of any vehicle to which the Bodily Injury Liability Coverage applies. We do not have to furnish these bonds.

**c.** The cost of bonds to release attachments, but only for bond amounts within the applicable limit of insurance. We do not have to furnish these bonds.

**d.** All reasonable expenses incurred by the insured at our request to assist us in the investigation or defense of the claim or "suit", including actual loss of earnings up to $250 a day because of time off from work.

**e.** All court costs taxed against the insured in the "suit". However, these payments do not include attorneys' fees or attorneys' expenses taxed against the insured.

**f.** Prejudgment interest awarded against the insured on that part of the judgment we pay. If we make an offer to pay the applicable limit of insurance, we will not pay any prejudgment interest based on that period of time after the offer.

Page 8 of 16

PAGE 18 of 27
2018-CH-07976
© Insurance Services Office, Inc., 2012
ELECTRONICALLY FILED
4/6/2018 2:12 PM

CG 00 01 04 13

g. All interest on the full amount of any judgment that accrues after entry of the judgment and before we have paid, offered to pay, or deposited in court the part of the judgment that is within the applicable limit of insurance.

These payments will not reduce the limits of insurance.

2. If we defend an insured against a "suit" and an indemnitee of the insured is also named as a party to the "suit", we will defend that indemnitee if all of the following conditions are met:

a. The "suit" against the indemnitee seeks damages for which the insured has assumed the liability of the indemnitee in a contract or agreement that is an "insured contract";

b. This insurance applies to such liability assumed by the insured;

c. The obligation to defend, or the cost of the defense of, that indemnitee, has also been assumed by the insured in the same "insured contract";

d. The allegations in the "suit" and the information we know about the "occurrence" are such that no conflict appears to exist between the interests of the insured and the interests of the indemnitee;

e. The indemnitee and the insured ask us to conduct and control the defense of that indemnitee against such "suit" and agree that we can assign the same counsel to defend the insured and the indemnitee; and

f. The indemnitee:

(1) Agrees in writing to:

(a) Cooperate with us in the investigation, settlement or defense of the "suit";

(b) Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the "suit";

(c) Notify any other insurer whose coverage is available to the indemnitee; and

(d) Cooperate with us with respect to coordinating other applicable insurance available to the indemnitee; and

(2) Provides us with written authorization to:

(a) Obtain records and other information related to the "suit"; and

(b) Conduct and control the defense of the indemnitee in such "suit".

So long as the above conditions are met, attorneys' fees incurred by us in the defense of that indemnitee, necessary litigation expenses incurred by us and necessary litigation expenses incurred by the indemnitee at our request will be paid as Supplementary Payments. Notwithstanding the provisions of Paragraph **2.b.(2)** of Section I – Coverage A – Bodily Injury And Property Damage Liability, such payments will not be deemed to be damages for "bodily injury" and "property damage" and will not reduce the limits of insurance.

Our obligation to defend an insured's indemnitee and to pay for attorneys' fees and necessary litigation expenses as Supplementary Payments ends when we have used up the applicable limit of insurance in the payment of judgments or settlements or the conditions set forth above, or the terms of the agreement described in Paragraph f. above, are no longer met.

**SECTION II – WHO IS AN INSURED**

1. If you are designated in the Declarations as:

a. An individual, you and your spouse are insureds, but only with respect to the conduct of a business of which you are the sole owner.

b. A partnership or joint venture, you are an insured. Your members, your partners, and their spouses are also insureds, but only with respect to the conduct of your business.

c. A limited liability company, you are an insured. Your members are also insureds, but only with respect to the conduct of your business. Your managers are insureds, but only with respect to their duties as your managers.

d. An organization other than a partnership, joint venture or limited liability company, you are an insured. Your "executive officers" and directors are insureds, but only with respect to their duties as your officers or directors. Your stockholders are also insureds, but only with respect to their liability as stockholders.

e. A trust, you are an insured. Your trustees are also insureds, but only with respect to their duties as trustees.

PAGE 19 of 27
2018-CH-07976
© Insurance Services Office, Inc., 2012
ELECTRONICALLY FILED
8/3/2018 3:14:53 PM

CG 00 01 04 13

**2.** Each of the following is also an insured:

  **a.** Your "volunteer workers" only while performing duties related to the conduct of your business, or your "employees", other than either your "executive officers" (if you are an organization other than a partnership, joint venture or limited liability company) or your managers (if you are a limited liability company), but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business. However, none of these "employees" or "volunteer workers" are insureds for:

    **(1)** "Bodily injury" or "personal and advertising injury":

      **(a)** To you, to your partners or members (if you are a partnership or joint venture), to your members (if you are a limited liability company), to a co-"employee" while in the course of his or her employment or performing duties related to the conduct of your business, or to your other "volunteer workers" while performing duties related to the conduct of your business;

      **(b)** To the spouse, child, parent, brother or sister of that co-"employee" or "volunteer worker" as a consequence of Paragraph (1)(a) above;

      **(c)** For which there is any obligation to share damages with or repay someone else who must pay damages because of the injury described in Paragraph (1)(a) or (b) above; or

      **(d)** Arising out of his or her providing or failing to provide professional health care services.

    **(2)** "Property damage" to property:

      **(a)** Owned, occupied or used by;

      **(b)** Rented to, in the care, custody or control of, or over which physical control is being exercised for any purpose by;

    you, any of your "employees", "volunteer workers", any partner or member (if you are a partnership or joint venture), or any member (if you are a limited liability company).

  **b.** Any person (other than your "employee" or "volunteer worker"), or any organization while acting as your real estate manager.

  **c.** Any person or organization having proper temporary custody of your property if you die, but only:

    **(1)** With respect to liability arising out of the maintenance or use of that property; and

    **(2)** Until your legal representative has been appointed.

  **d.** Your legal representative if you die, but only with respect to duties as such. That representative will have all your rights and duties under this Coverage Part.

**3.** Any organization you newly acquire or form, other than a partnership, joint venture or limited liability company, and over which you maintain ownership or majority interest, will qualify as a Named Insured if there is no other similar insurance available to that organization. However:

  **a.** Coverage under this provision is afforded only until the 90th day after you acquire or form the organization or the end of the policy period, whichever is earlier;

  **b.** Coverage A does not apply to "bodily injury" or "property damage" that occurred before you acquired or formed the organization; and

  **c.** Coverage B does not apply to "personal and advertising injury" arising out of an offense committed before you acquired or formed the organization.

No person or organization is an insured with respect to the conduct of any current or past partnership, joint venture or limited liability company that is not shown as a Named Insured in the Declarations.

**SECTION III – LIMITS OF INSURANCE**

**1.** The Limits of Insurance shown in the Declarations and the rules below fix the most we will pay regardless of the number of:

  **a.** Insureds;

  **b.** Claims made or "suits" brought; or

  **c.** Persons or organizations making claims or bringing "suits".

**2.** The General Aggregate Limit is the most we will pay for the sum of:

  **a.** Medical expenses under Coverage C;

  **b.** Damages under Coverage A, except damages because of "bodily injury" or "property damage" included in the "products-completed operations hazard"; and

  **c.** Damages under Coverage B.

PAGE 20 of 27
2018-CH-07976
© Insurance Services Office, Inc., 2012
ELECTRONICALLY FILED

**CG 00 01 04 13**

3. The Products-Completed Operations Aggregate Limit is the most we will pay under Coverage A for damages because of "bodily injury" and "property damage" included in the "products-completed operations hazard".

4. Subject to Paragraph 2. above, the Personal And Advertising Injury Limit is the most we will pay under Coverage B for the sum of all damages because of all "personal and advertising injury" sustained by any one person or organization.

5. Subject to Paragraph 2. or 3. above, whichever applies, the Each Occurrence Limit is the most we will pay for the sum of:

   a. Damages under Coverage A; and

   b. Medical expenses under Coverage C

   because of all "bodily injury" and "property damage" arising out of any one "occurrence".

6. Subject to Paragraph 5. above, the Damage To Premises Rented To You Limit is the most we will pay under Coverage A for damages because of "property damage" to any one premises, while rented to you, or in the case of damage by fire, while rented to you or temporarily occupied by you with permission of the owner.

7. Subject to Paragraph 5. above, the Medical Expense Limit is the most we will pay under Coverage C for all medical expenses because of "bodily injury" sustained by any one person.

The Limits of Insurance of this Coverage Part apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations, unless the policy period is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits of Insurance.

**SECTION IV – COMMERCIAL GENERAL LIABILITY CONDITIONS**

1. **Bankruptcy**

   Bankruptcy or insolvency of the insured or of the insured's estate will not relieve us of our obligations under this Coverage Part.

2. **Duties In The Event Of Occurrence, Offense, Claim Or Suit**

   a. You must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim. To the extent possible, notice should include:

      (1) How, when and where the "occurrence" or offense took place;

      (2) The names and addresses of any injured persons and witnesses; and

      (3) The nature and location of any injury or damage arising out of the "occurrence" or offense.

   b. If a claim is made or "suit" is brought against any insured, you must:

      (1) Immediately record the specifics of the claim or "suit" and the date received; and

      (2) Notify us as soon as practicable.

      You must see to it that we receive written notice of the claim or "suit" as soon as practicable.

   c. You and any other involved insured must:

      (1) Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";

      (2) Authorize us to obtain records and other information;

      (3) Cooperate with us in the investigation or settlement of the claim or defense against the "suit"; and

      (4) Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this insurance may also apply.

   d. No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

3. **Legal Action Against Us**

   No person or organization has a right under this Coverage Part:

   a. To join us as a party or otherwise bring us into a "suit" asking for damages from an insured; or

   b. To sue us on this Coverage Part unless all of its terms have been fully complied with.

   A person or organization may sue us to recover on an agreed settlement or on a final judgment against an insured; but we will not be liable for damages that are not payable under the terms of this Coverage Part or that are in excess of the applicable limit of insurance. An agreed settlement means a settlement and release of liability signed by us, the insured and the claimant or the claimant's legal representative.

© Insurance Services Office, Inc., 2012

PAGE 21 of 27
2018-CH-07976
ELECTRONICALLY FILED
8/3/2018 12:08

## 4. Other Insurance

If other valid and collectible insurance is available to the insured for a loss we cover under Coverages A or B of this Coverage Part, our obligations are limited as follows:

### a. Primary Insurance

This insurance is primary except when Paragraph **b.** below applies. If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary. Then, we will share with all that other insurance by the method described in Paragraph **c.** below.

### b. Excess Insurance

(1) This insurance is excess over:

    (a) Any of the other insurance, whether primary, excess, contingent or on any other basis:

        (i) That is Fire, Extended Coverage, Builder's Risk, Installation Risk or similar coverage for "your work";

        (ii) That is Fire insurance for premises rented to you or temporarily occupied by you with permission of the owner;

        (iii) That is insurance purchased by you to cover your liability as a tenant for "property damage" to premises rented to you or temporarily occupied by you with permission of the owner; or

        (iv) If the loss arises out of the maintenance or use of aircraft, "autos" or watercraft to the extent not subject to Exclusion **g.** of Section I – Coverage A – Bodily Injury And Property Damage Liability.

    (b) Any other primary insurance available to you covering liability for damages arising out of the premises or operations, or the products and completed operations, for which you have been added as an additional insured.

(2) When this insurance is excess, we will have no duty under Coverages A or B to defend the insured against any "suit" if any other insurer has a duty to defend the insured against that "suit". If no other insurer defends, we will undertake to do so, but we will be entitled to the insured's rights against all those other insurers.

(3) When this insurance is excess over other insurance, we will pay only our share of the amount of the loss, if any, that exceeds the sum of:

    (a) The total amount that all such other insurance would pay for the loss in the absence of this insurance; and

    (b) The total of all deductible and self-insured amounts under all that other insurance.

(4) We will share the remaining loss, if any, with any other insurance that is not described in this Excess Insurance provision and was not bought specifically to apply in excess of the Limits of Insurance shown in the Declarations of this Coverage Part.

### c. Method Of Sharing

If all of the other insurance permits contribution by equal shares, we will follow this method also. Under this approach each insurer contributes equal amounts until it has paid its applicable limit of insurance or none of the loss remains, whichever comes first.

If any of the other insurance does not permit contribution by equal shares, we will contribute by limits. Under this method, each insurer's share is based on the ratio of its applicable limit of insurance to the total applicable limits of insurance of all insurers.

## 5. Premium Audit

a. We will compute all premiums for this Coverage Part in accordance with our rules and rates.

b. Premium shown in this Coverage Part as advance premium is a deposit premium only. At the close of each audit period we will compute the earned premium for that period and send notice to the first Named Insured. The due date for audit and retrospective premiums is the date shown as the due date on the bill. If the sum of the advance and audit premiums paid for the policy period is greater than the earned premium, we will return the excess to the first Named Insured.

c. The first Named Insured must keep records of the information we need for premium computation, and send us copies at such times as we may request.

## 6. Representations

By accepting this policy, you agree:

a. The statements in the Declarations are accurate and complete;

PAGE 22 of 27
2018-CH-07976
© Insurance Services Office, Inc., 2012
ELECTRONICALLY FILED

CG 00 01 04 13

b. Those statements are based upon representations you made to us; and

c. We have issued this policy in reliance upon your representations.

**7. Separation of Insureds**

Except with respect to the Limits of Insurance, and any rights or duties specifically assigned in this Coverage Part to the first Named Insured, this insurance applies:

a. As if each Named Insured were the only Named Insured; and

b. Separately to each insured against whom claim is made or "suit" is brought.

**8. Transfer Of Rights Of Recovery Against Others To Us**

If the insured has rights to recover all or part of any payment we have made under this Coverage Part, those rights are transferred to us. The insured must do nothing after loss to impair them. At our request, the insured will bring "suit" or transfer those rights to us and help us enforce them.

**9. When We Do Not Renew**

If we decide not to renew this Coverage Part, we will mail or deliver to the first Named Insured shown in the Declarations written notice of the nonrenewal not less than 30 days before the expiration date.

If notice is mailed, proof of mailing will be sufficient proof of notice.

**SECTION V – DEFINITIONS**

1. "Advertisement" means a notice that is broadcast or published to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters. For the purposes of this definition:

a. Notices that are published include material placed on the Internet or on similar electronic means of communication; and

b. Regarding web sites, only that part of a web site that is about your goods, products or services for the purposes of attracting customers or supporters is considered an advertisement.

2. "Auto" means:

a. A land motor vehicle, trailer or semitrailer designed for travel on public roads, including any attached machinery or equipment; or

b. Any other land vehicle that is subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged.

However, "auto" does not include "mobile equipment".

3. "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

4. "Coverage territory" means:

a. The United States of America (including its territories and possessions), Puerto Rico and Canada;

b. International waters or airspace, but only if the injury or damage occurs in the course of travel or transportation between any places included in Paragraph a. above; or

c. All other parts of the world if the injury or damage arises out of:

(1) Goods or products made or sold by you in the territory described in Paragraph a. above;

(2) The activities of a person whose home is in the territory described in Paragraph a. above, but is away for a short time on your business; or

(3) "Personal and advertising injury" offenses that take place through the Internet or similar electronic means of communication;

provided the insured's responsibility to pay damages is determined in a "suit" on the merits, in the territory described in Paragraph a. above or in a settlement we agree to.

5. "Employee" includes a "leased worker". "Employee" does not include a "temporary worker".

6. "Executive officer" means a person holding any of the officer positions created by your charter, constitution, bylaws or any other similar governing document.

7. "Hostile fire" means one which becomes uncontrollable or breaks out from where it was intended to be.

8. "Impaired property" means tangible property, other than "your product" or "your work", that cannot be used or is less useful because:

a. It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or

b. You have failed to fulfill the terms of a contract or agreement;

if such property can be restored to use by the repair, replacement, adjustment or removal of "your product" or "your work" or your fulfilling the terms of the contract or agreement.

 © Insurance Services Office, Inc., 2012

PAGE 23 of 27
2018-CH-07976
ELECTRONICALLY FILED

9. "Insured contract" means:

a. A contract for a lease of premises. However, that portion of the contract for a lease of premises that indemnifies any person or organization for damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner is not an "insured contract";

b. A sidetrack agreement;

c. Any easement or license agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;

d. An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

e. An elevator maintenance agreement;

f. That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

Paragraph f. does not include that part of any contract or agreement:

(1) That indemnifies a railroad for "bodily injury" or "property damage" arising out of construction or demolition operations, within 50 feet of any railroad property and affecting any railroad bridge or trestle, tracks, road-beds, tunnel, underpass or crossing;

(2) That indemnifies an architect, engineer or surveyor for injury or damage arising out of:

(a) Preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; or

(b) Giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage; or

(3) Under which the insured, if an architect, engineer or surveyor, assumes liability for an injury or damage arising out of the insured's rendering or failure to render professional services, including those listed in (2) above and supervisory, inspection, architectural or engineering activities.

10. "Leased worker" means a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm, to perform duties related to the conduct of your business. "Leased worker" does not include a "temporary worker".

11. "Loading or unloading" means the handling of property:

a. After it is moved from the place where it is accepted for movement into or onto an aircraft, watercraft or "auto";

b. While it is in or on an aircraft, watercraft or "auto"; or

c. While it is being moved from an aircraft, watercraft or "auto" to the place where it is finally delivered;

but "loading or unloading" does not include the movement of property by means of a mechanical device, other than a hand truck, that is not attached to the aircraft, watercraft or "auto".

12. "Mobile equipment" means any of the following types of land vehicles, including any attached machinery or equipment:

a. Bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;

b. Vehicles maintained for use solely on or next to premises you own or rent;

c. Vehicles that travel on crawler treads;

d. Vehicles, whether self-propelled or not, maintained primarily to provide mobility to permanently mounted:

(1) Power cranes, shovels, loaders, diggers or drills; or

(2) Road construction or resurfacing equipment such as graders, scrapers or rollers;

e. Vehicles not described in Paragraph a., b., c. or d. above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

(1) Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment; or

(2) Cherry pickers and similar devices used to raise or lower workers;

f. Vehicles not described in Paragraph a., b., c. or d. above maintained primarily for purposes other than the transportation of persons or cargo.

PAGE 24 of 27
2018-CH-07976
© Insurance Services Office, Inc., 2012
ELECTRONICALLY FILED

CG 00 01 04 13

However, self-propelled vehicles with the following types of permanently attached equipment are not "mobile equipment" but will be considered "autos":

(1) Equipment designed primarily for:

(a) Snow removal;

(b) Road maintenance, but not construction or resurfacing; or

(c) Street cleaning;

(2) Cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and

(3) Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment.

However, "mobile equipment" does not include any land vehicles that are subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged. Land vehicles subject to a compulsory or financial responsibility law or other motor vehicle insurance law are considered "autos".

13. "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

14. "Personal and advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses:

a. False arrest, detention or imprisonment;

b. Malicious prosecution;

c. The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

d. Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

e. Oral or written publication, in any manner, of material that violates a person's right of privacy;

f. The use of another's advertising idea in your "advertisement"; or

g. Infringing upon another's copyright, trade dress or slogan in your "advertisement".

15. "Pollutants" mean any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

16. "Products-completed operations hazard":

a. Includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:

(1) Products that are still in your physical possession; or

(2) Work that has not yet been completed or abandoned. However, "your work" will be deemed completed at the earliest of the following times:

(a) When all of the work called for in your contract has been completed.

(b) When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site.

(c) When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

b. Does not include "bodily injury" or "property damage" arising out of:

(1) The transportation of property, unless the injury or damage arises out of a condition in or on a vehicle not owned or operated by you, and that condition was created by the "loading or unloading" of that vehicle by any insured;

(2) The existence of tools, uninstalled equipment or abandoned or unused materials; or

(3) Products or operations for which the classification, listed in the Declarations or in a policy Schedule, states that products-completed operations are subject to the General Aggregate Limit.

17. "Property damage" means:

a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

b. Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

For the purposes of this insurance, electronic data is not tangible property.

PAGE 25 of 27
2018-CH-07976
© Insurance Services Office, Inc., 2012
ELECTRONICALLY FILED
6/28/2018 9:49

As used in this definition, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMs, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

18. "Suit" means a civil proceeding in which damages because of "bodily injury", "property damage" or "personal and advertising injury" to which this insurance applies are alleged. "Suit" includes:

a. An arbitration proceeding in which such damages are claimed and to which the insured must submit or does submit with our consent; or

b. Any other alternative dispute resolution proceeding in which such damages are claimed and to which the insured submits with our consent.

19. "Temporary worker" means a person who is furnished to you to substitute for a permanent "employee" on leave or to meet seasonal or short-term workload conditions.

20. "Volunteer worker" means a person who is not your "employee", and who donates his or her work and acts at the direction of and within the scope of duties determined by you, and is not paid a fee, salary or other compensation by you or anyone else for their work performed for you.

21. "Your product":

a. Means:

(1) Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

(a) You;

(b) Others trading under your name; or

(c) A person or organization whose business or assets you have acquired; and

(2) Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

b. Includes:

(1) Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product"; and

(2) The providing of or failure to provide warnings or instructions.

c. Does not include vending machines or other property rented to or located for the use of others but not sold.

22. "Your work":

a. Means:

(1) Work or operations performed by you or on your behalf; and

(2) Materials, parts or equipment furnished in connection with such work or operations.

b. Includes:

(1) Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work"; and

(2) The providing of or failure to provide warnings or instructions.

PAGE 26 of 27
2018-CH-07976
© Insurance Services Office, Inc., 2012
ELECTRONICALLY FILED

© Insurance Services Office, Inc., 2012

CG 00 01 04 13

POLICY NUMBER: HDO G27327254

IL 00 17 11 98

# COMMON POLICY CONDITIONS

All Coverage Parts included in this policy are subject to the following conditions.

## A. Cancellation

1. The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.

2. We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least:

   a. 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

   b. 30 days before the effective date of cancellation if we cancel for any other reason.

3. We will mail or deliver our notice to the first Named Insured's last mailing address known to us.

4. Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

5. If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered a refund.

6. If notice is mailed, proof of mailing will be sufficient proof of notice.

## B. Changes

This policy contains all the agreements between you and us concerning the insurance afforded. The first Named Insured shown in the Declarations is authorized to make changes in the terms of this policy with our consent. This policy's terms can be amended or waived only by endorsement issued by us and made a part of this policy.

## C. Examination Of Your Books And Records

We may examine and audit your books and records as they relate to this policy at any time during the policy period and up to three years afterward.

## D. Inspections And Surveys

1. We have the right to:

   a. Make inspections and surveys at any time;

   b. Give you reports on the conditions we find; and

   c. Recommend changes.

2. We are not obligated to make any inspections, surveys, reports or recommendations and any such actions we do undertake relate only to insurability and the premiums to be charged. We do not make safety inspections. We do not undertake to perform the duty of any person or organization to provide for the health or safety of workers or the public. And we do not warrant that conditions:

   a. Are safe or healthful; or

   b. Comply with laws, regulations, codes or standards.

3. Paragraphs 1. and 2. of this condition apply not only to us, but also to any rating, advisory, rate service or similar organization which makes insurance inspections, surveys, reports or recommendations.

4. Paragraph 2. of this condition does not apply to any inspections, surveys, reports or recommendations we may make relative to certification, under state or municipal statutes, ordinances or regulations, of boilers, pressure vessels or elevators.

## E. Premiums

The first Named Insured shown in the Declarations:

1. Is responsible for the payment of all premiums; and

2. Will be the payee for any return premiums we pay.

## F. Transfer Of Your Rights And Duties Under This Policy

Your rights and duties under this policy may not be transferred without our written consent except in the case of death of an individual named insured.

If you die, your rights and duties will be transferred to your legal representative but only while acting within the scope of duties as your legal representative. Until your legal representative is appointed, anyone having proper temporary custody of your property will have your rights and duties but only with respect to that property.

2018-CH-07976
PAGE 27 of 27
ELECTRONICALLY FILED
9/19/2018 6:56 PM

IL 00 17 11 98

Copyright, Insurance Services Office, Inc., 1998

Page 1 of 1